# Exhibit 5

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No. SA CV 17-00596-DOC-JDE | Date: April 18, 2022 |

Title: XR COMMUNICATIONS, LLC V. D-LINK SYSTEMS, INC. ET AL.

PRESENT:

### THE HONORABLE DAVID O. CARTER, JUDGE

| | |
|---|---|
| Dajanae Carrigan/Karlen Dubon | Not Present |
| Courtroom Clerk | Court Reporter |
| ATTORNEYS PRESENT FOR PLAINTIFF: | ATTORNEYS PRESENT FOR DEFENDANT: |
| None Present | None Present |

| PROCEEDINGS (IN CHAMBERS): | ORDER ADOPTING SPECIAL MASTER'S REPORT AND RECOMMENDATIONS RE: CLAIM CONSTRUCTION [280] |
|---|---|

On January 27, 2022, Special Master David Keyzer submitted to the Court his Report and Recommendations ("R&R") regarding claim construction of United States Patents No. 7,729,728 ("the '728 Patent"), 8,289,939 ("the '939 Patent") and 10,594,376 ("the '376 Patent") (Dkt. 280-1).

Defendants D-Link Systems, Inc., Belkin International, Inc., Netgear, Inc., Aruba Networks, LLC, and Ubiquiti Inc. (collectively, "Defendants") objected to certain claim constructions in the Report ("Objs.") on February 17, 2022 (Dkt. 284). Plaintiff XR Communications, LLC d/b/a Vivato Technologies ("Plaintiff" or "XR" or "Vivato") responded ("Resp.") on March 1, 2022 (Dkt. 288). The Court heard oral arguments on March 28, 2022. The Court addresses each objection in turn.

The Court reviews de novo all objections to a Special Master's report and recommendation, including legal conclusions and findings of fact. Fed. R. Civ. P.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| | |
|---|---|
| Case No. SA CV 17-00596-DOC-JDE | Date: April 18, 2022 |
| | Page 2 |

53(f)(3), (4); *Seaman v. Sedgwick, Detert, Moran & Arnold, LLP*, No. 8:11-CV-00664-DOC, 2014 WL12700973, at *1 (C.D. Cal. Sept. 30, 2014). Accordingly, "[t]he court may 'accept, reject, or modify, in whole or in part, the findings or recommendations made by the [special master].' The [court] may also receive further evidence or recommit the matter to the [special master] with instructions." *McDonnell Douglas Corp. v. Commodore Bus. Machs., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981) (quoting 28 U.S.C. § 636(b)(1)(C)).

## I. The '376 Patent

The R&R recommends construing "a processor configured to: . . ." and "wherein one or more of the processor, the transceiver, or the smart antenna is further configured to: . . ." to have their plain meaning. *See* R&R at 7–32. As to the latter term, the R&R also recommends finding that "the claims require only that 'one or more' 'is further configured,' not necessarily that each and every one of 'the processor,' 'the transceiver,' and 'the smart antenna' is so configured." *Id.* at 25, 32.

"Defendants' primary objection to the R&R's treatment of the [35 U.S.C.] § 112, ¶ 6 limitations (such as the processor limitations) is that the Special Master's analysis is inconsistent with legal standards set forth in *Williamson*, *Egenera* and this Court's claim construction Order in *Syneron*." Objs. at 3. Defendants argue that "[t]he R&R only considers the term 'processor' in a vacuum and never in the context of the claimed functions." *Id.* at 5. Defendants urge that "if a claimed function is performed by all processors, that term in and of itself may be sufficient," "[b]ut if a claimed function is not common to all processors and, as an example, requires special purpose programming, the claim should be subject to §112, ¶ 6, unless the claim itself includes sufficient detail as to the structure for performing the special purpose function." *Id.* at 7.

As to the set of functions recited as performed by "one or more of the processor, the transceiver, or the smart antenna," Defendants argue that "[w]hile the claim may be infringed by any one of the processor, the transceiver, or the smart antenna performing the claimed functions, its construction and commensurate claim scope must take into account each of the three options." *Id.* at 3. Defendants argue that "the scope of the '376 Patent claims encompass a networking apparatus in which the processor performs all recited functions," and "[t]he fact that the claim recites alternatives to the processor does not excuse the Court from construing the claim according to the alternative of the processor performing all of the functions." *Id.* at 11 (citation omitted).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 17-00596-DOC-JDE                      Date: April 18, 2022
                                                                                                                                                Page 3

       Plaintiff responds that "[c]ontrary to Defendants' implication, the R&R correctly stated and applied the *Williamson* test for means-plus-function treatment." Resp. at 1. Plaintiff further argues:

> As Vivato explained, where [the] term "processor" is a known structure or class of structures, and the claim describes functions of a processor in a wireless networking apparatus, it is unnecessary to conduct a mini-trial on whether a "processor" in isolation is known to be actually capable of performing the recited functions. *See* R&R at 14:1–6, 16:8–17:6. But critically, even if that were the test, Vivato provided extensive evidence based on the claims, specification, and expert testimony that a POSITA would understand that the claimed "processor" in the '376 patent is capable of performing the recited functions. *See id.* For both reasons, Defendants failed to meet their burden that means-plus-function applies. The R&R agreed with Vivato on both counts.

Pl. Resp. at 2. Plaintiff also urges that even though other structures in the claim may assist the processor in performing functions such as receiving or transmitting data over a wireless medium, this does not mean that the "processor" lacks sufficient structure to avoid means-plus-function treatment. *Id.* at 10.

       Claim 1 of the '376 Patent, for example, recites (emphasis added):

> 1. A data-communications networking apparatus, comprising:
>     *a processor configured to*:
>         generate a probing signal for transmission to at least a first client device and a second client device;
>         generate a first data stream for transmission to the first client device; and
>         generate a second data stream for transmission to the second client device; and
>     a transceiver operatively coupled to the *processor* and configured to:
>         transmit the probing signal to at least the first client device and the second client device via a smart antenna;
>         wherein the smart antenna is operatively coupled to the transceiver and comprises a first antenna element and a second antenna element;
>     *wherein one or more of the processor, the transceiver, or the smart antenna is further configured to*:
>         receive a first feedback information from the first client device in response to the transmission of the probing signal;
>         receive a second feedback information from the second client device in response to the transmission of the probing signal;
>         determine where to place transmission peaks and transmission nulls within one or more spatially distributed patterns of electromagnetic signals based in part on the first and the second feedback information;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 17-00596-DOC-JDE　　　　　　　　　　　　　　　　Date: April 18, 2022
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 4

> transmit the first data stream to the first client device via the one or more spatially distributed patterns of electromagnetic signals; and
>
> transmit the second data stream to the second client device via the one or more spatially distributed patterns of electromagnetic signals;
>
> wherein transmission of the first data stream and transmission of at least part of the second data stream occur at the same time; and
>
> wherein the one or more spatially distributed patterns of electromagnetic signals are configured to exhibit a first transmission peak at a location of the first client device and a second transmission peak at a location of the second client device.

Defendants urge that the R&R fails to consider the claim limitations as a whole, including the recited functions, and thereby fails to consider whether the claims recite sufficient structure *for performing the recited functions*. Objs. at 5. Defendants reiterated their arguments in this regard at the March 28, 2022 hearing.

The R&R finds that the term "processor" connotes structure. *See* R&R at 18–32. The R&R addresses the *Williamson* and *Egenera* decisions by the Federal Circuit as well as the *Limestone* and *Syneron* decisions by this Court. *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1347–49 (Fed. Cir. 2015); *Egenera, Inc. v. Cisco Sys., Inc.*, 972 F.3d 1367, 1374 (Fed. Cir. 2020); *Limestone Memory Sys., LLC v. Micron Tech., Inc.*, No. 8:15-CV-00278-DOC, 2019 WL 6655273, at *18 (C.D. Cal. Sept. 11, 2019); *Syneron Med. Ltd. v. Invasix, Inc.*, No. 8:16-CV-00143-DOC, 2018 WL 4696971, at *12–*14 (C.D. Cal. Sept. 5, 2018).

Defendants' renewed reliance on these Federal Circuit decisions and these decisions of this Court does not undercut the analysis set forth in the R&R. *See* R&R at 19–20, 23–25, 27–30. In particular, the R&R properly found *Limestone* and *Syneron* distinguishable on their facts. *See id.* at 27–30. Also, in response to Defendants' objections, Plaintiff persuasively cites an additional portion of the *Tek Global* case cited in the R&R, which reinforces the general proposition that 35 U.S.C. § 112, ¶ 6 "does not apply when 'the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *TEK Global, S.R.L. v. Sealant Sys. Int'l, Inc.*, 920 F.3d 777, 786 (Fed. Cir. 2019) (quoting *Diebold Nixdorf, Inc. v. ITC*, 899 F.3d 1291, 1297 (Fed. Cir. 2018)); s*ee* R&R at 25; Resp. at 6–7.

Even if one assumes for the sake of argument that more is required, the claims satisfy what Defendants refer to as the "objectives and operations" test. *See* Objs. at 8. In arguing that this test is not met, Defendants characterize the "objectives" too narrowly.

Case 2:23-cv-00205-RGS-JDE Document 312 Filed 04/28/22 Page 6 of 18 Page ID #:16392
Case 8:17-cv-00596-DOC-JDE Document 312 Filed 04/18/22 Page 5 of 17 Page ID #:16745

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 17-00596-DOC-JDE

Date: April 18, 2022

Page 5

*See id.* at 8–10. In particular, Defendants assert that the "objectives" are all of the individual recited functions. *See, e.g.*, *id.* at 10. This leads Defendants to then argue that the claim provides no "operations" for performing each of these individual functions. *See id.* A fair reading of these claims, however, is that the objective is more general and relates to conducting data communications, and the various functional limitations recite specific operations that the processor is configured to perform so as to conduct data communications.

Likewise, whereas *Syneron* found that the "processor [is] defined only by the function [it] perform[s]," 2018 WL 4696971 at *14, substantially all of above-reproduced Claim 1 of the '376 Patent, for example, sets forth details regarding the functional configuration of the processor.

As to Defendants' argument that the claims encompass a processor for performing the functions of generating a probing signal, receiving feedback information, and performing beamforming, *see* Objs. at 3, 10–11, considering all of these functions does not alter the analysis finding that the "processor" terms connote structure and indeed connote sufficient structure for performing the functions. The R&R addressed this issue, considered expert opinions and expert testimony, and found the opinions of Plaintiff's expert, Dr. Branimir Vojcic, persuasive as to the sufficiency of a "processor" in the context of the functional language recited in the claims. *See* R&R at 25–27.

Finally, Plaintiff submitted two notices of supplemental authority (Dkts. 294, 296) identifying two decisions handed down by the Federal Circuit just a few days before the March 28 hearing on the present objections, namely *Dyfan, LLC v. Target Corp.*, No. 2021-1725, __ F.4th __, 2022 WL 870209 (Fed. Cir. Mar. 24, 2022), and *VDPP, LLC v. Vizio, Inc.*, No. 2021-2040, 2022 WL 885771 (Fed. Cir. Mar. 25, 2022). Plaintiff addressed *Dyfan* and *VDPP* at the hearing, and the Court's own review of those cases reinforces the analysis set forth above that the "processor" terms are not means-plus-function terms under 35 U.S.C. § 112(f). Even in light of Plaintiff's notices of supplemental authority and Plaintiff's arguments at the hearing, Defendants did not directly address either *Dyfan* or *VDPP* at the hearing, instead focusing their oral arguments on above-discussed decisions such as *Egenera* and *Syneron*, which the Court finds were properly distinguished in the R&R. Plaintiff's reading of the above-discussed Federal Circuit authorities is persuasive, particularly in light of how *Dyfan* and *VDPP* applied those authorities to terms reciting "code" and "processor," respectively. *See* 2022 WL 870209, at *5–*7; *see also VDPP*, 2022 WL 885771, at *3–*4.

Accordingly, the Court OVERRULES Defendants' objections and ADOPTS the Special Master's recommendations as to the '376 Patent.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No. SA CV 17-00596-DOC-JDE | Date: April 18, 2022 |
| | Page 6 |

## II. The '939 Patent

### A. "wireless input/output (I/O) unit"

The Special Master recommends construing "wireless input/output (I/O) unit" to have its plain meaning. *See* R&R at 38–44. Defendants present similar arguments for this term as discussed above for the "processor" terms, arguing that "[r]ather than considering whether this term conveys structure in the context of the claimed functions, the R&R only analyzes whether 'wireless I/O unit' connotes structure on its own." Objs. at 12 (citation omitted). Defendants argue that the R&R lacks any factual support for finding that the phrase "wireless input/output" imparts any structural meaning to the nonce word "unit." *Id.* at 13.

Plaintiff responds that "the R&R correctly analyzed and found that 'wireless I/O unit' has a well-known meaning in the art as a term for structure," and Plaintiff argues that "the R&R considered evidence that the known structure of a wireless I/O unit is known by ordinary artisans to be capable of the recited function of establishing access points. R&R 43:11–12, citing D.I. 256-5 ("Vojcic Decl.") ¶¶ 107–117." Resp. at 11.

Defendants argue that "the R&R errs by looking at the specification to provide structure that is missing from the claim." (Defs. Objs. at 13.) Defendants cite the analysis of the Federal Circuit in *MTD Products Inc. v. Iancu*, 933 F.3d 1336, 1344 (Fed. Cir. 2019), arguing that any reliance on structures disclosed in the specification as a basis for finding that a term is not means-plus-function "would seem to leave § 112, ¶ 6 without any application: any means-plus-function limitation that met the statutory requirements, i.e., which includes having corresponding structure in the specification, would end up not being a means-plus-function limitation at all." 933 F.3d at 1344. Defendants reiterated this argument at the March 28, 2022 hearing, and Defendants also argued that the disclosed structures cited by Plaintiff, such as an antenna array, are separate from the wireless input/output unit.

However, Defendant's argument is unpersuasive because the analysis of whether 35 U.S.C. § 112, ¶ 6 applies is conducted using generally applicable claim construction principles, including that the claims are analyzed in light of the specification. *See TEK Global*, 920 F.3d at 785; *see also Apple Inc. v. Motorola Inc.*, 757 F.3d 1286, 1296 (Fed. Cir. 2014), *abrogated on other grounds by Williamson*, 792 F.3d 1339 ("The overall means-plus-function analysis is a two-step process. Naturally, there is some analytical overlap between these two steps. In the first step, we must determine if the claim

Case 2:23-cv-00205-RGJ-DE Document 81-2 Filed 07/15/23 Page 8 of 18 PageID #: 747
Case 8:17-cv-00596-DOC-JDE Document 312 Filed 04/18/22 Page 7 of 18 Page ID #:16394

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 17-00596-DOC-JDE                               Date: April 18, 2022
                                                              Page 7

limitation is drafted in means-plus-function format. As part of this step, we must construe the claim limitation to decide if it connotes 'sufficiently definite structure' to a person of ordinary skill in the art, which requires us to consider the specification (among other evidence). In the second step, if the limitation is in means-plus-function format, we must specifically review the specification for 'corresponding structure.' Thus, while these two 'structure' inquiries are inherently related, they are distinct."). Disclosure in the specification of the same structure that is recited in the claim does not necessarily compel means-plus-function treatment.

The *Kyocera* decision cited by Defendants in their objections was issued by the Federal Circuit after the parties presented oral argument on claim construction, but *Kyocera* does not compel a different outcome because the facts of *Kyocera* are not analogous to the present dispute. *See Kyocera Senco Industrial Tools Inc. v. Int'l Trade Comm'n*, 22 F.4th 1369, 1381 (Fed. Cir. 2022). *Kyocera* found that the term "lifter member," in a claim directed to a mechanical "fastener driving tool," was a means-plus-function term because: "[t]hat phrase, alone, does not connote structure" and "is a non-structural generic placeholder (member) modified by functional language (lifter)"; the claim provided a "purely functional description"; and "[n]othing in the written description provides a clear and unambiguous definition of 'lifter member.'" *Id.* Defendants emphasize the finding in *Kyocera* that the specification there "provide[d] an example of *a* lifter member, rather than a definition of *the* lifter member." *Id.*

In the present case, however, the R&R finds that the phrase "wireless input/output (I/O) unit" itself connotes structure. *See* R&R at 40–43. The R&R cites *Skky, Inc. v. MindGeek, s.a.r.l.*, 859 F.3d 1014 (Fed. Cir. 2017), which involved the term "wireless device means." *Skky* found that the presumption *in favor* of applying 35 U.S.C. § 112, ¶ 6 to this "means" term was *rebutted*:

> Although the term uses the word "means" and so triggers a presumption, the full term recites structure, not functionality; the claims do not recite a function or functions for the wireless device means to perform, and "wireless device" is "used in common parlance . . . to designate structure."

*Id.* at 1020 (quoting *TecSec, Inc. v. Int'l Bus. Machs. Corp.*, 731 F.3d 1336, 1347 (Fed. Cir. 2013)).

In the present case, the term "wireless input/output (I/O) unit" appears in independent Claims 1, 15, and 30 of the '939 Patent, all three of which recite "a wireless input/output (I/O) unit that is configured to establish a plurality of access points." In attempting to distinguish *Skky*, Defendants evidently rely on the latter portion of this phrase ("establish a plurality of access points") as being functional. In doing so,

Case 2:17-cv-00596-DOC-JDE Document 811 Filed 07/15/22 Page 8 of 17 Page ID #:16395

Case 8:17-cv-00596-DOC-JDE Document 631 Filed 04/18/22 Page 8 of 17 Page ID #:10748

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 17-00596-DOC-JDE                     Date: April 18, 2022

Page 8

Defendants downplay the finding in *Skky* that "'wireless device' is 'used in common parlance . . . to designate structure.'" *Id.*; *see TEK Global*, 920 F.3d at 786 (noting that 35 U.S.C. § 112, ¶ 6 "does not apply when 'the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure'") (citation omitted).

Moreover, the Federal Circuit has noted that functional claim language is permissible, including as to claim limitations that are not subject to 35 U.S.C. § 112, ¶ 6. *Cf. BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1366 (Fed. Cir. 2017) ("[W]e have long held that nothing in the law precludes, for indefiniteness, defining a particular claim term by its function." (citation and internal quotation marks omitted)).

Finally, the specification confirms that the term "wireless input/output (I/O) unit" connotes structure because, as noted in the R&R, "the specification refers to a wireless I/O unit as including structures and as being part of a structure." R&R at 42 (citing '939 Patent at 4:17–23 ("[a]ccess station 102 includes wireless I/O unit 206"; "[w]ireless I/O unit 206 includes an antenna array 208 that is implemented as two or more antennas, and optionally as a phased array of antennas"), 5:30–37 (similar), 6:60–64 ("Such a wireless I/O unit 206 may also optionally include one or more of Ethernet switch/router 602, beamformer 612, and antenna array 208.")).

Accordingly, the Court OVERRULES Defendants' objections and ADOPTS the Special Master's recommendation.

### B.    "signal transmission/reception coordination logic"

The R&R recommends finding that "signal transmission/reception coordination logic" is a means-plus-function term governed by 35 U.S.C. § 112, ¶ 6 and that the corresponding structure is "signal transmission/reception coordination logic 404 (with the characteristics and configuration set forth for the signal transmission/reception coordination logic 404 in the '939 Patent), and equivalents thereof." *See* R&R at 44–59.

Neither side objects to the finding in the R&R that the term "signal transmission/reception coordination logic" is a means-plus-function term governed by 35 U.S.C. § 112, ¶ 6. *See* R&R at 49–52.

Defendants argue that "the signal transmission/reception coordination logic 404 that is at the heart of the R&R is not sufficient structure that 'corresponds to the claimed function': it is only a black box without any explanation on the algorithm for performing the claimed function of restraining transmission on a different channel than the channel

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 17-00596-DOC-JDE         Date: April 18, 2022
                                         Page 9

on which a signal is received." Objs. at 16. In this regard, Defendants emphasized at the March 28, 2022 hearing that no party objects to the finding in the R&R that the phrase "signal transmission/reception coordination logic" (as recited in the claim) does not connote structure.

Defendants also urge that the R&R "never explains which 'characteristics and configuration' are clearly associated with performing the claimed functions, including the required functionality of restraining transmission on a different channel—which served as the basis for the examiner determining that the claims were patentable over the prior art." *Id.* (citations omitted). In this regard, Defendants further argued at the March 28, 2022 hearing that whereas the signal transmission/reception coordination logic is the point of novelty, there is no explanation in the patent as to what is being added to an off-the-shelf chip or how it is able to perform the claimed functions. Plaintiff responded that Defendants' argument regarding any purported lack of "how" is an enablement argument and does not affect the sufficiency of the disclosure of the signal transmission/reception coordination logic 404 as corresponding structure. Plaintiff also argued that even if Defendants were found to be correct that logic 404 is not a sufficient disclosure of structure, then the corresponding structure would be the disclosed algorithms.

Upon review and as set forth herein, the R&R properly finds that the corresponding structure is "signal transmission/reception coordination logic 404." *See id.* at 52–59; *see, e.g.*, '939 Patent at 6:22–53 ("signal transmission/reception coordination logic 404 may restrain transmission on one channel on the basis of reception on another channel").

Defendants rely on the principle that "[s]imply disclosing a black box that performs the recited function is not a sufficient explanation of the algorithm required to render the means-plus-function term definite." *Augme Techs., Inc. v. Yahoo! Inc.*, 755 F.3d 1326, 1338 (Fed. Cir. 2014). The "signal transmission/reception coordination logic 404" disclosed in the specification is a sufficient corresponding structure. Whereas Defendants argue that this "signal transmission/reception coordination logic 404" is merely a "black box" that lacks any algorithm or other structural meaning, the R&R refers to "signal transmission/reception coordination logic 404 (*with the characteristics and configuration set forth for the signal transmission/reception coordination logic 404 in the '939 Patent*)," thus limiting this structure to the algorithms and configuration disclosed for this structure in the specification. *See* R&R at 52–59 (emphasis added). These disclosures are more than merely restatements of the recited functions. *See id.* (citing disclosures); *see also* '939 Patent at 15:23–48. To whatever extent an algorithm requirement applies, *see, e.g., Augme*, 755 F.3d at 1338, the algorithm requirement is met

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 17-00596-DOC-JDE                                                             Date: April 18, 2022
                                                                                                                                                                                                  Page 10

by these disclosures in the specification regarding signal transmission/reception coordination logic 404.

       The R&R also finds: "As to Plaintiff's proposal that 'MAC coordinator logic 606' is an alternative corresponding structure, Plaintiff does not persuasively show that this structure is 'clearly link[ed]' to the above-noted claimed functions." R&R at 57. Although the R&R finds that the claimed functions are linked to the "signal transmission/reception coordination logic 404" and not the "MAC coordinator logic 606," this finding might give rise to confusion because the specification discloses that "[i]n a more-specific implementation with reference to FIGS. 6 and 8, signal transmission/reception coordination logic 404 *may be realized as* MAC coordinator logic 606." '939 Patent at 15:49–51 (emphasis added). Plaintiff likewise argued at the March 28, 2022 hearing that MAC 606 is an example of a way to implement the logic 404. See id., see also id. at 18:12–19. Having considered the oral arguments and the disclosures cited by the parties, the Court finds that the "MAC coordinator logic 606" is thus *subsumed within* the recommended corresponding structure recommended by the R&R ("signal transmission/reception coordination logic 404 (with the characteristics and configuration set forth for the signal transmission/reception coordination logic 404 in the '939 Patent)"). R&R at 57–59.

       The Court accordingly OVERRULES Defendants' objections and ADOPTS IN PART the Special Master's recommendation: the Court MODIFIES the recommended analysis by noting that the "MAC coordinator logic 606" is subsumed within the recommended corresponding structure.

       **C.**      **"responsive to . . ."**

       The R&R recommends construing the "responsive to . . ." terms to have their plain meaning. *See* R&R at 59–65.

       Defendants argue that their "construction . . . is intended to resolve the parties' dispute as to what the plain an[d] ordinary meaning of the claim language is, which Plaintiff contends does not require the receiving to be on-going at the time of the restraining, which is directly contrary to the claim's grammatical construction." Objs. at 18. Defendants also argue that the R&R errs in relying on the doctrine of claim differentiation because "[t]he Federal Circuit has repeatedly held that claim differentiation is merely a claim construction principle and not an absolute rule for claim construction." *Id.* at 19.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 17-00596-DOC-JDE　　　　　　　　　　　　　　　　　　Date: April 18, 2022

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 11

 Plaintiff responds that "[t]here is no support for construing the 'restraining' step to be *contemporaneous* with the prior 'ascertaining . . . that a first access point is receiving' step. The plain meaning of 'responsive to' is broad enough to cover a restraining step that occurs after the ascertaining step by some amount of time." Resp. at 17.

 At the March 28, 2022 hearing, Defendants urged that the disclosed objective of preventing signal degradation would not be achieved unless the other signal is being received at the same time that the restraining is being performed. Plaintiff responded that "responsive to" could mean at the same time or could be in response to ascertaining a moment ago. Plaintiff argued that it would be improper to limit the plain meaning of these terms so as to achieve the objective advanced by Defendants.

 The R&R found that "Defendants have not demonstrated that one action being 'responsive to' another action necessarily requires the actions to be contemporaneous." R&R at 63.

 Defendants argue that the R&R failed to consider these terms as a whole, but the R&R identified much more than merely the phrase "responsive to" as being in dispute. *See id.* at 59–60 ("responsive to the ascertaining that the access point of the plurality of access points is receiving the signal on a second different channel" ('939 Patent, Claim 1); "responsive to the ascertaining that the first access point is receiving the first signal and that the second access point is receiving the second signal that is ongoing-on the second channel" ('939 Patent, Claim 15); "responsive to the ascertaining that the first access point is receiving the first signal" ('939 Patent, Claim 30)).

 Defendants rely on the grammatical structure of these limitations as a whole, but the R&R found:

> Defendants argue that "the claims use the present progressive tense ('is receiving') to indicate that the reception of a signal is a presently occurring action" (Def. CC Opening at 26), but Defendants do not show how this necessarily requires the "restrain[ing]" to be contemporaneous with the "ascertaining."

R&R at 63–64. Defendants also argue that the doctrine of claim differentiation is not a rigid rule, but the doctrine of claim differentiation can be considered and weighed in the analysis of these disputed terms, as done in the R&R. *See id.* at 64. And even if the doctrine of claim differentiation were deemed completely inapplicable, the R&R did not rely exclusively on claim differentiation, stating instead that "[t]he doctrine of claim differentiation *reinforces* th[e] conclusion." *Id.*

Case 8:17-cv-00596-DOC-JDE   Document 831-0   Filed 04/18/22   Page 13 of 18   Page ID #:16529

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 17-00596-DOC-JDE                          Date: April 18, 2022
                                                         Page 12

Finally, Defendants' briefing on its objection does not address, and therefore appears to accept, the R&R's rejection of Defendants' reliance on the prosecution history. *See* R&R at 64–65.

Accordingly, the Court OVERRULES Defendants' objections and ADOPTS IN PART the Special Master's recommendation: the Court CLARIFIES the claim construction by expressly construing the following disputed terms:

| Term | Construction |
| --- | --- |
| "responsive to the ascertaining that the access point of the plurality of access points is receiving the signal on a second different channel" ('939 Patent, Claim 1) | Plain meaning |
| "responsive to the ascertaining that the first access point is receiving the first signal and that the second access point is receiving the second signal that is ongoing-on the second channel" ('939 Patent, Claim 15) | Plain meaning |
| "responsive to the ascertaining that the first access point is receiving the first signal" ('939 Patent, Claim 30) | Plain meaning |

### D. "802.11 standard"

The Special Master recommends construing "802.11 standard" to mean "one of the IEEE 802.11 standards that existed at the time of the invention." R&R at 32–38.

Defendants "object to the R&R only to the extent that its reference to standard*s* (plural) is unclear because only one IEEE 802.11 standard existed at the time of the invention – IEEE 802.11-1999." Objs. at 19. Defendants submit that "[t]o the extent that the R&R's reference to 'one of the IEEE 802.11 standards' means 'the IEEE 802.11-1999 standard and its (a), (b), (c), (d), (e), (f), (g), and (h) amendments', which are the amendments adopted prior to the priority date of the '376 and '939 Patents, Defendants do not object to this construction." *Id.* at 19–20.

Plaintiff responds that "Defendants' proposal to exclude certain 802.11 standards that existed at the time of the invention should be rejected." Resp. at 18. Plaintiff further argues:

Case 8:17-cv-00596-DOC-JDE Document 831-0 Filed 04/18/22 Page 14 of 18 Page ID #:16330

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 17-00596-DOC-JDE            Date: April 18, 2022

Page 13

> If Defendants wanted to enumerate a specific list of standards, it was incumbent on them to state that proposal during the disclosure and briefing process and to support it with evidence. Now, it is far too late—and their position is not even consistent with their briefing. Limiting this term to the 802.11-1999 standard contradicts Defendants' prior statement that "[a]s of the priority date of the '376 and '939 Patents, only the IEEE's 802.11-1997 standard existed." Dkt. No. 272 at 22:6–7.

Resp. at 18.

The recommended construction refers to the 802.11 standards "that *existed* at the time of the invention." R&R at 38 (emphasis added); *see id.* at 37. Defendants appear to propose limiting the term "802.11 standard" to IEEE 802.11-1999, thereby excluding 802.11-1997. *See* Dkt. 272 at 22 (Defs.' Resp. Claim Construction Br. referring to several 802.11 standards). That is, Defendants propose limiting the term "802.11 standard" to only the 802.11 standard that was current or "active," so to speak, at the time of the invention. Defs. Objs. at 19 ("As of the priority dates of the '376 and '939 Patents, the IEEE 802.11-1997 standard had been replaced by the IEEE with the 802.11-1999 standard."). Defendants' objection almost seems to imply that the adoption of 802.11-1999 somehow erased 802.11-1997 from existence. Defendants do *not* persuasively justify narrowing the scope of the term "802.11 standard" so as to exclude an 802.11 standard that had been superseded but that nonetheless still existed.

Accordingly, the Court OVERRULES Defendants' objections and ADOPTS the Special Master's recommendation. In particular, the Court expressly REJECTS Defendants' argument that the construction is limited to IEEE 802.11-1999.

## III. Disposition

For the reasons given above, the Court OVERRULES Defendants' objections and ADOPTS WITH MODIFICATIONS the Special Master's Report as follows:

> (a) as to the term "signal transmission/reception coordination logic," the Court MODIFIES the recommended analysis by noting that the "MAC coordinator logic 606" is subsumed within the recommended corresponding structure; and
>
> (b) as to the "responsive to . . ." terms, the Court CLARIFIES the claim construction by expressly construing the entire disputed terms as set forth above and in the chart below.

Case No. SA CV 17-00596-DOC-JDE                                             Date: April 18, 2022
                                                                                       Page 14

      Based on all of the foregoing, the Court hereby CONSTRUES the disputed terms as set forth in the following chart:

| <u>Term</u> | <u>Construction</u> |
|---|---|
| 1.(a) "a processor configured to: . . ."<br><br>('376 Patent, Claims 1, 12, 22, 32) | **Plain meaning**<br><br>(*See* R&R at 7–32) |
| 1.(b) "wherein one or more of the processor, the transceiver, or the smart antenna is further configured to: . . ."<br><br>('376 Patent, Claims 1–6, 10, 12–17, 22–29, 32–34) | **Plain meaning**<br><br>(*See* R&R at 7–32)<br><br>(As discussed in the R&R, the claims require only that "one or more" "is further configured," not necessarily that each and every one of "the processor," "the transceiver," and "the smart antenna" is so configured, *see* R&R at 25.) |
| 2. "an 802.11 standard"<br><br>('376 Patent, Claims 10, 21) | **"one of the IEEE 802.11 standards that existed at the time of the invention"**<br><br>(*See* R&R at 32–38) |
| 3. "wireless input/output (I/O) unit"<br><br>('939 Patent, Claims 1–3, 15, 18–19, 30–32) | **Plain meaning**<br><br>(*See* R&R at 38–44) |
| 4. "signal transmission/ reception coordination logic"<br><br>('939 Patent, Claims 1, 7–8, 11–17, 30) | **Means-plus-function term governed by 35 U.S.C. § 112, ¶ 6**<br><br>Function:<br>   Claim 1: "ascertaining, by monitoring the plurality of access points for received signals, that a first access point of the plurality of access points is receiving a first signal" and "restrain[ing] at least two other access points |

Case 8:17-cv-00596-DOC-JDE Document 831-0 Filed 04/18/22 Page 16 of 18 Page ID #:17352

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 17-00596-DOC-JDE                                            Date: April 18, 2022
                                                                                     Page 15

|  | of the plurality of access points from transmitting signal responsive to the ascertaining that the first access point is receiving the first signal"<br>  Claim 1: "restrain[ing] at least one other access point of the plurality of access points from transmitting the other signal on a first channel responsive to the ascertaining that the access point of the plurality of access points is receiving the signal on a second different channel"<br>  Claim 7: "restrain[ing] at least one other access point of the plurality of access points from transmitting a downlink signal"<br>  Claim 13: "affect[ing] a baseband unit"<br>  Claim 14: "affect[ing] a radio frequency (RF) part"<br>  Claim 15: "ascertaining, by monitoring the plurality of access points for received signals, that:" (i) "a first access point of the plurality of access points is receiving a first signal on a first channel," (ii) "a second access point of the plurality of access points is receiving a second signal that is ongoing on a second channel," (iii) "restrain[ing] at least a third access point of the plurality of access points from transmitting a third signal on a third channel responsive to the ascertaining that the first access point is receiving the first signal and that the second access point is receiving the second signal that is ongoing-on the second channel, wherein the restraining at least the third access point prevents degradation to the first and second signals"<br>  Claim 30: "ascertaining, by monitoring the plurality of access points for received signals, that a first access point of the plurality of access points is receiving a first signal on a first channel" and "restrain[ing] at least a second access point of the plurality of access points from transmitting a second signal on a second channel different from the first channel responsive to the ascertaining that the first access point is receiving the first signal"<br><br>Structure: |

Case 8:17-cv-00596-DOC-JDE Document 310 Filed 04/18/22 Page 17 of 18 Page ID #:17603

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 17-00596-DOC-JDE                                  Date: April 18, 2022

Page 16

| | |
|---|---|
| | "signal transmission/reception coordination logic 404 (with the characteristics and configuration set forth for the signal transmission/reception coordination logic 404 in the '939 Patent), and equivalents thereof"<br><br>(*See* R&R at 44–59) |
| 5.(a) "responsive to the ascertaining that the access point of the plurality of access points is receiving the signal on a second different channel"<br><br>('939 Patent, Claim 1) | **Plain meaning**<br><br>(*See* R&R at 59–65) |
| 5.(b) "responsive to the ascertaining that the first access point is receiving the first signal and that the second access point is receiving the second signal that is ongoing-on the second channel"<br><br>('939 Patent, Claim 15) | **Plain meaning**<br><br>(*See* R&R at 59–65) |
| 5.(c) "responsive to the ascertaining that the first access point is receiving the first signal"<br><br>('939 Patent, Claim 30) | **Plain meaning**<br><br>(*See* R&R at 59–65) |
| 6.(a) "one other access point"<br><br>('939 Patent, Claims 1, 7–8) | **Plain meaning**<br><br>(*See* R&R at 66–72) |

Case 8:17-cv-00596-DOC-JDE Document 310 Filed 04/18/22 Page 17 of 17 Page ID #:16404

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 17-00596-DOC-JDE                                    Date: April 18, 2022
                                                                                    Page 17

| | |
|---|---|
| 6.(b) "the access point"<br><br>('939 Patent, Claims 1, 4–5, 33–34) | **The term "the access point" refers back to "a first access point" for antecedent basis.**<br><br>(*See* R&R at 66–72) |
| 6.(c) "the other signal"<br><br>('939 Patent, Claim 1) | **Indefinite**<br><br>(*See* R&R at 66–72) |
| 6.(d) "the signal"<br><br>('939 Patent, Claim 1) | **Indefinite**<br><br>(*See* R&R at 66–72) |
| 7. "at least one IEEE 802.11 standard"<br><br>('939 Patent, Claims 3, 19, 32) | **"at least one of the IEEE 802.11 standards that existed at the time of the invention"**<br><br>(*See* R&R at 72–74) |
| 8.(a) "a beam downlink"<br><br>('728 Patent, Claims 1, 7) | **Plain meaning**<br><br>(*See* R&R at 74–80) |
| 8.(b) "[a]/[the] different beam downlink"<br><br>('728 Patent, Claims 1, 7) | **Plain meaning**<br><br>(*See* R&R at 74–80) |

The Clerk shall serve this minute order on the parties.

Initials of Deputy Clerk: dca/kdu

MINUTES FORM 11
CIVIL-GEN