# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| XR COMMUNICATIONS, LLC, dba VIVATO TECHNOLOGIES,<br><br>Plaintiff,<br><br>vs.<br><br>AT&T SERVICES INC., ET AL.,<br><br>Defendants.<br><br>ERICSSON, INC. ET AL.,<br><br>Intervenors. | Case No. 2:23-cv-00202-JRG-RSP<br><br>(**LEAD CASE**)<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANTS' RESPONSE TO PLAINTIFF XR COMMUNICATIONS' OBJECTIONS TO MAGISTRATE JUDGE PAYNE'S CLAIM CONSTRUCTION MEMORANDUM OPINION AND ORDER**

XR's objections (Dkt. 115, "XR Obj.") merely restate the arguments that it made to the Court in its claim construction briefing and during oral argument, which were rejected by the Court. For the reasons explained by the Court in the *Markman* Order (Dkt. 99, "Order") and as further explained below, all of XR's arguments should again be rejected.

## I.    "substantially reciprocal to" ('369 Patent, claim 12)

XR's objections do not address the Court's holding or its counsel's admissions and, therefore, the objections should be rejected out of hand. The Court concluded that "substantially reciprocal" "is a term of degree", based in part on XR's counsel's admission. Order, at 17 & n. 3 ("At the hearing, Vivato seemed to concede this term is a term of degree."). Rather than address this finding, XR once again attempts to read out the term "substantially" from the claim and argues that "claim 12 is directed to a TDD system" and that in such a system reciprocity need only exist "for certain durations of time." XR Obj. at 1. But as the Court correctly noted, "Claim 12 already accounts for *when* the paths must be 'substantially reciprocal'—when the modified signal is transmitted as required by Claim 3." Order, at 17 (emphasis added). Likewise, the Court correctly concluded that XR had not identified any "objective boundaries for determine when two paths are *substantially* reciprocal and when they are not." Order, at 17 ("[C]hallenged with finding *something* in the intrinsic record for how to determine whether two transmission paths are *substantially* reciprocal, Vivato comes up short.") (emphasis in original). XR's Objections do not address this key issue and, therefore, should be overruled.

## II.    "signal transmission/reception coordination logic" ('939 Patent, claims 15, 30)

### A.    The Court correctly found this term is means-plus-function

XR argues that: (1) the term "signal transmission/reception coordination logic" is structural, and (2) that "the intrinsic record establishes a baseband signal processor as a

structure for this logic." *Id.* at 2.  Both arguments were made, are wrong, and were rejected.

XR's first argument is a rehash of the "any structure" argument it has made to multiple Courts, including the Federal Circuit – which rejected XR's argument.  *See XR Commc'ns, LLC v. ARRIS Solutions, Inc.*, 2023 WL 3529830, at *3 (Fed. Cir. May 18, 2023) (stating that Federal Circuit precedent "compels rejecting" XR's "position that § 112, ¶ 6, is avoided by reciting something that a POSA would understand as structure – even if a POSITA wouldn't understand it as sufficient structure for performing the claimed function.").  The Court correctly recognized that XR's argument was that §112, ¶6 treatment was avoided if "the limitation simply refer[s] to a physical object" and rejected it, noting "the test is not whether the limitation recites a physical object, but whether a skilled artisan would know what that physical object is."  Order at 23.  The same reasoning applies to XR's arguments regarding the claims and specification "defining the inputs, outputs, and structural connections of the logic." XR Obj. at 2.  At best, these establish that the logic exists: a skilled artisan would not know what that logic actually is.  Order at 23.

Second, XR argues that "the intrinsic record establishes a baseband signal processor as structure for this logic."  XR Obj. at 2.  XR's citation-less reference to the "intrinsic record" contradicts the patent specification's express statement that the "signal transmission/reception coordination logic" "may be implemented as hardware, software, firmware, some combination thereof, and so forth."  '939 Patent at 5:33-37.  Indeed, all the intrinsic record states about operating at a baseband level is that, for one embodiment, the "signal transmission/reception coordination logic" "may be implemented at the baseband layer in a system that utilizes off-the-shelf chips," without providing any detail as to that implementation.  *Id.* at 18:39-44; Order at 24 (recognizing that this disclosure said nothing about the structure of the "logic").

### B. XR Proposes Structures that Are Black Boxes that do not Perform the Claimed Functions

XR presents two objections to the Court's structure that the Court should have included: (1) the disclosures of Figures 3-6 as corresponding structure, and (2) the algorithm of Figure 13 in its corresponding structure. XR Obj. at 3.[1]

First, the Court correctly rejected Figures 4 and 5, noting that they simply restate the function set forth in the claims and so the disclosures do nothing to explain what the claimed "logic" is. Order at 25. While XR asserts, without citation, that Figures 3-6 "show[] the processing circuitry in the access station as signal logic 404 structure . . . in Figure 4, or as MAC logic 606 in Figure 6", (XR Obj. at 3), the specification contradicts these assertions. Instead, it states that both signal transmission/reception coordination logic 404 and MAC coordinator logic 606 "may be implemented as hardware, software, firmware, some combination thereof, and so forth." '939 Patent at 5:33-37, 7:19-20. Figures 3-6 are not structure at all, much less corresponding structure.

Second, the "algorithm" of Figure 13 does not disclose the claimed function. The claims require both: (1) "ascertaining, by monitoring" that an access point is receiving a first signal on a first channel, and (2) "restrain[ing]" "responsive to the ascertaining" a second access point from transmitting a second signal on a first channel. '939 Patent, claims 15, 30. Even if XR is right and Figure 13 discloses an algorithm, all Figure 13 discloses at best the "ascertaining by monitoring" step. '939 Patent at 18:45-55 (only disclosing that receive information is provided to MACs). The Figure 13 embodiment never discloses any kind of "restraining" an access point from transmitting.

---

[1] Defendants also object to the Court's corresponding structure as to this term, for the reasons stated in their objections. Those arguments, however, do not impact XR's objections.

### III. "restrain . . . responsive to the ascertaining . . ." ('939 Patent, claims 15, 30)

XR's arguments[2] read the word "ascertaining" out of the claim and were correctly rejected by the Court.

First, XR's argument that restraining can be in response to ascertaining that an access point is receiving a signal because the access point is *expecting* a signal (XR Obj. at 4) contradicts the claim language. The claim language has the present tense requirement that the "restraining" occur in response to "ascertaining" when another access point *is* receiving a signal. In other words, the ascertaining has to be done when a signal *is* being received, not a crystal ball prediction of when a signal *might* be received. If the Applicant wished to claim the idea of restraining transmission when expecting a transmission, it could have done so. And that's exactly what the Applicant did for another, unasserted claim: claim 23 recites "restraining" when another access point "*is expecting*" another signal.

Second, XR argues that the specification says "the *regularity* or *frequency* of *receptions* can be used as one way to ascertain when an access point is receiving a signal, such as a signal that is recurring." XR Obj. at 5 (emphasis in original, citing '939 Patent at 13:34-64). However, the portion of the specification XR cites for this proposition says no such thing. Instead, this portion of the specification refers to a "scanning logic" that does the exact opposite of what's being claimed here: this scanning logic cancels out interference so as to "not constantly prevent [an access point] on the same channel from transmitting." '939 Patent at 13:48-60.

---

[2] This "restrain . . . responsive to" limitation is a function performed by the "signal transmission/reception coordination logic". Defendants note that XR did not identify of the specification excerpts it cites for either its expected transmission theory (17:18-32) or its regularity of transmission theory (13:34-64) in its proposed corresponding structure at *Markman*, and does not do so in its objections.

5

**IV.     "the access point" (claims 20-21)**

XR's argument that the claim refers to "the first access point" fails to grapple with the fact that the claim recites both "a first access point" and "a second access point" and either access point is a reasonable interpretation, which is why the Court correctly found this claim to be indefinite.  XR fails to explain why the claim necessarily refers to one access point as opposed to the other.

**V.      "2nd Generation Partnership Project (3GPP) Long Term Evolution (LTE), 3GPP LTE-Advanced, 3GPP LTE-TDD, 3GPP LTE-FDD" ('511 patent, claims 2, 11)**

XR's objections fail to address this Court's precedent, which makes clear that the meaning of a patent claim cannot change over time.  *See Fundamental Innovation Sys. Int'l LLC v. Samsung Elecs. Co.*, No. 2:17-cv-145-JRG-RSP, 2018 WL 647734, at *11 (E.D. Tex. Jan. 31, 2018) (explaining that the term "USB" should be limited to the USB standards "that existed at the time of the invention").  Indeed, if the claim scope covers standards that evolved in time (such as ten years after the patent application was filed), then such a claim would necessarily be invalid for lack of written description because the inventor could not have possessed the full scope of the claim (*i.e.*, including the evolved standard) at the time of the invention.

[SIGNATURES APPEAR ON FOLLOWING PAGE]

Dated: December 13, 2024

Respectfully submitted,

*/s/ Matthew S. Yungwirth*
Deron R. Dacus (TX SBN 00790553)
ddacus@dacusfirm.com
**THE DACUS FIRM, P.C.**
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
Telephone: 903.705.1117

Matthew S. Yungwirth
msyungwirth@duanemorris.com
Alice E. Snedeker
aesnedeker@duanemorris.com
John R. Gibson
jrgibson@duanemorris.com
Sajid Saleem
ssaleem@duanemorris.com
**Duane Morris LLP**
1075 Peachtree Street NE
Suite 1700
Atlanta, Georgia 30309
Telephone: (404)-253-6900

William Andrew Liddell
waliddell@duanemorris.com
**Duane Morris LLP**
Las Cimas IV
900 S. Capital of Texas Hwy, Suite 300
Austin, Texas 78746
Telephone: (512) 277-2300

Elissa Sanford
esanford@duanemorris.com
**Duane Morris LLP**
901 New York Avenue N.W. Ste 700 East
Washington, D.C. 20001-4795

*Counsel for Defendants/Intervenors*

*/s/ Melissa R. Smith*
Melissa R. Smith
Texas Bar No. 24001351
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

*Counsel for Defendant*
*T-Mobile USA, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 13, 2024, the foregoing document was served upon counsel of record for plaintiff in this instant action via e-mail.

*/s/ Melissa R. Smith*