# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| XR COMMUNICATIONS, LLC, dba VIVATO TECHNOLOGIES,<br>*Plaintiff,*<br><br>v.<br><br>AT&T SERVICES INC.; AT&T MOBILITY LLC; and AT&T CORP.,<br>*Defendants,*<br><br>NOKIA OF AMERICA CORPORATION and ERICSSON INC.,<br>*Intervenors.* | Case No. 2:23-cv-00202-JRG-RSP<br>(Lead Case)<br><br>**JURY TRIAL DEMANDED** |

### PLAINTIFF XR COMMUNICATIONS, LLC'S RENEWED MOTION TO COMPEL

# **TABLE OF CONTENTS**

I.      The Court Should Order Defendants and Intervenors to Supplement Discovery on gNodeB Base Stations and Reciprocity Beamforming. ........................... 1

II.     The Court Should Order Defendants and Intervenors to Supplement All Interrogatory Responses And Document Productions with Respect to Coordinated Multipoint, Including on eNodeB Base Stations. .................................. 4

## TABLE OF REFERENCED INTERROGATORIES

| | Interrogatories |
|---|---|
| | **Common Interrogatories:** |
| | **Common Interrogatory No. 1**<br><br>Identify and describe each of Your cellular base stations and/or cellular base station components that includes one or more components supplied by Ericsson or Nokia, that supports 3GPP 5G NR beamforming, and that has been made, imported, sold, offered for sale, configured, operated, deployed, or used by You or on Your behalf or by any of Your customers in the United States, including without limitation by identifying the name(s), location, model, manufacturer or supplier, base band unit components, radio components and corresponding band (e.g. radio unit and components thereof and corresponding band), RF equipment or RF module components, antenna component information (e.g., MIMO or Massive MIMO), and any other information necessary to identify the cellular base station instrumentality or relevant component thereof. A complete response to this Interrogatory will include any model or version and any other designation or nomenclature used by You to identify the cellular base station, relevant component, and any version or variation thereof. A complete response should include any cellular base station product or instrumentality that is implicated by Plaintiff's Complaint or Plaintiff's Infringement Contentions in this litigation (including, without limitation, as amended or supplemented).<br><br>**Common Interrogatory No. 2**<br><br>Identify and describe each accused product or instrumentality and hardware or software component thereof that supports, performs, is capable of, uses, participates in, and/or benefits from radio coordination or base station coordination, including, but not limited to, Coordinated Multipoint and/or coordination of radios and/or radio resource management, such as coordination of radio units by a DU and/or CU (including, without limitation, components in core network and/or Cloud RAN, vRAN, Open RAN), including the extent of such support, performance, capability, participation, use, or benefit. A complete response should include any product or instrumentality that is implicated by Plaintiff's Complaint or Plaintiff's Infringement Contentions in this litigation (including, without limitation, as amended or supplemented).<br><br>**Common Interrogatory No. 8**<br><br>For each product or instrumentality identified in your responses to Common Interrogatory No.1, Common Interrogatory No. 2, or otherwise identified in Plaintiff's Complaint or Infringement Contentions in this litigation, including, without limitation, as amended or supplemented, identify and describe in detail the dates and circumstances that the product was first publicly announced, sold, imported, offered for sale, used, or put into active service, operated, or used in the United States and identify the person(s) responsible for each activity. |
| | **Individual Interrogatories to Intervenors Ericsson and Nokia:** |

**Individual Interrogatory No. 1**

Identify and describe Your products supplied to AT&T, T-Mobile, or Verizon (including, e.g., base stations, base station equipment, baseband units, radios, software releases running on the hardware, and frequency bands) which support and use Reciprocity Beamforming based on uplink Sounding Reference Signals (e.g., in TDD bands).

**Individual Interrogatory No. 2**

Identify and describe Your products supplied to AT&T, T-Mobile, or Verizon (including, e.g., base stations, base station equipment, baseband units, radios, software releases running on the hardware, and frequency bands) which support and use Coordinated Multipoint, Beamforming Coordination, or Joint Transmission

**Individual Interrogatory No. 3**

Identify and describe Your products supplied to AT&T, T-Mobile, or Verizon (including, e.g., base stations, base station equipment, baseband units, radios, software releases running on the hardware, and frequency bands) which support and use inter-cell and/or inter-radio interference coordination, e.g., as part of Coordinated Multipoint, Beamforming Coordination, Joint Transmission, or Dynamic Point Selection

**Individual Interrogatory No. 4**

Identify and describe each Ericsson or Nokia feature (e.g., by FAJ number, feature number), including any related parameters, that relates to any form of Reciprocity Beamforming based on uplink Sounding Reference Signals (e.g., in TDD bands), and identify and describe whether they are enabled or disabled in each product or instrumentality identified in your responses to Common Interrogatory No. 1, Common Interrogatory No. 2 or otherwise identified in Plaintiff's Complaint or Infringement Contentions in this litigation.

**Individual Interrogatory No. 5**

Identify and describe each Ericsson or Nokia feature (e.g., by FAJ number, feature number), including any related parameters, that relates to any form of Coordinated Multipoint, Beamforming Coordination, or Joint Transmission and identify and describe whether they are enabled or disabled in each product or instrumentality identified in your responses to Common Interrogatory No. 1, Common Interrogatory No. 2 or otherwise identified in Plaintiff's Complaint or Infringement Contentions in this litigation.

**Individual Interrogatory No. 7**

For each product or instrumentality identified in your responses to Common Interrogatory No 1, Common Interrogatory No. 2, Individual Interrogatory Nos. 1-6, or otherwise identified in Plaintiff's Complaint or Infringement Contentions in this litigation, including, without limitation, as amended or supplemented (e.g., base stations, RRH), identify its location (latitude and longitude) and geographic unit(s) that it is

considered to be a part of in the ordinary course of business for network deployment or upgrade decisions (e.g., Census block, Designated Market area).

**Individual Interrogatory No. 9**

Identify and describe the increase in network capacity, for each of Your geographic sectors and frequency bands, provided by 4G LTE Coordinated Multipoint.

**Individual Interrogatories to Defendants AT&T, Verizon, T-Mobile:**

**Individual Interrogatory No. 1**

Identify and describe on a monthly basis, dating from six years prior to the filing of the Complaint in this case to present, the portions of Your network (including in terms of geography, subscribers, nodes, sites, base stations, radios, and frequency bands) which support and use Reciprocity Beamforming based on uplink Sounding Reference Signals (e.g., in TDD bands).

**Individual Interrogatory No. 2**

Identify and describe on a monthly basis, dating from six years prior to the filing of the Complaint in this case to present, the portions of Your network (including in terms of geography, subscribers, nodes, sites, base stations, radios, and frequency bands) which support and use Coordinated Multipoint, Beamforming Coordination, or Joint Transmission

**Individual Interrogatory No. 6**

Identify and describe each Ericsson or Nokia feature (e.g., by FAJ number, feature number), including any related parameters, that relates to any form of Reciprocity Beamforming based on uplink Sounding Reference Signals (e.g., in TDD bands), and identify and describe whether they are enabled or disabled in each product or instrumentality identified in your responses to Common Interrogatory No. 1, Common Interrogatory No. 2 or otherwise identified in Plaintiff's Complaint or Infringement Contentions in this litigation.

**Individual Interrogatory No. 7**

Identify and describe each Ericsson or Nokia feature (e.g., by FAJ number, feature number), including any related parameters, that relates to Coordinated Multipoint, Beamforming Coordination, or Joint Transmission and identify and describe whether they are enabled or disabled in each product or instrumentality identified in your responses to Common Interrogatory No. 1, Common Interrogatory No. 2 or otherwise identified in Plaintiff's Complaint or Infringement Contentions in this litigation.

**Individual Interrogatory No. 8**

For each product or instrumentality identified in your responses to Common Interrogatory No. 1, Common Interrogatory No. 2 or otherwise identified in Plaintiff's Complaint or Infringement Contentions in this litigation, including, without limitation, as amended or supplemented (e.g., base stations), identify the location (latitude and longitude) and geographic unit(s) that it is considered to be a part of in the ordinary

| | |
|---|---|
| | course of business for network deployment or upgrade decisions (e.g., Census block, Designated Market Area). |
| | **Individual Interrogatory No. 9** |
| | Identify, from January 2017 to the present, by each geographic unit typically used for network deployment and upgrade decisions (e.g., census block, designated market area), (a) Your base station and radio equipment and network deployment costs, categorized by relevant accounting line items (e.g., labor costs, equipment costs, capital expenditures, operating expenditures, spectrum costs), including the cost of Your spectrum holdings in each census block, designated market area, or other applicable geographic unit; and (b) any analyses or assessments of expected performance improvements resulting from new deployments, investments, and/or network upgrades |

\* Defendants' and Intervenors' responses are available upon request.

**TABLE OF CORRESPONDENCE**

| No. | Topic |
|---|---|
| 1 | July 12, 2024 Letter from J. Pickens to M. Yungwirth re Defendants/Intervenors' deficient production of documents and discovery responses. |
| 2 | August 7, 2024 Letter from J. Ma to M. Yungwirth re Defendants/Intervenors' deficient production of documents and discovery responses. |
| 3 | August 14, 2024 Meet and Confer re Defendants/Intervenors' deficient production of documents and discovery responses. |
| 4 | August 16, 2024 Letter from J. Ma to M. Yungwirth re Memorializing August 14, 2024 Meeting. |
| 5 | September 5, 2024 Lead Meet and Confer re Defendants/Intervenors' deficient production of documents and discovery responses. |
| 6 | October 24, 2024 Letter from J. Ma to M. Yungwirth re Defendants/Intervenors' deficient production of documents and discovery responses. |
| 7 | November 14, 2024 Email from J. Ma to M. Yungwirth re Request for a lead and local meet and confer. |
| 8 | November 14, 2024 Email from M. Yungwirth to J. Ma re Availability for a lead and local meet and confer. |
| 9 | November 21, 2024 Email from J. Ma to M. Yungwirth re Defendants/Intervenors' deficient production of documents and discovery responses. |
| 10 | November 22, 2024 Letter from E. Sanford to J. Ma re Defendants/Intervenors' deficient production of documents and discovery responses. |
| 11 | December 2, 2024 Lead and Local Meet and Confer re Defendants/Intervenors' deficient production of documents and discovery responses. |
| 12 | December 4, 5, 9, 12, 16, 2024 Emails between Counsel discussing the ongoing discovery issues and withdrawal of Dkt. 114 to provide time to narrow disputes |
| 13 | December 18, 2024 Lead and Local Meet and Confer re Defendants/Intervenors' deficient production of documents and discovery responses. |

\* Details of any letter or meet and confer are available upon request.

Plaintiff XR Communications, LLC dba Vivato Technologies ("Vivato" or "XR") moves to compel Defendants and Intervenors to provide fulsome discovery on reciprocity beamforming for gNodeB base stations and Coordinated Multipoint and related features on eNodeB base stations.

I.  **The Court Should Order Defendants and Intervenors to Supplement Discovery on gNodeB Base Stations and Reciprocity Beamforming.**

XR previously moved to compel discovery on gNodeB base stations and reciprocity beamforming. Dkt. 114. Despite XR providing Defendants and Intervenors more time to cure their deficiencies, they have failed to do so, leaving XR no choice but to renew its request that the Court order them to provide complete and responsive interrogatory responses and document productions addressing gNodeB base stations, including the accused reciprocity beamforming functionalities.

**Base Station Information and Location**. XR requested identification of all cellular base stations and components, including with respect to reciprocity beamforming made and sold by Ericsson or Nokia for use by Defendants. For each base station, XR sought details on base band units, RF equipment, RF modules, antennas, software versions, reciprocity beamforming feature numbers present, and parameters indicating whether the features are enabled or disabled. *See, e.g.*, Common Interrogatory No. 1; Defendants' Individual Interrogatory Nos. 1, 6; Intervenor's Individual Interrogatory No. 1, 4. XR also requested the geographic location (longitude and latitude) of each base station. *See, e.g.*, Common Interrogatory No. 1; Defendants' Individual Interrogatory No. 8.

This information is relevant to understanding Defendants' use of the accused functionalities and the extent to which reciprocity beamforming is deployed across Defendants' networks. Despite confirming during the September 5, 2024 lead counsel meet and confer that they were not refusing to provide these categories of information, AT&T, Verizon and Intervenors failed to provide it:

- AT&T has failed to provide fulsome supplements. *See* AT&T's Response to Common Interrogatory No. 1, Defendants' Individual Interrogatory Nos.

1

    1, 6, 8.
- Verizon has failed to provide fulsome supplements. *See* Verizon's Response to Common Interrogatory No. 1 (citing documents that fail to provide the full scope of information requested), Defendants' Individual Interrogatory Nos. 1, 6, 8 (citing documents that fail to provide the full scope of information requested).
- Ericsson has failed to provide underlying data related to its base station statistics for reciprocity beamforming, including an identification of each base station that uses reciprocity beamforming along with its geographic location in longitude and latitude. *See* Ericsson's Response to Intervenor's Individual Interrogatory No. 1 (providing the number of nodes activated but no information on their identity and location).
- Nokia has failed to provide fulsome supplements. For instance, Nokia has failed to provide a narrative response describing base station statistics for reciprocity beamforming. *Compare* Nokia's Response to Intervenor's Individual Interrogatory Nos. 1, 4 (Ex. A), with Ericsson's Response to Intervenor's Individual Interrogatory Nos. 1, 4. Nokia also needs to produce any underlying data related to its base station statistics, including an identification of each base station that uses reciprocity beamforming along with its geographic location in longitude and latitude. Nokia has also failed to provide descriptions or activation status of potentially relevant feature IDs such as ▮▮▮▮▮▮▮▮▮▮.

Although T-Mobile has produced data that more closely aligns with XR's requests, it remains unclear why AT&T and Verizon have failed to provide basic information about the base stations, including their identity and geographic location. While AT&T, Verizon and Intervenors agreed to provide "supplemental responses" by December 11, 2024, these supplements failed to resolve the concerns above.

    **Geographic Units for Network Deployment**. XR requested information on geographic units (e.g., census blocks or designated market areas) associated with each base station for network deployment or upgrades. *See* Defendants' Individual Interrogatory No. 8, 9. Understanding the geographic deployment of the gNodeB base stations is relevant to quantifying damages. Verizon failed to provide fulsome supplements. *See* Verizon's Response to Defendants' Individual Interrogatory No. 8, 9 (citing documents that fail to provide the full scope of information

requested).

**Deployment Costs and Performance Analyses**. XR sought details on the costs of network deployment, including spectrum holdings and analyses of expected performance improvements. *See* Defendants' Individual Interrogatory No. 9. Understanding these metrics are relevant to evaluating damages, in understanding the value of Defendants' investments and the decision-making process for using the accused functionalities. AT&T and Verizon have failed to provide fulsome supplements. *See* AT&T's Response to Defendants' Individual Interrogatory No. 9; Verizon's Response to Defendants' Individual Interrogatory No. 9 (citing documents that fail to provide the full scope of information requested).

**User Equipment and Network Traffic Metrics**. XR requested metrics on the proportion and volume of 5G cellular network transmission traffic compared to total cellular network transmission traffic in Defendants' networks, broken down by manufacturer and with respect to reciprocity beamforming. *See* Defendants' Individual Interrogatory Nos. 3, 4. XR also requested information regarding user equipment connections to base stations and average uplink and downlink throughput to user equipment devices on Defendants' network during peak times. *See id.*, at Nos. 10-11. Understanding these metrics are relevant to evaluating damages, in understanding the extent of use of the accused functionalities. AT&T and Verizon have failed to provide fulsome supplements. *See* AT&T's Response to Defendants' Individual Interrogatory Nos. 3 (citing documents that fail to provide the full scope of information requested), 4, 10, 11; Verizon's Response to Defendants' Individual Interrogatory No. 4.

**First Use**. XR requested facts regarding the first use of the base stations and accused features in the United States. *See* Common Interrogatory No. 8. This information is relevant for establishing the date of the hypothetical negotiation and apportionment. AT&T, T-Mobile, and Verizon's

3

responses to date are non-responsive and fail to provide the information sought, such as a clear response confirming when the base stations and source code containing reciprocity beamforming and parameters enabling reciprocity beamforming were first deployed and used.

**II.    The Court Should Order Defendants and Intervenors to Supplement All Interrogatory Responses And Document Productions with Respect to Coordinated Multipoint, Including on eNodeB Base Stations.**

Vivato previously moved to compel on Coordinated Multipoint on eNodeB base stations. Dkt. 114. The Parties have since narrowed disputes to focus on Ericsson's "Downlink Coordinated Multipoint" feature ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬). Defendants/Intervenors produced code for this feature but are withholding certain technical documents and information about it. The Court should order Defendants and Intervenors to supplement (1) document productions with all implementation descriptions, algorithm descriptions, and code descriptions for Coordinated Multipoint on eNodeB base stations; (2) interrogatory responses involving Coordinated Multipoint to address Inter-eNodeB Coordinated Multipoint on eNodeB base stations. As a result, Intervenors will be compelled to disclose at least the identification of the eNodeB base stations supporting Coordinated Multipoint (Individual Interrogatory Nos. 2-3) and their geographic locations (Individual Interrogatory No. 7); and the increase in network capacity for each geographic sector and frequency band provided by 4G LTE Coordinated Multipoint (Individual Interrogatory No. 9). Further, Defendants will be compelled to identify at least the eNodeB base stations supporting Coordinated Multipoint (Individual Interrogatory No. 2), their geographic locations (Individual Interrogatory No. 8), and the network traffic using it (Individual Interrogatory No. 5).

Coordinated Multipoint on eNodeB base stations is an accused feature and has been since day one. *See* ECF 1 at ¶ 72 (identifying "cellular base stations / RAN solutions that support 3GPP Coordinated Multipoint Transmission and Reception" as "Accused Instrumentalities"). Plaintiff's Infringement Contentions for U.S. Patent 8,289,939 served 8/31/23 pursuant to ECF 54 (the "'939

4

Chart", Ex. B) accuses Coordinated Multipoint on eNodeB base stations ("Inter-eNB CoMP"):

> As another non-limiting example, the Accused Products may use one or more coordinated multipoint transmission and reception (CoMP / ***Inter-eNB CoMP***) radio resource management (RRM) techniques. A RAN Solution supporting coordinated multipoint transmission and reception (CoMP / ***Inter-eNB CoMP***) functions and/or radio resource management (RRM) functions is addressed in the charts below as ***yet another non-limiting example of an infringing configuration***. *See* '939 Chart, p. 2.

The '939 Chart presents a complete infringement theory on Inter-eNodeB Coordinated Multipoint ("Inter-eNB CoMP")[1]. After calling out the feature in the preamble (30[pre], pp. 2) and citing the relevant 3GPP TS 36.300 specification § 16.1.9 (*id.* pp. 26-27), the theory specific to Inter-eNB CoMP is presented in 30[a] (the "wireless input/output" limitation, pp. 39-42).

> In this example, a wireless input/output (I/O) unit corresponds to Defendant's one or more CoMP RAN systems that coordinate using ***Inter-eNB CoMP*** (or Inter-gNB CoMP, or Inter-ng-eNB CoMP) to provide the wireless cellular carrier network service that provides wireless input and wireless output to connected devices. The Ericsson RAN solution or Nokia RAN solution establishes a plurality of access points that the wireless communications devices in the network will connect to in order to receive wireless connectivity with Defendant's cellular network. For example, the solution establishes a plurality of wireless base stations called "E-UTRAN Node B," "Evolved Node B" "eNodeB," "eNB", or "Next Generation e-NodeB" or "ng-eNB," or "Next Generation NodeB" or "gNB". The base station comprises beamformer and antenna array. A wireless communications device can connect to a specific base station through which it accesses the network. In the parlance of coordinated multipoint transmission and reception, the accused products establish a plurality of transmission/reception points ("access points") that a wireless communication devices connects to through which it accesses the network. The solution likewise establishes a plurality of cells, each corresponding to a cellular base station, and a wireless communications device can connect to a specific cell through which it accesses the network. *See* '939 Chart, p. 39-40 (claim 30[a]).

---

[1] The '939 Chart refers to Coordinated Multipoint as "Inter-eNB CoMP," the abbreviation in the 3GPP 4G LTE standard specifications, citing § 16.1.9 (Inter-eNB CoMP) of 3GPP TS 36.300. "Inter-eNB" refers to the "eNB" or "eNodeB," which is the term used for a 4G LTE base station. "CoMP" is the abbreviation for "Coordinated Multipoint" used in 3GPP TS 36.300. 3GPP TS 36.300 is a 4G LTE specification in the "3GPP TS 36.xxx" series. The "36.xxx" signifies 4G LTE.

The Inter-eNB CoMP theory is also presented for 30[b] ("signal transmission/reception coordination logic").

> As another example, the signal transmission/reception coordination logic can also correspond to the Coordinated MultiPoint Transmission and Reception (CoMP) logic in the accused products/instrumentalities. In this example, the CoMP logic ascertains, by monitoring the plurality of transmission/reception points (TRP) for received signals, that a first transmission/reception point (TRP) is receiving a first signal on a first channel, including by monitoring received signals on beams or layers. Responsive to the ascertaining that the first TRP is receiving the first signal, the CoMP logic is further adapted to restrain a second transmission/reception point (TRP) from transmitting a second signal on a second channel different from the first channel, by preventing, delaying, muting, or re-assigning channels for the second TRP, using CoMP scheduling algorithms such as dynamic point selection and control or beamforming coordination as non-limiting examples. These functionalities satisfy the claim language literally and under the doctrine of equivalents, because they are insubstantially different from the claim limitations. *See* '939 Chart, p. 89 (claim 30[b]).

Pages 89-100 in 30[b] further discuss the "Inter-eNB CoMP" theory, citing 3GPP TS 36.300 § 16.1.9 (Inter-eNB CoMP) and discussing Ericsson articles on its CoMP feature in LTE Advanced.

The charts also clearly accuse 4G hardware. They accuse a "RAN Solution supporting coordinated multipoint transmission and reception (CoMP / **Inter-eNB CoMP**)" as "an infringing configuration" (p. 2), and describe Ericsson's features "used with conventional systems in today's **LTE networks**" (pp. 3-4) among other recitations of "4G" (pp. 15-17). Similarly, the contentions' cover pleading accuses LTE hardware, such as Ericsson Baseband 6502. ECF 47-4 at 3.

Vivato was diligent. Vivato's earliest interrogatories, such as Common Interrogatory No. 2, requested identification of products that support "Coordinated Multipoint." Defendants/Intervenors included general objections, but did not say Coordinated Multipoint was not accused or accused only for a subset of base stations. Between October 2023 and August 2024, Defendants/Intervenors produced some documents on Inter-eNB Coordinated Multipoint on a rolling basis. On October 12, 2023, Ericsson produced ERICSSON-XR-099551 ("Downlink Coordinated Multi-Point Feature

Description"). On August 8, 2024, Ericsson produced ERICSSON-XR-622750 on activation status of Downlink Coordinated Multipoint. On September 6, 2024, Ericsson produced ERICSSON-XR-623987 indicating release dates of Downlink Coordinated Multi-Point. In October 2023, T-Mobile produced TMobile-XR 0000795 indicating support for Downlink CoMP.

However, while Defendants/Intervenors produced code and some documents about the feature, they are withholding other documents and interrogatory responses about it. On July 12, 2024, Vivato requested "implementation description(s), algorithm specification(s), or feature specifications" for "CoMP" and "Coordinated Multipoint," feature activation and identification of which baseband units, radio units, and operating bands support Coordinated Multipoint, and documents on Ericsson's "Downlink Coordinated Multipoint." Vivato also served on August 14, 2024 Individual Interrogatory Nos. 2, 3, and 5 on "Coordinated Multipoint." Vivato also served on August 28, 2024 Individual Intervenor Interrogatory No. 9 on 4G LTE Coordinated Multipoint.

Defendants/Intervenors refuse to provide the information because they maintain that "LTE Coordinated Multipoint [] is not accused of infringement." In meeting and conferring, Plaintiff explained Inter-eNB Coordinated Multipoint is charted and provided detailed citations in an October 24, 2024 letter . XR is limiting its request to Ericsson's Downlink Coordinated Multipoint, identified in at least XR's August 2023 Contentions, July 12 letter, September 4, 2024 Rule 30(b)(6) Notice, and in Dkt. 114. Defendants/Intervenors since contended in a December 12 letter that they recently began investigating this feature, found evidence they contend supports a non-infringement argument about the feature, and accordingly believe they are permitted to withhold the requested documents and information. But that position only confirms that documents and information about this feature are discoverable under the Local Rules of the Eastern District of Texas. *See* L.R. CV-26(d)(1)-(5).

7

Dated: December 20, 2024								Respectfully submitted,

/s/ *Reza Mirzaie*
Marc Fenster
CA State Bar No. 181067
Reza Mirzaie
CA State Bar No. 246953
Adam Hoffman
CA State Bar No. 218740
Neil A. Rubin
CA State Bar No. 250761
James Pickens
CA State Bar No. 307474
Christian W. Conkle
CA State Bar No. 306374
Philip Wang
CA State Bar No. 262239
Minna Jay
CA State Bar No. 305941
Paul Kroeger
CA State Bar No. 229074
**RUSS AUGUST & KABAT**
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Telephone: 310-826-7474
rak_vivato@raklaw.com

Andrea L. Fair
TX State Bar No. 24078488
MILLER FAIR HENRY PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Telephone: 903-757-6400
andrea@millerfairhenry.com

*Attorneys for Plaintiff,*
*XR Communications, LLC,*
*dba Vivato Technologies*

8

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2024, I electronically filed the foregoing document with the Clerk of the Court for the Eastern District of Texas under seal, and served counsel of record with a copy via electronic email.

/s/ *Reza Mirzaie*
Reza Mirzaie

## CERTIFICATE OF CONFERENCE

XR refers to the Table of Correspondence above, which sets forth the extensive attempts by XR to reach agreement on the issues set forth in this Motion, some of which date back as early as July 12, 2024. This includes a meeting on August 14, 2024, where counsel for XR, including Jonathan Ma, met and conferred with counsel for Defendants/Intervenors, including Matt Yungwirth. This also includes a meeting on September 5, 2024, where counsel for XR, including Reza Mirzaie as lead counsel, met and conferred with counsel for Defendants/Intervenors, including Matt Yungwirth as lead counsel. XR did not yet have local counsel as of the September 5, 2024 conference. Local counsel for XR, Andrea Fair, first appeared on behalf of XR on October 22, 2024. On November 14, 2024, counsel for XR requested availability for a further lead and local meet and confer on November 15, 2024 or November 18, 2024 on longstanding issues, to

which counsel for Defendants/Intervenors did not provide their availability for these dates. While counsel for Defendants/Intervenors provided a letter response on November 22, 2024, setting forth some of their positions, their letter failed to resolve the issues set forth in this Motion.  Given that the parties were unable to reach agreement and reached an impasse, XR filed a motion to compel as Dkt. No. 114 . On December 2, 2024 the Parties held another lead and local meet and confer to discuss narrowing the issues in dispute. On December 4, 2024, XR filed an unopposed motion to withdraw the motion to compel so that the Parties could continue to narrow disputes, which the Court granted. On December 10, 2024, XR requested another lead and local meet and confer to discuss the ongoing discovery disputes on or before December 13, 2024. Defendants/Intervenors did not provide their availability for these dates. The parties conducted another lead and local meet and confer on December 18, 2024. The parties were unable to reach agreement and reached an impasse.  These open issues are ripe for the Court to resolve. This motion is opposed by Defendants/Intervenors.

/s/ *Reza Mirzaie*
Reza Mirzaie