# Exhibit 39

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | | |
|---|---|---|
| FRESHUB, INC., FRESHUB, LTD., <br> *Plaintiffs* <br><br> -vs- <br><br> AMAZON.COM INC., PRIME NOW, LLC, <br> WHOLE FOODS MARKET INC., WHOLE <br> FOODS MARKET SERVICES, INC., <br> AMAZON.COM SERVICES LLC, <br> *Defendants* | § § § § § § § § § § § | 6:21-CV-00511-ADA |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs' Motion for Judgment on Partial Findings pursuant to Fed. R. Civ. P. 52(c). Dkt. 256. After considering the parties' briefs and applicable law, the Court **GRANTS** Plaintiffs' Motion.

## I.   BACKGROUND

Plaintiffs Freshub, Inc. and Freshub, Ltd. (collectively, "Freshub") filed this patent infringement lawsuit on June 24, 2019 against Defendants Amazon.com, Inc., Amazon.com Services LLC, Prime Now, LLC, and Whole Foods Market Services, Inc. (collectively, "Amazon"). Dkt. 1. Freshub alleges that Amazon has infringed U.S. Patent Nos. 9,908,153 ("the '153 patent"), 10,213,810 ("the '810 patent"), 10,232,408 ("the '408 patent"), and 10,239,094 ("the '094 patent") (collectively, the "asserted patents"). Dkts. 1 and 30. The asserted patents were all issued from a common parent application No. 11/301,291 ("the '291 application"), which was originally assigned to Ikan Technologies, Inc. and subsequently to a different Ikan entity, Ikan Holdings LLC (hereinafter, these two entities are collectively referred to as "Ikan" whenever it is clear from the context). *See* Dkt. 243-6.

The '291 application was abandoned in January 2012 for failure to respond to a Final Office Action issued by the U.S. Patent and Trademark Office ("PTO"). Dkt. 243-5. Five years later, on January 20, 2017, Ikan petitioned the PTO to revive the '291 application. Dkt. 243-8. On April 27, 2017, the PTO granted Ikan's petition to revive the '291 application, which was later issued as U.S. Patent No. 9,821,344 ("the '344 patent")—the parent of all four asserted patents. As part of its defenses, Amazon contends that the asserted patents are unenforceable due to inequitable conduct on the part of Ikan because Ikan made a material misrepresentation to the PTO in its petition to revive the '291 application. The Court decided to hold a bench trial for the inequitable conduct issue and a jury trial for all other disputes between the parties.

Jury trial for this case began on June 14, 2021 in the Waco courthouse, where only three (the '153, '810, and '408 patents) of the four originally asserted patents were tried before the jury. Dkt. 219 at 4. On June 21, 2021, after sending the jury to the jury room to deliberate, the Court asked the parties about their witnesses for the bench trial regarding the inequitable conduct issue. The parties represented that they were only going to play the recording of the deposition of Mr. David Weiss, the patent attorney who handled the prosecution and revival of the '291 application. *See* Dkt. 244 (6/21/2021 Trial Transcript) at 1442:25-1443:22. The parties did not object to the proposal that the Court review the recording of Mr. Weiss's deposition in private instead of in open court. *Id*. The parties provided the recording of Mr. Weiss's deposition to the Court right afterwards, and the Court duly reviewed the deposition on the same day. Also on June 21, 2021, Amazon filed a Notice re Evidence for Bench Trial on Inequitable Conduct (Dkt. 243) and offered the following evidence to prove its case regarding inequitable conduct:

- January 27, 2021 Designated Deposition Testimony of David Weiss (Dkt. 243-1, 243-2);

- Defendants' trial exhibit D0288, Log of Documents Withheld or Redacted for Privilege by Knobbe, Martens, Olsen & Bear LLP (Mr. Weiss's law firm) (Dkt. 243-3);

- Defendants' trial exhibit D0291, Final Rejection – U.S. Patent Application 11/301,291 (U.S. 9,821,344 file history) Office Action, dated June 6, 2011 (Dkt. 243-4);

- Defendants' trial exhibit D0292, Notice of Abandonment – U.S. Patent Application 11/301,291 (U.S. 9,821,344 file history), dated Jan. 3, 2012 (Dkt. 243-5);

- Defendants' trial exhibit D0293, Ikan Technologies Inc. Patent Assignment, dated December 4, 2012 (Dkt. 243-6);

- Defendants' trial exhibit D0296, PTO Decision on Petition for Revival – U.S. Patent Application 11/301,291 (U.S. 9,821,344 file history), dated April 20, 2017 (Dkt. 243-7); and

- Defendants' trial exhibit D0490, Petition for Revival of an Application for Patent Abandoned Unintentionally Under 37 CFR 1.137(a) – U.S. Patent Application 11/301,291 (U.S. 9,821,344 file history), dated January 20, 2107 (Dkt. 243-8).

On June 22, 2021, the jury reached a verdict, finding that the asserted claims of the '153, '810, and '408 patents were valid, but that Amazon did not infringed any of the asserted claims. Dkt. 253. The next day, Freshub filed the instant Motion for Judgment on Partial Findings regarding the inequitable conduct issue pursuant to Fed. R. Civ. P. 52(c). Dkt. 256. The Motion was subsequently fully briefed by the parties. *See* Dkts. 258 and 267.

## II.     LEGAL STANDARD

"If a party has been fully heard on an issue during a nonjury trial . . ., the court may enter judgment against the party on a claim or defense that . . . can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 52(c). "A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a)." *Id*. Such findings and conclusions may be incorporated in any opinion or memorandum of decision filed by the court. Fed. R. Civ. P. 52(a).

Rule 52(c) "does not require the district court to draw any inferences in favor of the non-moving party and permits the court to make a determination in accordance with its own view of the evidence." *Fairchild v. All Am. Check Cashing, Inc*., 815 F.3d 959, 964 n.1 (5th Cir. 2016) (quotation and citation omitted). However, a district court still must arrive at each of its factual determinations based on the applicable burden of proof. *In re Medrano*, 956 F.2d 101, 102 (5th Cir. 1992).

## III.    FINDINGS OF FACT

1. The asserted patents share a specification and title, and claim priority to a common parent, U.S. Patent No. 9,821,344 ("the '344 patent"). (Defendants' trial exhibit D0002.)

2. Ikan Technologies Inc. filed the application that matured into the '344 patent, No. 11/301,291 ("the '291 application"), on December 12, 2005. (D0002.)

3. The PTO published the '291 application on August 10, 2006. (D0002.)

4. The PTO issued a Final Office Action rejecting the claims of the '291 application on June 6, 2011. (Dkt. 243-4 (D0291); Dkt. 243-1 at 84:23-85:10.)

5. David Weiss of Knobbe, Martens, Olson & Bear, LLP ("Knobbe") was the patent

prosecuting attorney for Ikan for the '291 application.

6. Mr. Weiss received the June 6, 2011 Final Rejection and testified that it was the type of material he would normally forward to his client. (Dkt. 243-4 (D0291); Dkt. 243-1 at 84:23-85:10, 86:9-86:15.)

7. Ikan did not respond by the deadline to continue prosecution. (Dkt. 243-5 (D0292); Dkt. 243-4 (D0291); Dkt. 243-1 at 92:18-92:20.)

8. After six months, on January 3, 2012, the PTO sent a Notice of Abandonment. (Dkt. 243-5 (D0292); Dkt. 243-1 at 91:15-92:17.)

9. Mr. Weiss received the Notice of Abandonment and testified that it was the type of material he would normally forward to his client. (Dkt. 243-5 (D0292); Dkt. 243-1 at 91:15-92:17, 94:13-16, 94:18.)

10. Ikan and Mr. Weiss took no action in response to the Notice of Abandonment and allowed the '291 application to go abandoned. (Dkt. 243-1 at 92:18-20.)

11. On December 4, 2012, Ikan transferred its patent rights to a different Ikan entity, Ikan Holdings LLC, in an assignment eventually recorded at the PTO. (Dkt. 243-6 (D0293); Dkt. 243-1 at 101:25-102:5.)

12. Mr. Weiss prepared the assignment document. Sony (Sion) Douer, Ikan's principal and a named inventor on the '291 application, represented both entities in the transaction and signed the document before a notary on behalf of Ikan Technologies Inc. (Dkt. 243-6 (D0293); Dkt. 243-1 at 103:23-105:1, 103:3-19.)

13. The assignment included lists of issued patents and pending applications, as well as a list of "Inactive/Abandoned/Expired" applications. The '291 application is listed as "Inactive/Abandoned/Expired." (Dkt. 243-6 (D0293); Dkt. 243-1 at 103:23-105:1.)

14. The '291 application remained abandoned for about five years. (Dkt. 243-8 (D0490); Dkt. 243-1 at 110:14-111:2.)

15. Ikan petitioned the PTO to revive the '291 application on January 20, 2017. (Dkt. 243-8 (D0490); Dkt. 243-1 at 115:6-115-15, 122:2-12.)

16. Mr. Weiss prepared the petition for Ikan and was aware when he filed the petition that Ikan had abandoned the '291 application for over five years. (Dkt. 243-8 (D0490); Dkt. 243-1 at 105:11-18, 115:6-15.)

17. Mr. Weiss knew that the PTO would not revive the application unless he swore that the entire period of the abandonment of the '291 application was unintentional. (Dkt. 243-1 at 118:19-119:4.)

18. The same day that Mr. Weiss filed the petition to revive, he also recorded the assignment document that Mr. Douer signed in December 2012, wherein Ikan had acknowledged that it had abandoned the '291 application. (PTX-629, Dkt. 243-1 at 105:11-18, 108:25-109:1, 109:3-4, 109:18-110:6, 118:19-119:4.)

19. In the petition to revive, Mr. Weiss made a sworn statement that the entire five-year delay in responding to the PTO's last rejection of the application was "unintentional." (Dkt. 243-8 (D0490); Dkt. 243-1 at 118:19-119:4.)

20. Mr. Weiss knew that the rules required him to investigate the abandonment before requesting revival of the '291 application. (Dkt. 243-8 (D0490); Dkt. 243-1 at 128:13-16.)

21. Mr. Weiss could not identify specific actions he took to investigate the abandonment of the '291 application other than looking at his firm's docketing system. (Dkt. 243-1 at 128:13-16, 135:19-23; 136:6-8; 137:17-19, 138:22-23.)

22. The PTO considered Ikan's January 20, 2017 petition to revive the '291

6

application and granted Ikan's petition on April 20, 2017.

23. In its decision granting Ikan's revival petition for the '291 application, the PTO stated:

> This application has been abandoned for an extended period of time. The U.S. Patent and Trademark Office is relying on petitioner's duty of candor and good faith and accepting the statement that "the entire delay in filing the required reply from the due date for the reply until the filing of a grantable petition pursuant to 37 CFR 1.137 was unintentional."

(Dkt. 243-7 (D0296); Dkt. 243-1 at 122:2-123:1, 125:3-125:12, 125:17-23.)

24. The PTO also noted that the applicant is "obligated under 37 CFR 11.18 to inquire into the underlying facts and circumstances when providing the statement required by 37 CFR 1.137." (Dkt. 243-7 (D0296); Dkt. 243-1 at 127:14-127:20.)

## IV. ANALYSIS

### A. Timeliness

Amazon contends that Freshub's motion under Rule 52(c) is untimely because "such motion must be made *during* the bench trial." Dkt. 258 at 1 (emphasis in original). However, Rule 52(c) itself does not impose a time limitation on when a motion can be filed as long as the motion is filed after the non-moving party "has been fully heard" on the issue. Fed. R. Civ. P. 52(c). Other than citing one single case from the Ninth Circuit, Amazon does not cite any controlling Fifth Circuit law to support its narrow interpretation of Rule 52(c). *See* Dkt. 258. Without any controlling law dictating otherwise, the Court does not interpret Rule 52(c) to impose any time limitation other than that the motion must be filed after the non-moving party "has been fully heard." To the extent that Rule 52(c) imposes any other time limitation, the Court does not find that Amazon is prejudiced by Freshub's motion, which was filed two days after

7

Amazon presented to the Court all its evidence for the bench trial of the inequitable conduct issue.

### B. Inequitable Conduct

"To prove inequitable conduct, the challenger must show by clear and convincing evidence that the patent applicant (1) misrepresented or omitted information material to patentability, and (2) did so with specific intent to mislead or deceive the PTO." *In re Rosuvastatin Calcium Patent Litig.*, 703 F.3d 511, 519 (Fed. Cir. 2012) (citing *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1287 (Fed. Cir. 2011) (en banc)).

"Inequitable conduct may involve actions by both 'the patentee and the attorney who prosecuted the application that resulted in the patent-in-suit, because the knowledge and actions of applicant's attorney are chargeable to [the] applicant.'" *Barry v. Medtronic, Inc.*, 245 F. Supp. 3d 793, 801 (E.D. Tex. 2017), *aff'd*, 914 F.3d 1310 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 869 (2020) (citation omitted); *see also Regeneron Pharm., Inc. v. Merus N.V.,* 864 F.3d 1343, 1346 (Fed. Cir. 2017) (affirming district court's finding of inequitable conduct as to client based on patent prosecutor's withholding of material references); *TransWeb, LLC v. 3M Innovative Props. Co.*, 812 F.3d 1295, 1304 (Fed. Cir. 2016) (affirming district court's finding of inequitable conduct based on inventor and attorney both withholding prior art during prosecution).

#### 1. *Materiality*

The first question is whether Ikan's statement that its five-year abandonment of the '291 application was "unintentional" was material to patentability. "To establish materiality, it must be shown that the [PTO] would not have allowed the claim but for the nondisclosure or misrepresentation." *Rosuvastatin*, 703 F.3d at 519. Since the PTO will not revive an intentionally abandoned application, a misrepresentation of the applicant's intentional abandonment of an

8

application is material to the PTO's determination of whether to revive it. *In re Rembrandt Techs. LP Patent Litig.*, 899 F.3d 1254, 1273 (Fed. Cir. 2018); 37 C.F.R. § 1.137(a).

In its decision granting Ikan's petition to revive the '291 application, the PTO expressly stated that it was "relying on petitioner's duty of candor and good faith and accepting the statement that 'the entire delay . . . was unintentional.'" Dkt. 243-7. The parties also do not dispute that the PTO would not have granted Ikan's revival petition but for Mr. Weiss's sworn statement that the entire period of abandonment was unintentional. Therefore, the Court finds that Ikan's statement of unintentional abandonment of the '291 application is material to patentability.

### 2. *Misrepresentation*

"Where the applicant deliberately permits an application to become abandoned (e.g., due to a conclusion that the claims are unpatentable, that a rejection in an Office action cannot be overcome, or that the invention lacks sufficient commercial value to justify continued prosecution), the abandonment of such application is considered to be a deliberately chosen course of action, and the resulting delay cannot be considered as 'unintentional' . . . ." M.P.E.P. § 711.03(c), (II)(C)(1); *see also Rembrandt*, 899 F.3d at 1272-73. Delaying revival "by a deliberately chosen course of action, until the industry or a competitor shows an interest in the invention is the antithesis of an 'unintentional' delay." M.P.E.P. § 711.03(c), (II)(D).

Amazon, as the party alleging inequitable conduct, bears the burden to prove by clear and convincing evidence that Ikan made a misrepresentation to the PTO in prosecuting the '291 application. *See Therasense*, 649 F.3d at 1287. Amazon contends that Ikan's statement to the PTO that the abandonment of the '291 application was unintentional was false because it made a deliberate decision to abandon the '291 application. Dkt. 255 at 8. Amazon proffers the

following evidence to prove inequitable conduct: (1) the final rejection of the '291 application by the PTO dated June 6, 2011, (2) the notice of abandonment from the PTO dated January 3, 2012, (3) Ikan's petition to revive the '291 application dated January 20, 2107, (4) the PTO's decision granting Ikan's revival petition dated April 20, 2017, (5) the transcript of designated deposition testimony of Mr. Weiss took on January 27, 2021, (6) the privilege log by Mr. Weiss's law firm, and (7) Ikan's patent assignment agreement dated December 4, 2012 ("Assignment Agreement"). Dkt. 243. However, the Court finds that the evidence offered by Amazon does not prove by clear and convincing evidence that Ikan's statement to the PTO was false. Regarding documents (1)-(4) from the file history, other than showing that Mr. Weiss made a sworn statement to the PTO that the abandonment of the '291 application was unintentional, they do not demonstrate that the statement was false. Mr. Weiss's testimony and the Assignment Agreement both show that Mr. Weiss was aware that the '291 application was abandoned, and it can be inferred from the Assignment Agreement that Ikan's principal, Mr. Douer, may have also been aware of the abandonment. However, they do not amount to clear and convincing evidence that Ikan made a deliberate decision to abandon the '291 application. Finally, the privilege log, which only indicates the timing and recipients of communications between certain Ikan and Knobbe personnel, also does not show that Mr. Weiss's statement to the PTO was false. Given the lack of evidence and Amazon's high burden of proof, the Court finds that Amazon has not shown by clear and convincing evidence that Ikan made a misrepresentation to the PTO in reviving the '291 application.

### 3. Intent to Deceive

Since the Court finds that there was no material misrepresentation, it needs not consider intent to deceive. *See Scanner Techs. Corp. v. ICOS Vision Sys. Corp. N.V.*, 528 F.3d 1365, 1375

(Fed. Cir. 2008) ("[T]he first question to address is whether the statements in question are false. If not, materiality is lacking and there is no need to consider the intent prong of inequitable conduct."). However, for completeness of analysis, the Court finds below that Amazon also has not proved by clear and convincing evidence that Ikan possessed a specific intent to deceive the PTO in reviving the '291 application.

"Because direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence." *Therasense*, 649 F.3d at 1290. "However, to meet the clear and convincing evidence standard, the specific intent to deceive must be the single most reasonable inference able to be drawn from the evidence." *Id*. (quotation and citation omitted). "[W]hen there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found." *Id*. at 1290-91.

Here, Amazon does not provide any direct evidence that Ikan possessed a specific intent to deceive the PTO in reviving the '291 application. The indirect evidence provided by Amazon similarly fails to show a specific intent to deceive on Ikan's part is the "single most reasonable inference." Amazon's evidence shows that Mr. Weiss received the notice of abandonment from the PTO and that it was the type of material that Mr. Weiss would normally have forwarded to Ikan, but there is no evidence that Mr. Weiss actually forwarded the notice of abandonment to Ikan or that Ikan in fact received and reviewed the notice of abandonment. The only evidence Amazon offered is that the Knobbe privilege log has three entries showing that Mr. Weiss and his staff communicated with Ikan personnel in 2012 after the PTO issued the notice of abandonment on January 3, 2012. Dkt. 258 at 3. However, there is no evidence that Mr. Weiss or his staff in fact sent the notice of abandonment to Ikan during any of the 2012 communications. Similarly, although the '291 application was listed in the "Inactive/Abandoned/Expired"

11

category in the 2012 Assignment Agreement, which Mr. Douer signed, there is no direct evidence that Mr. Douer had personal knowledge about the status of the '291 application. This especially true given that the '291 application was listed among dozens of other patents and applications and Mr. Douer was not included in the 2012 communications between Mr. Weiss and Ikan personnel after the PTO's notice of abandonment. As such, the Court cannot say that the "single most reasonable inference" based on Amazon's evidence is that Ikan possessed a specific intent to deceive the PTO in reviving the '291 application.

Amazon further contends that (1) Mr. Weiss knew all along that the '291 application was abandoned, (2) knew that the PTO's rules required him to investigate the abandonment before filing the revival petition, and (3) could have checked his firm's record to confirm Ikan's intent regarding the abandonment, yet he did not perform such an investigation before making the sworn statement to the PTO that Ikan had abandoned the '291 application unintentionally. Dkt. 255 at 5; Dkt. 258 at 2-3. The Court agrees with Amazon that Mr. Weiss's knowledge and actions are chargeable to Ikan, which could result in a finding of inequitable conduct. *See, e.g., Barry*, 245 F. Supp. 3d at 801 ("[T]he knowledge and actions of applicant's attorney are chargeable to the applicant."). The Court also agrees with Freshub that, at the most, Amazon has shown that Mr. Weiss was negligent in his failure to conduct a thorough investigation to determine whether Ikan's abandonment of the '291 application was unintentional. However, "[a] finding that the misrepresentation or omission amounts to gross negligence or negligence under a 'should have known' standard does not satisfy this intent requirement," which requires a showing that "the applicant made a deliberate decision." *Therasense*, 649 F.3d at 1290 (citation omitted). Therefore, the Court concludes that Amazon has not proved the intent prong either.

12

### C. Waiver of Privilege

Although this case involves patent infringement claims arising under federal law, the Federal Circuit applies regional circuit law to procedural questions that are not themselves substantive patent law issues. *See GFI, Inc. v. Franklin Corp.*, 265 F.3d 1268, 1272 (Fed. Cir. 2001). The issue of waiver by the disclosure of privileged material does not involve substantive patent law issues and is therefore governed by Fifth Circuit law. *Id*. "[W]aiver . . . generally occurs only where the party holding the privilege seeks to gain some strategic advantage by disclosing favorable, privileged information, while holding back that which is unfavorable." *YETI Coolers, LLC v. RTIC Coolers, LLC*, No. A-15-CV-597-RP, 2016 WL 8677303, at *2 (W.D. Tex. Dec. 30, 2016) (citation omitted).

Amazon contends that Freshub waived its claimed privilege of the communications between Knobbe and Ikan personnel as identified in the Knobbe privilege log (Dkt. 243-3) because Freshub argued in its motion that "the Knobbe log introduced by Defendants actually support that Mr. Weiss properly investigated before filing the revival petition." Dkt. 258 at 1-2; Dkt. 256 at 9. However, Freshub has not asserted the *actual content* of the logged communications as evidence in this case. Rather, Freshub's argument relies upon the *timing* and *recipients* of the communications as stated in the log. The Court agrees with Freshub that pointing to non-privileged facts on the log itself in response to Amazon's arguments does not put the underlying communications at issue, and, therefore, does not result in a waiver of privilege. *See, e.g.*, *YETI Coolers*, 2016 WL 8677303, at *2 (finding no waiver of privilege where the privilege holder did not affirmatively disclose "favorable, privileged information" while holding back unfavorable privileged information) (citation omitted). There is no evidence that Freshub gained any strategic advantage by relying on the timing and recipients of the privileged

13

communications, which information Amazon has equal access to. Therefore, the Court finds that Freshub has not waived its claimed privilege to the communications identified in the Knobbe log.

## V.  CONCLUSION

For the foregoing reasons, the Court finds that Amazon has failed to show inequitable conduct on Ikan's part in reviving the '291 application because Amazon has not carried its burden to prove by clear and convincing evidence that Ikan made a material misrepresentation to the PTO or that Ikan possessed a specific intent to deceive the PTO. Therefore, the Court **GRANTS** Freshub's Motion for Judgment on Partial Findings.

SIGNED this 2nd day of August, 2021.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

14