# Exhibit 8

## PATENT ASSIGNMENT

Electronic Version v1.1
Stylesheet Version v1.1

| SUBMISSION TYPE: | NEW ASSIGNMENT |
|---|---|
| NATURE OF CONVEYANCE: | Limited Judgment of Foreclosure |

**CONVEYING PARTY DATA**

| Name | Execution Date |
|---|---|
| Vivato Networks, Inc. | 04/29/2009 |

**RECEIVING PARTY DATA**

| | |
|---|---|
| Name: | Aequitas Equipment Finance, LLC |
| Street Address: | 5300 Meadows Road, Suite 400 |
| City: | Lake Oswego |
| State/Country: | OREGON |
| Postal Code: | 97035 |

**PROPERTY NUMBERS Total: 19**

| Property Type | Number |
|---|---|
| Application Number: | 11526543 |
| Patent Number: | 7177369 |
| Patent Number: | 6967625 |
| Patent Number: | 7256750 |
| Patent Number: | 7099698 |
| Application Number: | 11383167 |
| Application Number: | 10700329 |
| Application Number: | 10680965 |
| Patent Number: | 6995725 |
| Application Number: | 11275950 |
| Application Number: | 10944376 |
| Patent Number: | 7062296 |
| Application Number: | 11420860 |
| Application Number: | 10700342 |
| Application Number: | 11198016 |

11526543

CH   $760.00

500853708

**PATENT
REEL: 022645 FRAME: 0246**

XR-EDTX1-00000077

| Patent Number: | 6611231 |
| Patent Number: | 6970682 |
| Patent Number: | 6992621 |
| Patent Number: | 6980169 |

**CORRESPONDENCE DATA**

Fax Number:        (916)930-2501
*Correspondence will be sent via US Mail when the fax attempt is unsuccessful.*
Phone:             (916) 930-2585
Email:             carl.schwedler@bullivant.com
Correspondent Name: Carl J. Schwedler
Address Line 1:    1415 L Street, Suite 1000
Address Line 2:    Bullivant Houser Bailey PC
Address Line 4:    Sacramento, CALIFORNIA 95819

| ATTORNEY DOCKET NUMBER: | 29988/00005 |

| NAME OF SUBMITTER: | Carl J. Schwedler |

Total Attachments: 33
source=Limited Judgment#page1.tif
source=Limited Judgment#page2.tif
source=Limited Judgment#page3.tif
source=Limited Judgment#page4.tif
source=Limited Judgment#page5.tif
source=Limited Judgment#page6.tif
source=Limited Judgment#page7.tif
source=Limited Judgment#page8.tif
source=Limited Judgment#page9.tif
source=Limited Judgment#page10.tif
source=Limited Judgment#page11.tif
source=Limited Judgment#page12.tif
source=Limited Judgment#page13.tif
source=Limited Judgment#page14.tif
source=Limited Judgment#page15.tif
source=Limited Judgment#page16.tif
source=Limited Judgment#page17.tif
source=Limited Judgment#page18.tif
source=Limited Judgment#page19.tif
source=Limited Judgment#page20.tif
source=Limited Judgment#page21.tif
source=Limited Judgment#page22.tif
source=Limited Judgment#page23.tif
source=Limited Judgment#page24.tif
source=Limited Judgment#page25.tif
source=Limited Judgment#page26.tif
source=Limited Judgment#page27.tif
source=Limited Judgment#page28.tif
source=Limited Judgment#page29.tif

**PATENT**
**REEL: 022645 FRAME: 0247**

XR-EDTX1-00000078

source=Limited Judgment#page30.tif
source=Limited Judgment#page31.tif
source=Limited Judgment#page32.tif
source=Limited Judgment#page33.tif

**PATENT**
**REEL: 022645 FRAME: 0248**

**XR-EDTX1-00000079**

ORIGINAL

FILED

09 APR 23 PM 3:10

CIRCUIT COURT
FOR MULTNOMAH COUNTY

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

| | |
|---|---|
| AEQUITAS EQUIPMENT FINANCE, LLC, an Oregon Limited Liability Company,<br><br>Plaintiff,<br><br>v.<br><br>VIVATO NETWORKS, INC., a Delaware corporation; VIVATO NETWORKS HOLDINGS, INC., an Oregon corporation,<br><br>Defendants.<br><br>VIVATO NETWORKS HOLDINGS, INC., an Oregon corporation,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>CATCHER HOLDINGS, INC., a Delaware corporation,<br><br>Third-Party Defendant. | No.: 0902-01884<br><br>LIMITED JUDGMENT OF FORECLOSURE<br><br>(Personal Property)<br><br>ENTERED<br>APR 29 2009<br>IN REGISTER SCL |

Based on this Court's entry of:

1. An Order of Default against Defendant Vivato Networks, Inc. on March 11, 2009;

/ / /

Page 1–   LIMITED JUDGMENT OF FORECLOSURE

Bullivant|Houser|Bailey PC
300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

PATENT
REEL: 022645 FRAME: 0249

XR-EDTX1-00000080

2. A Final Judgment against Defendant Vivato Network Holdings, Inc. on February 12, 2009; and

3. An Order of Default against Catcher Holdings, Inc. on Vivato Network Holdings, Inc.'s third-party claims against Catcher Holdings, Inc. on March 30, 2009; the Court finds that:

There is no just reason for the delay in the entry of a Limited Judgment in the Action; and a Limited Judgment should be entered herein to finalize the Action;

NOW THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED:

1. Plaintiff AEQUITAS EQUIPMENT FINANCE, LLC ("Aequitas") is awarded judgment against defendant VIVATO NETWORKS, INC for the principal sum of $992,750 plus interest thereon at the simple interest rate of 20% per annum from the advance dates listed in Exhibit 3 of this Limited Judgment beginning on November 30, 2007, until February 4, 2008, and default interest on the principal sum of $992,750 at the simple interest rate of 25% per annum from February 5, 2008, until April 17, 2009; for plaintiff's costs, disbursements, attorney fees and legal expenses as set out in the Money Award below.

2. Aequitas' security interest in the Patents and Patent Applications ("the Patent Portfolio") and other property ("the Personal Property"), as more fully described in Exhibit 1 hereto and by this reference incorporated herein (collectively the Patent Portfolio and the Personal Property are referred to as "the Collateral"), as reflected in the Commercial Security Agreement referenced in Plaintiff's complaint (the "Security Agreement"), which interest was duly perfected by the filing of a financing statement with the Delaware Department of State on November 30, 2007 as filing number 2007 4531173

Page 2–    LIMITED JUDGMENT OF FORECLOSURE

Bullivant|Houser|Bailey PC
300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon  97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

PATENT
REEL: 022645 FRAME: 0250
XR-EDTX1-00000081

and as further filed with the United States Patent Office on November 30, 2007 under filing reference PAT420362, is a valid and superior lien for the foregoing amounts on each and every item of the Collateral and has priority to any claim, interest or lien in the Collateral that may be asserted by or through VIVATO NETWORKS HOLDINGS, INC. or CATCHER HOLDINGS, INC.

3.  Plaintiff's security interest in the Collateral granted under the Security Agreement is foreclosed and a Writ of Execution on Foreclosure shall issue to the Multnomah County Sheriff (or to such other Sheriff in whose county any part of the Collateral may be found), directing the sale of the Collateral at public auction to the highest bidder for cash and as otherwise provided by law. Aequitas, as the Judgment Creditor may bid its Money Award, or a portion thereof, to purchase the Collateral at any Sheriff's sale of the Collateral.

4.  VIVATO NETWORKS HOLDINGS, INC., VIVATO NETWORKS, INC., and CATCHER HOLDINGS, INC. shall each receive notice of the foreclosure sale from the Sheriff and shall be entitled to bid on the Collateral, being sold at the Sheriff's sale.

5.  The purchaser or purchasers of the Collateral sold shall each be entitled to a Bill of Sale from the Sheriff on payment of the purchase price paid therefor.

6.  On and after the date of the sale of the Collateral or any portion thereof, VIVATO NETWORKS, INC.,VIVATO NETWORKS HOLDINGS, INC., and CATCHER HOLDINGS, INC., and each of them is foreclosed of any and all right, title, lien, interest, or claim in or to the Collateral sold.

7.  The proceeds of the Sheriff's sale(s) shall be applied as follows:

    a.     First, to the satisfaction of costs of sale;

/ / /

Page 3–    LIMITED JUDGMENT OF FORECLOSURE

Bullivant|Houser|Bailey PC
300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon  97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

PATENT
REEL: 022645 FRAME: 0251

XR-EDTX1-00000082

1        b.    Second, to Aequitas toward the satisfaction of its Money Award herein;

2        and

3        Third, the balance of the sale proceeds arising out of the sale of the

4        Patent Portfolio or any part thereof, shall be paid over to Vivato

5        Networks Holdings, Inc. ("VNH").

6    8.  On VNH's third party claims against Catcher Holdings, Inc. ("Catcher"), the

7    Court declares that:

8        a.    Catcher is in breach of the Patent License Agreement and does not hold any right, title, or interest in the Collateral, the Patent Porfolio, and the December 4, 2007 Patent License Agreement between VNH and Catcher (a copy of the Patent License Agreement is attached as Exhibit 2);

11       b.    VNH is entitled to an award of damages against Catcher in an amount according to proof, but not less than the value of the Patent Portfolio, and the cost to VNH to prepare; file, prosecute, maintain, and enforce the Patent Portfolio;

13       c.    VNH is permitted to bid for and purchase the Patent Portfolio or any portion thereof at the Sheriff's sale;

15       d.    VNH is legally entitled to trigger and has triggered all applicable default provisions under the Patent License Agreement; and

17       e.    VNH is or was entitled to priority over Catcher and all third parties in all or a portion of the Patent Portfolio (second only to Aequitas).

## II. MONEY AWARD

A) Judgment Creditor:    Aequitas Equipment Finance LLC
5300 Meadows Rd., Ste 400
Lake Oswego, OR 97035

B) Judgment Creditor's Attorneys:    David VanSpeybroeck
Chad Colton
Bullivant Houser Bailey PC
300 Pioneer Tower
888 SW Fifth Avenue
Portland, OR 97204
Telephone: (503) 228-6351

///
///

Bullivant|Houser|Bailey PC
300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

PATENT
REEL: 022645 FRAME: 0252

XR-EDTX1-00000083

C) Judgment Debtor:

Vivato Networks, Inc.
10300 SW Greenburg Rd., Ste 520
Portland, OR 97223
Tax ID Number: 20-4522882

D) Principal:

$992,750, disbursed to Vivato
Networks, Inc. over various dates,
as described in Exhibit 3

E) Pre-judgment Interest:

$313,760.10, as calculated in
Exhibit 3 and representing interest
charged on the principal identified
in Item D at the simple interest rate
of 20% per annum from the
advance dates listed in Exhibit 3
beginning November 30, 2007
through February 4, 2008 and
interest charged on the principal
identified in Item D at the simple
interest rate of 25% per annum
from February 5, 2008, through
April 17, 2009.

F) Post judgment Interest:

25% simple interest per annum
from April 17, 2009 until paid on
the amount identified in Item D.
Nine percent simple interest per
annum from April 17, 2009 until
paid on the amount identified in
Items G and H.

G) Attorney Fees and Costs:

Determination to be made pursuant
to ORCP 68C.

H) Costs and Disbursements:

Determination to be made pursuant
to ORCP 68C.

Total:     $1,306,510.10 plus
the amounts to be determined under
Items F, G, and H.

DATED this 23 day of April, 2009.

_Jean Kerr Maurer_
Circuit Court Judge

CERTIFIED TO BE A TRUE COPY
OF THE ORIGINAL.
Dated 5-5-09

Page 5–   LIMITED JUDGMENT OF FORECLOSURE
Secretary/Clerk

Bullivant|Houser|Bailey PC
300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon  97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

PATENT
REEL: 022645 FRAME: 0253

XR-EDTX1-00000084

1  Submitted by:

2  BULLIVANT HOUSER BAILEY PC

3
   By _____ OSB 972242 Go-y
4
       David VanSpeybroeck, OSB #954440
5      E-Mail: david.vanspeybroeck@bullivant.com
       Chad M. Colton, OSB #065774
6      E-Mail: chad.colton@bullivant.com
   Attorneys for Aequitas Equipment Finance LLC
7

8

9  Approved as to form by:

10 AMBROSE LAW GROUP LLC

11
   By _____ OSB 972242 Go-y
12
       Christopher Ambrose, OSB #960344
13     E-Mail: crambrose@ambroselaw.com
   Attorneys for Defendant and Third Party Plaintiff
14 Vivato Networks Holdings, Inc.

15

16

17

18

19

20

21

22

23

24

25

26

Bullivant|Houser|Bailey PC
300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon  97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

**PATENT**
**REEL: 022645 FRAME: 0254**

XR-EDTX1-00000085

## PATENT PORTFOLIO

| Patents and Patent Applications | Description |
|---|---|
| Patent Appl. No. 11526543 | Multiple Beam Antenna Base Station |
| Patent No. 7177369 | Multipath Communication Methods and Apparatuses |
| Patent No. 6967625 | E-Plane Omni-Directional Antenna |
| Patent No. 7256750 | E-Plane Omni-Directional Antenna |
| Patent No. 7099698 | Complementary Beamforming Methods and Apparatuses |
| Patent Appl. No. 11383167 | Complementary Beamforming Methods and Apparatus |
| Patent Appl. No. 10700329 | Directed Wireless Communication |
| Patent Appl. No. 10680965 | Detecting Wireless Interlopers |
| Patent No. 6995725 | Antenna Assembly |
| Patent Appl. No. 11275950 | Antenna Assembly |
| Patent Appl. No. 10944376 | Layered Processing |
| Patent No. 7062296 | Forced Beam Switching in Wireless Communication Systems Having Smart Antennas |
| Patent Appl. No. 11420860 | Forced Beam Switching in Wireless Communication Systems Having Smart Antennas |
| Patent Appl. No. 10700342 | Signal Communication Coordination |
| Patent Appl. No. 11198016 | Wireless Communication System With Directional Antenna |
| Patent No. 6611231 | Wireless Packet Switched Communication Systems and Networks Using Adaptively Steered Antenna Arrays |
| Patent No. 6970682 | Wireless Packet Switched Communication Systems and Networks Using Adaptively Steered Antenna Arrays |
| Patent No. 6992621 | Wireless Communication and Beam Forming with Passive Beamformers |
| Patent No. 6980169 | Electromagnetic Lens |

11449545.1

Exhibit 1, Page 1 of 2

PATENT
REEL: 022645 FRAME: 0255

XR-EDTX1-00000086

ATTACHMENT "A" TO UCC FINANCING STATEMENT

Pursuant to the Commercial Security Agreement entered into on November 30, 2007 between Vivato Networks, Inc., a Delaware corporation (the "Debtor") and Aequitas Capital Management, Inc. (the "Secured Party") herein, the Secured Party is hereby granted to secure all of Debtor's right, title and interest in and to all of the following property:

All cash, accounts receivable, notes receivable, contract rights, deposits, securities, investments, chattel paper, documents, instruments, patents, patent applications, trade secrets, trademarks, Tradenames, copyrights, general intangibles, inventory, raw materials, work in progress, finished goods, furnishings, fixtures, trade fixtures, equipment, machinery, motor vehicles and all other personal property, assets or rights of whatever nature now owned or hereafter acquired by Borrower and products and proceeds thereof, including all Goods, all Accounts, all General Intangibles, all Deposit Accounts, all Equipment, all Inventory, all Intellectual Property, all books and records pertaining to the Collateral, Chattel Paper, Instruments, Investment Property, Letter-of-Credit Rights. Documents, and to the extent not otherwise included, all Proceeds, Supporting Obligations and products pertaining to any and all of the foregoing and all collateral security and guarantees given by any Person with respect to any of the foregoing.

10430224.1

Exhibit __1__, Page _2_ of _2_

**PATENT**
**REEL: 022645 FRAME: 0256**

XR-EDTX1-00000087

# LICENSE AGREEMENT

THIS LICENSE AGREEMENT (this "Agreement") dated as of December 4, 2007 (the "Effective Date"), is entered into between Catcher Holdings, Inc., a Delaware corporation ("Catcher"), and Vivato Networks Holdings, Inc., an Oregon corporation ("Licensor").

WHEREAS, Vivato Networks, Inc. ("Vivato") and Catcher have entered into that certain Amended and Restated Agreement and Plan of Merger of even date herewith (the "Merger Agreement").

WHEREAS, in connection with the Merger Agreement, Catcher desires to obtain an exclusive license to the Licensed IP Rights (as defined below) and an exclusive option to purchase the Licensed IP Rights all on the terms and conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the foregoing premises and the mutual covenants herein contained, the parties agree as follows:

1.  **LICENSE GRANT**

    1.1    _Definitions_.  As used herein (a) "Licensed IP Rights" shall mean all patents (including all pending applications in any jurisdiction, and rights to file applications and assert patents), trademarks, common law trademarks, trade names, trade secrets (including customer lists), service marks and copyrights (including any work of authorship) that (i) claim, cover or are otherwise related to the Technology, and (ii) Licensor owns at any time prior to or during the term of this Agreement; and (b) "Technology" shall mean the assets identified on **Exhibit A** attached hereto and incorporated herein.

    1.2    _License Grant_.  Licensor hereby grants to Catcher an exclusive, worldwide, license (with the right to grant sublicenses through multiple tiers) under the Licensed IP Rights for all purposes, including without limitation the right to practice all inventions and research, develop and commercialize all products and services that are claimed, covered or otherwise within the scope of the Licensed IP Rights.

    1.3    _Maintenance and Enforcement of Patents_.  Catcher shall have the exclusive right during the term of this Agreement, to prepare, file, prosecute, maintain and enforce the Licensed IP Rights.  Licensor shall cooperate with Catcher and provide all assistance required by Catcher.  Licensor shall immediately notify Catcher of any actual or suspected infringement of the Licensed IP Rights of which Licensor becomes aware.

    1.4    _Ongoing Representations_.  During the term of this Agreement, Licensor hereby makes the representations and warranties regarding the Licensed IP Rights as set forth in Section 2.9 of the Merger Agreement.  Licensor shall immediately notify Catcher in writing if there is a breach of any such representation or warranty.

1

EXHIBIT "5" TO VNH ANSWER/THIRD-PARTY COMPLAINT

Exhibit _2_, Page _1 of 22_
PATENT
REEL: 022645 FRAME: 0257
XR-EDTX1-00000088

2.    FEES

2.1    <u>License Fees</u>.  Except as provided in Section 2.2, Catcher shall grant to Licensor as consideration for the License Grant one million eight thousand (1,008,000) shares of Catcher's Common Stock (the "License Shares") to be issued on the eighteen month anniversary of the Effective Date.

2.2    <u>Option to Purchase</u>.  Catcher shall have the right to purchase the Licensed IP Rights upon delivery of written notice and:

(a)    payment and issuance of the License Shares plus two thousand (2,000) shares of Catcher's Common Stock (together with the License Shares, the "Shares") to Licensor no more than ten (10) days prior to the eighteen month anniversary of the Effective Date; or

(b)    payment and issuance of the License Shares no more than ten (10) days following the issuance and sale of shares of Catcher's capital stock to investors for aggregate proceeds (including cancellation of indebtedness) to Catcher of not less than $7,500,000 in a single transaction or series of related transactions.

In connection with such purchase, Licensor shall execute and deliver to Catcher the Assignment Agreement set forth on **Exhibit B** hereto and any other documents reasonably requested by Catcher.  Catcher may elect, in its sole discretion, to purchase all of the outstanding equity interests of Contractor in lieu of exercising its option to purchase the Licensed IP Rights as provided in this Section 2.2.  If Catcher so elects, Contractor shall use its best efforts to effect such a sale of all of the equity interests of Contractor to Catcher, including the negotiation of a definitive merger or stock purchase agreement as determined by Catcher and obtaining all necessary approvals of its stockholder and other third parties to such sale.

2.3    <u>Representations</u>.  Licensor agrees that the Shares to be issued pursuant to Section 2 hereof are being acquired for investment and that the Licensor will not offer, sell or otherwise dispose of the Shares except under circumstances which will not result in a violation of the Securities Act of 1933, as amended (the "Securities Act") or any applicable state securities laws. In addition, in connection with the issuance of the Shares, Licensor specifically represents to Catcher by acceptance or the Shares as follows:

(a)    The Licensor is aware of Catcher's business affairs and financial condition, and has acquired information about Catcher sufficient to reach an informed and knowledgeable decision to acquire the Shares.  The Licensor is acquiring the Shares for its own account for investment purposes only and not with a view to, or for the resale in connection with, any "distribution" thereof in violation of the Securities Act;

(b)    The Licensor understands that the Shares have not been registered under the Securities Act in reliance upon a specific exemption therefrom, which exemption depends upon, among other things, the bona fide nature of the Licensor's investment intent as expressed herein;

(c)    The Licensor further understands that the Shares must be held indefinitely unless subsequently registered under the Securities Act and qualified under any applicable state securities laws, or unless exemptions from registration and qualification are otherwise available. The Licensor is aware of the provisions of Rule 144, promulgated under the Securities Act; and

2

EXHIBIT "5" TO VNH ANSWER/THIRD-PARTY COMPLAINT

Exhibit _2_, Page _2 of 22_
PATENT
REEL: 022645 FRAME: 0258

XR-EDTX1-00000089

(d)    The Licensor acknowledges having received and reviewed Catcher's Annual Report on Form 10-KSB for the fiscal year ended December 31, 2006 and Catcher's Quarterly Reports on Form 10-QSB for the fiscal quarters ended March 31, 2007 and June 30, 2007. Catcher shall provide Licensor with copies of its Quarterly Reports on Form 10-QSB and Annual Report(s) on Form 10-KSB filed since the Effective Date in connection with the issuance of the Shares.

(e)    Catcher understands and acknowledges that the Licensed IP is collateral for a $1,000,000.00 promissory note executed by obligor Vivato Networks, Inc. in favor of holder Aequitas Capital Management, Inc.("Aequitas") (as set forth in more detail in the certain loan documents dated November 30, 2007 between Aequitas Capital Management, Inc. and Licensor, the "Loan Documents"), and, accordingly, that Licensor's ability to deliver all right, title, and interest in the Licensed IP is subject to same. The occurrence of an Event of Default (as that term is defined in the Loan Documents) shall not relieve Catcher of any of its obligations to deliver the License Shares in accordance with this Agreement, unless such Event of Default restricts, impairs or otherwise adversely affects the License Grant hereunder, in which case Catcher shall deliver the pro rata portion of the License Shares for the period in which the License Grant was not so restricted, impaired or otherwise adversely affected and all other obligations of Catcher hereunder, including the delivery of the full amount of the License Fee, shall terminate and be of no further force or effect.

2.4    Registration Rights.

(a)    If (but without any obligation to do so) Catcher proposes to register any of its stock or other securities under the Securities Act in connection with the public offering of such securities (other than a registration relating solely to the sale of securities to participants in Catcher's stock plan, a registration relating to a corporate reorganization or other transaction under Rule 145 of the Act, a registration on any form that does not include substantially the same information as would be required to be included in a registration statement covering the sale of the Shares, or a registration in which the only Common Stock being registered is Common Stock issuable upon conversion of debt securities that are also being registered), Catcher shall, at such time, promptly give Licensor written notice of such registration. Upon the written request of the Licensor given within twenty (20) days after mailing of such notice by Catcher, Catcher shall, subject to the provisions of Sections 2.4(b), use its commercially reasonable efforts to cause to be registered under the Securities Act all of the Shares that Licensor has requested to be registered.

(b)    In connection with any offering involving an underwriting of shares of Catcher's capital stock, Catcher shall not be required under Section 2.4 hereof to include any of Licensor's securities in such underwriting unless they accept the terms of the underwriting as agreed upon between Catcher and the underwriters selected by it (or by other persons entitled to select the underwriters), and then only in such quantity as Catcher determines in its sole discretion will not jeopardize the success of the offering by Catcher. If the total amount of securities, including the Shares, requested by stockholders to be included in such offering exceeds the amount of securities sold that Catcher determines in its sole discretion is compatible with the success of the offering, then Catcher shall be required to include in the offering only that number of the Shares which the Company determines in its sole discretion will not jeopardize the success of the offering.

3

sd-392214

Exhibit 2, Page 3 of 22
PATENT
REEL: 022645 FRAME: 0259

XR-EDTX1-00000090

(c)    Notwithstanding any other provision of this Section 2.4, if Catcher determines that it is desirable in order to comply with the requirements of the Securities and Exchange Commission that the number of securities to be registered in such registration be reduced, then Catcher shall so advise the Licensor regarding the Shares that would otherwise be registered pursuant hereto, and the number of the Shares that may be included in the registration shall be reduced.

(d)    The registration rights set forth in this Agreement shall not be available to the Shares held by Licensor that could be sold in any 90-day period pursuant to Rule 144 under the Securities Act.

3.    TERM; TERMINATION

This Agreement shall commence on the Effective Date and shall continue until such time as (a) Catcher has exercised its right under Section 2 to purchase the Licensed IP Rights and the parties have duly authorized, executed and delivered the Assignment Agreement set forth on **Exhibit B** hereto, (b) Licensor terminates this Agreement, solely as a result of Catcher's failure to provide common stock in accordance with Section 2, after Licensor has provided Catcher with written notice thereof and a period of thirty (30) days to remedy such failure, or (c) the eighteen (18) month anniversary of the Effective Date.

4.    MISCELLANEOUS

4.1    Notices.  All notices and other communications hereunder shall be in writing and shall be deemed duly delivered (i) upon receipt if delivered personally; (ii) within one (1) business day after it is sent by commercial overnight courier; or (iii) upon transmission when sent via facsimile (with confirmation of receipt) or electronic mail to a facsimile number or electronic mail address given below to the parties at the following addresses (or at such other address for a party as shall be specified by like notice):

(a)    if to Catcher:

> Catcher Holdings, Inc.
> 44084 Riverside Parkway
> Leesburg, VA 20176
> Fax: (925) 887-6747
> Email: dmccarthy@catcherinc.com

> with a copy to:

> Morrison & Foerster, LLP
> 12531 High Bluff Drive, Suite 100
> San Diego, California 92130
> Attention: Jeremy D. Glaser
> Fax: (858) 523-2822
> Email: jglaser@mofo.com

(b)    if to Licensor:

> Vivato Networks Holdings, Inc.]

4

EXHIBIT "5" TO VNH ANSWER/THIRD-PARTY COMPLAINT

Exhibit 2  Page 4 of 22

PATENT
REEL: 022645 FRAME: 0260

XR-EDTX1-00000091

Attention: Gary Haycox
Fax: (503) 467-7210
Tel: (503) 703-3435
Email: gary.haycox@vivato.com

with a copy to:

Ambrose Law Group LLC
Attention: Christopher R. Ambrose
Fax: (503) 467-7210
Tel: (503) 467-7209
Email: crambrose@ambroselaw.com

4.2   Interpretation.  When a reference is made in this Agreement to an Article or Section, such reference shall be to an Article or Section of this Agreement unless otherwise indicated.  The words "include," "includes" and "including" when used herein shall be deemed in each case to be followed by the words "without limitation."  The phrase "made available" in this Agreement shall mean that the information referred to has been provided if requested by the party to whom such information is to be made available.  The table of contents and headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.  This Agreement has been drafted by legal counsel representing Catcher, but all parties have participated in the negotiation of its terms.  Each party acknowledges that it has had an opportunity to review and revise this Agreement, and have it reviewed by legal counsel, and, therefore, the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Agreement.

4.3   Counterparts.  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original as against any party whose signature appears on such counterpart and all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties and delivered or deemed delivered to the other parties, it being understood that all parties need not sign the same counterpart.  This Agreement may be executed by facsimile signature.

4.4   Severability.  In the event that any provision of this Agreement, or the application thereof, becomes or is declared by a court of competent jurisdiction to be illegal, void or unenforceable, the remainder of this Agreement will continue in full force and effect and the application of such provision to other persons or circumstances will be interpreted so as reasonably to effect the intent of the parties hereto.  The parties further agree to replace such void or unenforceable provision of this Agreement with a valid and enforceable provision that will achieve, to the extent possible, the economic, business and other purposes of such void or unenforceable provision.

4.5   Succession.  This Agreement shall be binding upon and inure to the benefit of the parties named herein and their respective successors and permitted assigns.  This Agreement will be binding upon, inure to the benefit of and be enforceable by the parties and their respective successors and assigns.

4.6   Amendment; Waiver.  Any amendment or waiver of any of the terms or conditions of this Agreement must be in writing and must be duly executed by or on behalf of the

EXHIBIT "5" TO VNH ANSWER/THIRD-PARTY COMPLAINT

sd-392214

Exhibit  2 , Page 5 of 22

PATENT
REEL: 022645 FRAME: 0261

XR-EDTX1-00000092

party to be charged with such waiver. The failure of a party to exercise any of its rights hereunder or to insist upon strict adherence to any term or condition hereof on any one occasion shall not be construed as a waiver or deprive that party of the right thereafter to insist upon strict adherence to the terms and conditions of this Agreement at a later date. Further, no waiver of any of the terms and conditions of this Agreement shall be deemed to or shall constitute a waiver of any other term of condition hereof (whether or not similar).

4.7    Entire Agreement. This Agreement (including the exhibits hereto) and the Merger Agreement and documents related thereto constitute the entire agreement among the parties concerning the subject matter hereof and supersede all prior agreements and understandings, both written and oral, between the parties with respect to the subject matter hereof, other than the No-Shop Agreement previously executed by and between Catcher and Licensor.

4.8    Governing Law. This Agreement shall be governed by and construed in accordance with the internal laws of Virginia applicable to parties residing in Virginia, without regard applicable principles of conflicts of law. Each of the parties hereto irrevocably consents to the exclusive jurisdiction of any court located within Roanoke County, Virginia or Clackamas County, Oregon in connection with any matter based upon or arising out of this Agreement or the matters contemplated hereby and it agrees that process may be served upon it in any manner authorized by the laws of the State of Virginia or the State of Oregon for such persons and waives and covenants not to assert or plead any objection which it might otherwise have to such jurisdiction and such process.

4.9    Assignment. Neither this Agreement nor any of the rights, interests or obligations hereunder shall be assigned by either of the parties hereto (whether by operation of law or otherwise) without the prior written consent of the other parties; provided however, that Catcher shall not be required to obtain the consent of Licensor for any assignment in connection with (a) any merger or consolidation or other reorganization of Catcher with or into another entity or (b) the sale of substantially all of the assets of Catcher, provided that in each instance the resulting or surviving entity assumes the obligations of Catcher hereunder. Subject to the preceding sentence, this Agreement will be binding upon, inure to the benefit of and be enforceable by the parties and their respective successors and permitted assigns.

4.10    Third party Beneficiaries. Nothing contained in this Agreement is intended to confer upon any person other than the parties hereto and their respective successors and permitted assigns, any rights, remedies or obligations under, or by reason of this Agreement.

4.11    Attorneys' Fees. In the event any action is brought for enforcement or interpretation of this Agreement, the prevailing party shall be entitled to recover reasonable attorneys' fees and costs incurred in said action.

6

EXHIBIT "5" TO VNH ANSWER/THIRD-PARTY COMPLAINT

Exhibit _2_, Page _6 of 22_

PATENT
REEL: 022645 FRAME: 0262

XR-EDTX1-00000093

IN WITNESS WHEREOF, Catcher and Licensor have caused this Agreement to be signed by them or their duly authorized representatives.

Catcher Holdings, Inc.

By:_____
     Robert H. Turner
Title:  Chief Executive Officer

Vivato Networks Holdings, Inc

By:_____
     Gary Haycox
Title:  Chief Executive Officer

EXHIBIT "5" TO VNH ANSWER/THIRD-PARTY COMPLAINT

sd-392214

Exhibit 2, Page 7 of 22

**PATENT**
**REEL: 022645 FRAME: 0263**

XR-EDTX1-00000094

IN WITNESS WHEREOF, Catcher and Licensor have caused this Agreement to be signed by them or their duly authorized representatives.

Catcher Holdings, Inc.

By:_____

_____Robert H. Turner_____

Title:__Chief Executive Officer_____

Vivato Networks Holdings, Inc

By:    _Gary S. Haycox_

_____Gary Haycox_____

Title:__Chief Executive Officer_____

EXHIBIT "5" TO VNH ANSWER/THIRD-PARTY COMPLAINT

sd-402514

Exhibit _2_, Page _8 of 22_

PATENT
REEL: 022645 FRAME: 0264

XR-EDTX1-00000095

Exhibit A

<u>Technology</u>

8

sd-392214

Exhibit __2__ Page __9 of 22__

**PATENT**
**REEL: 022645 FRAME: 0265**

XR-EDTX1-00000096

**EXHIBIT "A" TO LICENSE AGREEMENT BETWEEN CATCHER HOLDINGS, INC. AND VIVATO NETWORKS HOLDINGS, INC.**

**Intellectual Property Identification**
**Vivato Networks**

**PATENTS**

| B & C File No. | | Title | Status |
|---|---|---|---|
| 760.0020001 | | | Filed 09/25/2006. Serial No. 11/526,543 Replacement Drawings filed 11/08/06. Updated Filing Receipt received 11/29/06. |
| 760.002999P | | APPLICATION OF MULTIPLE BEAM ANTENNA SYSTEM TO 802.16 BASE STATIONS | Filed 09/23/2005 Serial No. 60/719,856 |
| 760.0030001 | | IMPROVED MULTIPATH COMMUNTICATION METHODS AND APPARATUSES | Filed 04/25/2002 Serial No. 10/131,864 **ISSUED** 7,177,369 on 02/13/2007 |
| 760.003999P | | IMPROVED MULTIPATH COMMUNTICATION METHODS AND ARRANGEMENTS | Filed 04/27/2001 Serial No. 60/287,163 |
| 760.0040001 | | EPLANE OMNIDIRECTIONAL ANTENNA | Filed 12/31/2002 Serial No. 10/335,382 **ISSUED** 6,967,625 on 11/22/2005 |

EXHIBIT "5" TO VNH ANSWER/THIRD-PARTY COMPLAINT

PATENT
REEL: 022645 FRAME: 0266
XR-EDTX1-00000097

Exhibit 2 Page 10 of 22

| | | | |
|---|---|---|---|
| 760.0040002 | | EPLANE OMNIDIRECTIONAL ANTENNA | Filed 04/13/2005<br>Serial No. 11/104,684 DIV of 10/335,382<br>**ISSUED** 7,256,750 on 08/14/2007<br>Issue Fee Paid 7/2/2007<br>*Issue Notification Received 07/31/2007.* |
| 760.0050001 | | COMPLEMENTARY BEAMFORMING TECHNIQUES | Filed 11/03/2003<br>Serial No. 10/700,991<br>**ISSUED** 7,099,698 on 08/29/2006 |
| 760.0050002 | | COMPLEMENTARY BEAMFORMING TECHNIQUES | Filed 05/12/2006<br>Serial No. 11/383,167 CON of 10/700,991<br>Pending, No first Office Action |
| 760.005999P | | COMPLEMENTARY BEAMFORMING TECHNIQUES | Filed 11/03/2002<br>Serial No. 60/423,703 |
| 760.0060001 | | DIRECTED WIRELESS COMMUNICATION | Filed 11/03/2003<br>Serial No. 10/700,329<br>Office Action received 09/28/2006. Response mailed 10/18/2006.<br>*Final Office Action Received 07/20/2007. Response Due 09/17/2007 (2 months).* |

EXHIBIT "5" TO VNH ANSWER/THIRD-PARTY COMPLAINT

| 760.006999 P | | | A WIRELESS DATA PACKET COMMUNICATIONS SYSTEM | Filed 11/04/2002 Serial No. 60/423,660 |
|---|---|---|---|---|
| 760.0070001 | | | DETECTING WIRELESS INTERLOPERS | Filed 10/07/2003 Serial No. 10/680,965 Pending, No first Office Action |
| 760.0080001 | | | ANTENNA ASSEMBLY | Filed 09/09/2003 Serial No. 10/658,346 **ISSUED.** 6,995,725 on 02/07/2006 |
| 760.0080002 | | | ANTENNA ASSEMBLY | Filed 02/06/2006 Serial No. 11/ 275,950 a con of 10/658,346 *Election mailed 07/09/2007. Response submitted 08/03/2007.* |
| 760.008999P | | | ANTENNA ASSEMBLY | Filed 11/04/2002 Serial No. 60/423,700 |
| 760.0090001 | | | IMPROVED LAYERED PROCESSING | Filed 09/18/2004 Serial No. 10/944,376 Pending, No first Office Action |
| 760.009999P | | | OPTIMUM LAYERED PROCESSING | Filed 09/18/2003 Serial No. 60/503,852 |
| 760.0100001 | | | FORCED BEAM SWTICHING IN WIRELESS COMMUNICATION | Filed 10/31/2003 Serial No. 10/698,848 **ISSUED** 7,062,296 on 06/13/2006 |

PATENT
REEL: 022645 FRAME: 0268
XR-EDTX1-00000099

Exhibit 2 Page 12 of 22

EXHIBIT "5" TO VNH ANSWER/THIRD-PARTY COMPLAINT

| | | | |
|---|---|---|---|
| 760.0100002 | | FORCED BEAM SWTICHING IN WIRELESS COMMUNICATION | Filed 05/30/2006<br>Serial No. 11/420,860 a con of 10/698,848<br>Pending, No first Office Action |
| 760.011999P | | MULTIMAC CONTROL TECHNIQUES | Filed 11/04/2002<br>Serial No. 60/423,696 |
| 760.0120001 | | SIGNAL COMMUNICATION COORDINATION | Filed 11/03/2003<br>Serial No. 10/700,342<br>Pending, No first Office Action |
| 760.012999P | | SYNCHRONIZING MEDIA ACCESS CONTROL (MAC) CONTROLLERS | Filed 11/04/2002<br>Serial No. 60/423,702 |
| 760.0130001 | | WIRELESS COMMUNICATION SYSTEM WITH DIRECTIONAL ANTENNA | Filed 08/05/2005<br>Serial No. 11/198,016<br>Pending, No first Office Action |
| 760.013999P | | WIRELESS COMMUNICATIONS SYSTEM USING DIRECTIONAL ANTENNAS | Filed 08/05/2004<br>Serial No. 60/599,743 |
| 760.0140001 | | WIRELESS PACKET SWITCHED COMMUNICATION SYSTEMS AND NETWORKS... | Filed 10/12/2001<br>Serial No. 09/976,246<br>**ISSUED** 6,611,231 on 08/26/2003<br>2/14/2007 Maintenance Fee for year 3.5 paid. |

EXHIBIT "5" TO VNH ANSWER/THIRD-PARTY COMPLAINT

| 760.0140002 | | WIRELESS PACKET SWITCHED COMMUNICATION SYSTEMS AND NETWORKS... | Filed 09/04/2002 Serial No. 10/235,198 Cont. of Pat. No. 6,611,231 **ISSUED** 6,970,682 on 11/29/2005 |
|---|---|---|---|
| 760.0150001 | | WIRELESS COMMUNICATION AND BEAM FORMING WITH PASSIVE BEAMFORMERS | Filed 03/07/2003 Serial No. 10/384,308 **ISSUED**. 6,992,621 on 01/31/2006 |
| 760.0160001 | | ELECTROMAGNETIC LENS | Filed 01/16/2004 Serial No. 10/760,023 **ISSUED** 6,980,169 on 12/27/2005 |
| 760.019999P | | COMMUNICATING BROADCAST FRAMES | Filed 11/04/2002 Serial No. 60/423,701 Abandoned |

## TRADEMARKS/ABN

| Vivato | | | USPTO Serial Number 78179365 Original Registration Date: 10/29/02 Assignment Date:  5/24/06 to Wayout Wireless, LLC (now Vivato Networks, Inc.) |
|---|---|---|---|
| Vivato Networks | | | Oregon Secretary of State ABN Registration No. 373867-94 Registration Date:  7/24/06 |

EXHIBIT "5" TO VNH ANSWER/THIRD-PARTY COMPLAINT

REEL: 022645 FRAME: 0270
PATENT
XR-EDTX1-00000101

Exhibit 2 Page 14 of 22

**COPYRIGHTS, MANUFACTURING PROCESSES, AND GOODWILL:**

The Intellectual Property also shall include all right, title, and interest (including content and common law copyrights) in Target's website (www.vivato.com), all manufacturing processes associated with the patents referenced above, and all goodwill associated with the copyrights, trademarks, manufacturing processes, and patents referenced above.

REEL: 022645 FRAME: 0271
PATENT
XR-EDTX1-00000102

Exhibit 2 Page 15 of 22

EXHIBIT "5" TO VNH ANSWER/THIRD-PARTY COMPLAINT

Exhibit B

Assignment Agreement

9

EXHIBIT "5" TO VNH ANSWER/THIRD-PARTY COMPLAINT

Exhibit $2$, Page 16 of 22

**PATENT
REEL: 022645 FRAME: 0272**

XR-EDTX1-00000103

## EXHIBIT "B" TO DECEMBER 4, 2007 LICENSE AGREEMENT

## ASSIGNMENT OF INTELLECTUAL PROPERTY AGREEMENT

DATE:                                                           "Effective Date"

PARTIES:          Vivato Networks Holdings, Inc.,               "Assignor"
                  An Oregon Corporation

                  Catcher Holdings, Inc.                        "Assignee"
                  A Delaware Corporation

### RECITALS

WHEREAS, Assignor owns certain proprietary copyrighted materials, manufacturing process and other intellectual property (including certain patent rights and the "Vivato"® mark) related to the operations of Assignor and more particularly identified on Exhibit "A" attached hereto and incorporated herein (the "IP Assets"); and

WHEREAS, Assignee is desirous of acquiring all of Assignor's right, title, and interest in and to IP Assets; and,

WHEREAS, Assignee's right, title, and interest in and to the IP Assets are subject to the terms and conditions of an Amended and Restated Merger Agreement between Assignor and Assignee dated during December 2007 (the "Merger Agreement"), which may result in the assignment and transfer of the IP Assets to Assignor or its associated entity pursuant to the Merger Agreement and a License and Escrow Agreement identified herein; and,

WHEREAS, Assignee's right, title, and interest in and to the IP Assets are subject to the terms and conditions of a Business Loan Agreement dated November 29, 2007 between Assignor and Aequitas Capital Management, Inc. and related loan documents (the "Aequitas Loan"), pursuant to which, in part, the IP Assets are collateral for the Aequitas Loan.

Now, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Assignor agrees to assign and transfer to Assignee and Assignee's legal representatives, successors and assigns its full and exclusive right, title and interest to the IP Assets in accordance with the following:

### AGREEMENT

NOW, THEREFORE, in consideration of mutual promises set forth in this Assignment, the parties agree, subject to the terms and provisions of the Merger Agreement, as follows:

1.    **Assignment.** Assignor hereby assigns to Assignee all its right, title, and interest, including common law rights, in and to the IP Assets, including any registrations, extensions, and renewals thereof, to the extent of the term of registration, extension, if any, and renewal, if any, or pending or provisional applications therefor, the goodwill of the IP Assets symbolized thereby,

Page 1 of 6 – COMMERCIAL SECURITY AGREEMENT

EXHIBIT "5" TO VNH ANSWER/THIRD-PARTY COMPLAINT

Exhibit 2, Page 17 of 22

PATENT
REEL: 022645 FRAME: 0273

XR-EDTX1-00000104

including without limitation any and all causes of action for infringement thereof and any and all royalties for any licenses thereof, and including the right of first use and the first use dates for the IP Assets, which IP Assets shall be held and enjoyed by Assignee, for its own use, and for the use of its successors, assigns, or other legal representatives to the full end of the term or terms for which the IP Assets may be granted, as fully and entirely as the same would have been enjoyed by the Assignor, had this Assignment not been made.  This Assignment is not limited by the manner of use of the IP Assets and shall be as broad and complete as permitted by law.  This Assignment includes all rights to sue, bring actions for, and recover and hold damages, profits, and other compensation for any and all past and future infringements and unauthorized uses of the IP Assets.   This Assignment is effective as of the Effective Date.

2.    **Assumption.**  Assignee hereby accepts and assumes the assignment of the IP Assets from and after the Effective Date, and Assignee hereby accepts and assumes all responsibility for maintaining registration of the IP Assets from and after the Effective Date.

3.    **Merger Agreement.**  Assignee understands and acknowledges that this Assignment, including all right, title, and interest in and to the IP Assets, is subject to the terms and conditions of the Merger Agreement and the Aequitas Loan, and further understands and acknowledges that Assignee may not assign or otherwise transfer the IP Assets without compliance with the Merger Agreement and Aequitas Loan.

IN WITNESS WHEREOF, the parties have executed this Assignment as of the Effective Date set forth above.

**ASSIGNOR:**                                    **ASSIGNEE:**

VIVATO NETWORKS HOLDINGS, INC.      CATCHER HOLDINGS, INC.

By:_____        By:_____

Page 2 of 6 – COMMERCIAL SECURITY AGREEMENT

EXHIBIT "5" TO VNH ANSWER/THIRD-PARTY COMPLAINT

Exhibit _2_, Page 18 of 22

PATENT
REEL: 022645 FRAME: 0274

XR-EDTX1-00000105

EXHIBIT "A"

INTELLECTUAL PROPERTY

Schedule 1 – Current Patent and Patent Applications

| Vivate Networks | | | |
|---|---|---|---|
| 10 Issued, 9 Pending | | | |
| B & C File No. | Lee &Hayes File No. | Title | Status |
| 760.0000001 | NA | General Matter | *Assignment changing name from Wayout Wireless to Vivato Networks LLC mailed 08/02/07.* |
| 760.0017631 | NA | Go Network Due Diligence | |
| 760.0020001 | MN1-0025US | | Filed 09/25/2006. Serial No. 11/526,543 Replacement Drawings filed 11/08/06. Updated Filing Receipt received 11/29/06. |
| 760.002999P | MN1-0025USP1 | APPLICATION OF MULTIPLE BEAM ANTENNA SYSTEM TO 802.16 BASE STATIONS | Filed 09/23/2005 Serial No. 60/719,856 |
| 760.0030001 | MN1-0001US | IMPROVED MULTIPATH COMMUNTICATION METHODS AND APPARATUSES | Filed 04/25/2002 Serial No. 10/131,864 ISSUED 7,177,369 on 02/13/2007 |
| 760.003999P | MN1-0001USP1 | IMPROVED MULTIPATH COMMUNTICATION METHODS AND ARRANGEMENTS | Filed 04/27/2001 Serial No. 60/287,163 |
| 760.0040001 | MN1-0003US | EPLANE OMNIDIRECTIONAL ANTENNA | Filed 12/31/2002 Serial No. 10/335,382 ISSUED 6,967,625 on 11/22/2005 |

EXHIBIT "5" TO VNH ANSWER/THIRD-PARTY COMPLAINT

Exhibit 2, Page 19 of 22

| 760.0040002 | MN1-0003USC1 | EPLANE OMNIDIRECTIONAL ANTENNA | Filed 04/13/2005<br>Serial No. 11/104,684 DIV of 10/335,382<br>ISSUED 7,256,750 on 08/14/2007<br>Issue Fee Paid 7/2/2007<br>*Issue Notification Received 07/31/2007.* |
| --- | --- | --- | --- |
| 760.0050001 | MN1-0004US | COMPLEMENTARY BEAMFORMING TECHNIQUES | Filed 11/03/2003<br>Serial No. 10/700,991<br>ISSUED 7,099,698 on 08/29/2006 |
| 760.0050002 | MN1-0004USC1 | COMPLEMENTARY BEAMFORMING TECHNIQUES | Filed 05/12/2006<br>Serial No. 11/383,167 CON of 10/700,991<br>Pending. No first Office Action |
| 760.005999P | MN1-0004USP1 | COMPLEMENTARY BEAMFORMING TECHNIQUES | Filed 11/03/2002<br>Serial No. 60/423,703 |
| 760.0060001 | MN1-0010US | DIRECTED WIRELESS COMMUNICATION | Filed 11/03/2003<br>Serial No. 10/700,329<br>Office Action received 09/28/2006. Response mailed 10/18/2006.<br>*Final Office Action Received 07/20/2007. Response Due 09/17/2007 (2 months).* |

| 760.006999 P | MN1-0010USP1 | A WIRELESS DATA PACKET COMMUNICATIONS SYSTEM | Filed 11/04/2002<br>Serial No. 60/423,660 |
| --- | --- | --- | --- |
| 760.0070001 | MN1-0013US | DETECTING WIRELESS INTERLOPERS | Filed 10/07/2003<br>Serial No. 10/680,965<br>Pending. No first Office Action |
| 760.0080001 | MN1-0006US | ANTENNA ASSEMBLY | Filed 09/09/2003<br>Serial No. 10/658,346<br>ISSUED. 6,995,725 on 02/07/2006 |
| 760.0080002 | MN1-0006USC1 | ANTENNA ASSEMBLY | Filed 02/06/2006<br>Serial No. 11/ 275,950 a con of 10/658,346<br>*Election mailed 07/09/2007. Response submitted 08/05/2007.* |
| 760.008999P | MN1-0006USP1 | ANTENNA ASSEMBLY | Filed 11/04/2002<br>Serial No. 60/423,700 |
| 760.0090001 | MN1-0017US | IMPROVED LAYERED PROCESSING | Filed 09/18/2004<br>Serial No. 10/944,376<br>Pending. No first Office Action |
| 760.009999P | MN1-0017USP1 | OPTIMUM LAYERED PROCESSING | Filed 09/18/2003<br>Serial No. 60/503,852 |
| 760.0100001 | MN1-0014US | FORCED BEAM SWTICHING IN WIRELESS COMMUNICATION | Filed 10/31/2003<br>Serial No. 10/698,848<br>ISSUED 7,062,296 on 06/13/2006 |

EXHIBIT "5" TO VNH ANSWER/THIRD-PARTY COMPLAINT

Exhibit 2, Page 20 of 22

| | | | |
|---|---|---|---|
| 760.0100002 | MN1-0014USC1 | FORCED BEAM SWITCHING IN WIRELESS COMMUNICATION | Filed 05/30/2006 Serial No. 11/420,860 a con of 10/698,848 Pending, No first Office Action |
| | | | Closed |
| 760.0110001 | MN1-0011US | | |
| 760.011999P | MN1-0011USP1 | MULTIMAC CONTROL TECHNIQUES | Filed 11/04/2002 Serial No. 60/423,696 |
| 760.0120001 | MN1-0008US | SIGNAL COMMUNICATION COORDINATION | Filed 11/03/2003 Serial No. 10/700,342 Pending, No first Office Action |
| 760.012999P | MN1-0008USP1 | SYNCHRONIZING MEDIA ACCESS CONTROL (MAC) CONTROLLERS | Filed 11/04/2002 Serial No. 60/423,702 |
| 760.0130001 | 2502881-991101 | WIRELESS COMMUNICATION SYSTEM WITH DIRECTIONAL ANTENNA | Filed 08/05/2005 Serial No. 11/198,016 Pending, No first Office Action |
| 760.013999P | 2502881-991100 | WIRELESS COMMUNICATIONS SYSTEM USING DIRECTIONAL ANTENNAS | Filed 08/05/2004 Serial No. 60/599,743 |
| 760.0140001 | MN1-0002US | WIRELESS PACKET SWITCHED COMMUNICATION SYSTEMS AND NETWORKS... | Filed 10/12/2001 Serial No. 09/976,246 ISSUED 6,611,231 on 08/26/2003 2/14/2007 Maintenance Fee for year 3.5 paid. |

| | | | |
|---|---|---|---|
| 760.0140002 | MN1-0002USC1 | WIRELESS PACKET SWITCHED COMMUNICATION SYSTEMS AND NETWORKS... | Filed 09/04/2002 Serial No. 10/235,198 Cont. of Pat. No. 6,611,231 ISSUED 6,970,682 on 11/29/2005 |
| 760.0150001 | MN1-0005US | WIRELESS COMMUNICATION AND BEAM FORMING WITH PASSIVE BEAMFORMERS | Filed 03/07/2003 Serial No. 10/384,308 ISSUED 6,992,621 on 01/31/2006 |
| 760.0160001 | MN1-0019US | ELECTROMAGNETIC LENS | Filed 01/16/2004 Serial No. 10/760,023 ISSUED 6,980,169 on 12/27/2005 |
| 760.0170001 | | | Unfiled Closed |
| 760.0180001 | | | Unfiled Closed |
| 760.019999P | MN1-0009US | COMMUNICATING BROADCAST FRAMES | Filed 11/04/2002 Serial No. 60/423,701 Abandoned |
| 760.0200001 | MN1-0015US | | Unfiled Closed |
| 760.0210001 | MN1-0016US | | Unfiled Closed |
| 760.0220001 | MN1-0018US | | Unfiled Closed |
| 760.0230001 | MN1-0020US | | Unfiled Closed |

EXHIBIT "5" TO VNH ANSWER/THIRD-PARTY COMPLAINT

Exhibit 2, Page 21 of 22

| 760.0240001 | MN1-0021US | | Unfiled Closed |
| 760.0250001 | MN1-0022US | | Unfiled Closed |
| 760.0260001 | MN1-0023US | | Unfiled Closed |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

## Schedule 2 - Current Registered Trademarks and Copyrights

1. Vivato registered mark, United States Patent and Trademark Office Serial Number 78179365.

EXHIBIT "5" TO VNH ANSWER/THIRD-PARTY COMPLAINT

Exhibit 2, Page 22 of 22

PATENT
REEL: 022645 FRAME: 0278

XR-EDTX1-00000109

Vivato NR

| LOC amount | | |
|---|---|---|
| Facility Date | 11/30/2007 | |
| Facility | 1,000,000.00 | |
| Daily Per diem rate | 679.97 | |
| Terms | 20% | Interest only due on Maturity (Jan 30, 2008) |
| Default Terms | 25% | Default interest rate implemented as of (1/30/08) |

**Aequitas Portion**    705,000

| | Advance Date | Amount Funded | Interest due @ 20% (Nov 07 - Jan 30, 2008) | Interest due @ 25% (Jan 31, 2008 - April 09) | Total Interest Due |
|---|---|---|---|---|---|
| Advance #1 | 11/30/2007 | 70,000.00 | 2,387.67 | 21,191.78 | 23,579.45 |
| Advance #2 | 12/11/2007 | 165,000.00 | 4,723.97 | 49,952.05 | 54,676.03 |
| Advance #3 | 12/27/2007 | 39,750.00 | 789.55 | 12,033.90 | 12,823.46 |
| Advance #4 | 12/28/2007 | 105,000.00 | 2,028.08 | 31,787.67 | 33,815.75 |
| Advance #5 | 1/16/2008 | 126,000.00 | 1,121.92 | 38,145.21 | 39,267.12 |
| Advance #6 | 1/30/2008 | 126,000.00 | 155.34 | 38,145.21 | 38,300.55 |
| Advance #7 | 2/26/2008 | 68,250.00 | - | 19,493.32 | 19,493.32 |
| Advance #8 | 11/13/2008 | 5,000.00 | - | 534.25 | 534.25 |
| | | 705,000.00 | 11,206.54 | 211,283.39 | 222,489.93 |

**Western Participation**    287,750

| | Advance Date | Amount Funded | Interest due @ 20% (Nov 07 - Jan 30, 2008) | Interest due @ 25% (Jan 31, 2008 - April 09) | Total Interest Due |
|---|---|---|---|---|---|
| Advance #1 | 12/11/2007 | 50,000.00 | 1,431.51 | 15,136.99 | 16,568.49 |
| Advance #2 | 12/27/2007 | 67,750.00 | 1,345.72 | 20,510.62 | 21,856.34 |
| Advance #3 | 12/28/2007 | 45,000.00 | 869.18 | 13,623.29 | 14,492.47 |
| Advance #4 | 1/15/2008 | 54,000.00 | 510.41 | 16,347.95 | 16,858.36 |
| Advance #5 | 2/13/2008 | 50,000.00 | - | 15,136.99 | 15,136.99 |
| Advance #6 | 2/19/2008 | 6,000.00 | - | 1,816.44 | 1,816.44 |
| Advance #7 | 2/26/2008 | 15,000.00 | - | 4,541.10 | 4,541.10 |
| | | 287,750.00 | 4,156.82 | 87,113.36 | 91,270.17 |

| **Consolidated Note Totals** | | | Interest due @ 20% (Nov 07 - Jan 30, 2008) | Interest due @ 25% (Jan 31, 2008 - April 09) | Total Interest Due |
|---|---|---|---|---|---|
| Principal | 992,750.00 | | 15,363.36 | 298,396.75 | 313,760.10 |

PATENT
REEL: 022645 FRAME: 0279
XR-EDTX1-00000110

Exhibit 3, Page 1 of 2

Exhibit 3    Page 2 of 2

| | |
|---|---|
| 1 | **CERTIFICATE OF SERVICE** |
| 2 |     I hereby certify that on April 23, 2009, I served the foregoing **LIMITED JUDGMENT** |
| 3 | **OF FORECLOSURE** on the individuals listed below,  a correct copy thereof contained in a |
| 4 | sealed envelope, with postage prepaid, via the method indicated, deposited at Portland, Oregon |
| 5 | on said date and addressed as follows: |

| | |
|---|---|
| 6 | Chris R. Ambrose, Esq. |
| 7 | Ambrose Law Group, LLC |
|   | 312 NW Tenth Ave., Ste. 200 |
| 8 | Portland, OR 97209 |

**VIA E-MAIL AND U.S. MAIL**

| | |
|---|---|
| 10 | Gary Haycox |
| 11 | 11125 SW Tanager Terrace |
|    | Beaverton, OR 97007 |

**VIA U.S. MAIL**

BULLIVANT HOUSER BAILEY PC

By _Til Ul_ OSB 972242 for

David VanSpeybroeck, OSB #954440
E-Mail: david.vanspeybroeck@bullivant.com
Chad M. Colton, OSB #065774
E-Mail: chad.colton@bullivant.com
Attorneys for Aequitas Equipment Finance LLC

11445225.1
29988/11

Page 7–   CERTIFICATE OF SERVICE

Bullivant|Houser|Bailey PC
300 Pioneer Tower
888 SW Fifth Avenue
Portland, Oregon 97204-2089
Telephone: 503.228.6351
Facsimile: 503.295.0915

**PATENT**
**REEL: 022645 FRAME: 0281**

XR-EDTX1-00000112

**RECORDED: 05/06/2009**