# Exhibit 25



# Transcript of Edward Joseph Brooks, III, Esquire

**Date:** July 6, 2022
**Case:** XR Communications, LLC -v- D-Link Systems, Inc., et al.

**Planet Depos**
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
www.planetdepos.com

RESTRICTED - ATTORNEYS' EYES ONLY

XR-EDTX1-00052124

Page 5

```
 1              C O N T E N T S
 2  EXAMINATION OF EDWARD JOSEPH BROOKS, III, ESQ.   PAGE
 3    By Mr. Haslam                                    8
 4    By Mr. Mirzaie                                  46
 5    By Mr. Haslam                                   54
 6
 7
 8              E X H I B I T S
 9           (Attached to the Transcript)
10  BROOKS DEPOSITION EXHIBIT                        PAGE
11   Exhibit 1    First Amendment to Asset            10
12                Purchase Agreement,
13                Bates XR-00007768 - 00007807
14   Exhibit 2    Patent Conveyance from Wayout       12
15                Wireless, LLC, to Vivato Networks,
16                LLC, Bates XR-00007808 - 00007811
17   Exhibit 3    Patent Assignment,                  15
18                Bates XR-00007829 - 00007833
19   Exhibit 4    10/16/06 Letter from Mr. Brooks     17
20                to Commissioner for Patents,
21                Bates ARUBA_0032504 - 0032506
22   Exhibit 5    Tabs3 Client Ledger Report,         19
23                Brooks, Cameron & Huebsch, PLLC,
24                From 1/1/06 Through 12/31/08
25
```

Page 6

```
 1           E X H I B I T S   C O N T I N U E D
 2  BROOKS DEPOSITION EXHIBIT                        PAGE
 3   Exhibit 6    2/14/08 Amendment and Response,    27
 4                Bates ARUBA_0032636 - 0032660
 5   Exhibit 7    4/25/08 Request for Withdrawal as  28
 6                Attorney or Agent and Change of
 7                Correspondence Address, Bates
 8                ARUBA_0032681 - 0032682
 9   Exhibit 8    Notice Regarding Change of Power   31
10                of Attorney, Bates
11                ARUBA_0032683 - 0032687
12   Exhibit 9    4/25/08 Request for Withdrawal as  38
13                Attorney or Agent and Change of
14                Correspondence Address, Bates
15                ARUBA_0034862 - 0034863
16   Exhibit 10   Notice Regarding Change of Power   39
17                of Attorney, Bates
18                ARUBA_0034864 - 0034866
19   Exhibit 11   10/31/08 Office Communication,     40
20                Bates ARUBA_0034875 - 0034877
21   Exhibit 12   4/30/08 Request for Withdrawal as  42
22                Attorney or Agent and Change of
23                Correspondence Address, Bates
24                ARUBA_0033263 - 0033264
25
```

Page 7

```
 1              P R O C E E D I N G S
 2       VIDEO SPECIALIST:  Good morning.
 3       Here begins Media Number 1 in the video
 4  recorded deposition of Edward Brooks in the matter
 5  of XR Communications, LLC, versus D-Link Systems,
 6  Inc., et al.  This is Case Number
 7  8:17-CV-00596-AG, filed in the U.S. District Court
 8  for the Central District of California, Los
 9  Angeles Division.
10       Today's date is July 6, 2022.  The time
11  on the video monitor is now 11:08 a.m. eastern
12  time.  The videographer today is Joel Coriat, on
13  behalf of Planet Depos.  This deposition will be
14  taken via videoconference.
15       Would counsel please identify yourself,
16  for the record.
17       MR. HASLAM:  My name is Bob Haslam.  I'm
18  with Covington & Burling, and I represent Aruba
19  Networks.  And with me is Kee Young Lee.
20       MR. MIRZAIE:  I am Reza Mirzaie from
21  Russ, August & Kabat, representing Plaintiff XR,
22  or also known as Vivato.
23       MR. SALEEM:  Sajid Saleem from Duane
24  Morris, representing Defendants Belkin and
25  NetGear.
```

Page 8

```
 1       VIDEO SPECIALIST:  All right.  The court
 2  reporter today is Debbie Whitehead, on behalf of
 3  Planet Depos.  She will now swear in the deponent.
 4       EDWARD JOSEPH BROOKS, III, ESQUIRE,
 5  having been duly sworn, testified as follows:
 6       VIDEO SPECIALIST:  Thank you.
 7       You may proceed, Counsel.
 8       EXAMINATION BY COUNSEL FOR DEFENDANT
 9       ARUBA NETWORKS, LLC
10  BY MR. HASLAM:
11   Q  Mr. Brooks, I understand you're a lawyer.
12       Are you still practicing today?
13   A  Yes.
14   Q  Can you, for the record, now that you're
15  under oath, can you state your name and where you
16  reside?
17   A  Edward Joseph Brooks, III, resident in
18  Minneapolis, Minnesota.
19   Q  And among the areas of your practice, do
20  you practice patent law?
21   A  Yes.
22   Q  Are you registered to practice before the
23  Patent and Trademark Office?
24   A  Yes.
25   Q  How long have you been so registered?
```

RESTRICTED - ATTORNEYS' EYES ONLY

XR-EDTX1-00052126

**9**

1  A   Twenty-five years.
2  Q   And does your work in connection with the
3  patent office include preparing patent
4  applications?
5  A   Yes.
6  Q   Does it also include steps in the process
7  of corresponding with the patent office in the
8  back and forth that sometimes goes on before a
9  patent is either ultimately issued or ultimately
10 rejected?
11 A   Yes.
12     MR. HASLAM: I'm going to upload to the
13 chat, and it will be published -- well, at least
14 we hope that's what's going to happen. Well,
15 here's what I'm going to do. Kee Young, can you
16 upload -- I'm not going to use them all, but can
17 you upload Tabs 1 through 20 to the videographer.
18 Q   I apologize, Mr. Brooks.
19 A   Quite all right.
20     (Discussion off the record with the A/V
21 technician.)
22     MR. HASLAM: Okay. Why don't we go off
23 the record and we'll come back on as soon as it's
24 uploaded.
25     VIDEO SPECIALIST: Okay. Going off the

**10**

1  record. The time is 11:12.
2     (A recess was taken.)
3     VIDEO SPECIALIST: We are back on the
4  record. The time is 11:14. Thank you.
5     MR. HASLAM: Can we publish the document
6  that is in Tab 1.
7     A/V TECHNICIAN: Stand by.
8     MR. HASLAM: And can you provide the
9  witness with the ability to control the document.
10    (Discussion off the record with the A/V
11 technician.)
12    MR. HASLAM: Let's have this marked as
13 Exhibit 1.
14    (Brooks Deposition Exhibit 1 marked for
15 identification and is attached to the transcript.)
16 Q   Can you tell us what this document is?
17 A   My eyes are not good as they used to be,
18 so I'm ...
19    (Discussion off the record with the A/V
20 technician.)
21 A   It looks like it's listed as a First
22 Amendment to Asset Purchase Agreement; Conveying
23 Party, Vivato; Receiving Party, Wayout Wireless.
24 Q   And at the bottom of that first page, is
25 that your signature?

**11**

1  A   Correct.
2  Q   Okay. What was your -- were you doing
3  any work for Wayout Wireless at the date of
4  this -- around the time of this recordation, which
5  is September 2006?
6  A   Not that I recall. In fact, I don't
7  recognize that name at all, Wayout Wireless.
8  Q   Would you go back to the top, there is a
9  reference to the name of the conveying party,
10 Vivato, Inc.
11    Were you doing any work associated with
12 Vivato, Inc., at that time?
13 A   I do not recall when I began doing work
14 for Vivato, but we did patent prosecution work for
15 Vivato.
16 Q   We'll get to more specifics later on.
17 But when you -- without regard to when you recall
18 first doing work with a Vivato entity, can you
19 tell me who the people were that you were first
20 dealing with at Vivato?
21 A   Gary Haycox.
22 Q   How did you become acquainted with
23 Mr. Haycox in a professional capacity?
24 A   He was referred to us.
25 Q   And do you recall approximately when he

**12**

1  was referred to you?
2  A   This document says September 19 of 2006,
3  so I imagine it was in 2006.
4  Q   And what kind of work did Mr. Haycox ask
5  you to perform?
6  A   Patent prosecution.
7  Q   If you'll scroll down to right there.
8  And I've got documents that I'll show you later.
9  But do you recall generally at this point that the
10 patent applications and patent numbers that are
11 listed there were among the patents or patent
12 applications that you performed services for
13 Mr. Haycox relating to?
14 A   No, I don't have any recollection of
15 patent numbers from back in 2006.
16 Q   Okay. And again, we'll get to it later,
17 but do you recall that you were working on more
18 than one patent or patent applications during your
19 work for companies related to Mr. Haycox?
20 A   I recall working on more than one patent
21 application.
22    MR. HASLAM: Can we pull up Tab 2 and
23 publish it. This is another -- is this -- strike
24 that. Let's mark this as Exhibit 2.
25    (Brooks Deposition Exhibit 2 marked for

RESTRICTED - ATTORNEYS' EYES ONLY

XR-EDTX1-00052127

**Page 13**

1  identification and is attached to the transcript.)
2  Q  Can you tell us what this document is?
3  A  It looks like a similar document to the
4  previous one, this time conveying from Wayout
5  Wireless --
6     THE WITNESS: Kevin, if you'll scroll up.
7  A  -- to Vivato Networks, LLC.
8  Q  Do you recall the name Vivato Networks,
9  LLC, in connection with work you performed for
10 Mr. Haycox?
11 A  Yes.
12 Q  And was that an entity from approximately
13 sometime around the date of 2007 forward that you
14 performed patent-prosecution-related services for?
15 A  Yes.
16    MR. HASLAM: If we can scroll up. If we
17 can scroll up just briefly on that. Can you go up
18 a little more.
19 Q  In Box 2, the name Vivato Networks, LLC,
20 appears, and it has a street address care of
21 Ambrose Law, in Portland, Oregon.
22    Do you recall having any contact around
23 this time with Ambrose Law?
24 A  No.
25 Q  Do you recall ever dealing with a

**Page 14**

1  Mr. Ambrose?
2  A  I never had any contact with anyone other
3  than Gary Haycox, but I believe he gave me
4  instructions from business counsel Ambrose.
5  Q  And can you elaborate on what you mean by
6  he gave you instructions related from Mr. Ambrose?
7     MR. CONNEELY: Counsel, this is
8  Mr. Conneely. I have to jump in here. Mr. Brooks
9  may owe a duty of confidentiality or
10 attorney-client privilege. And unless someone can
11 tell us that that's been waived, I have to caution
12 him not to disclose attorney-client privileged
13 communications, even for former clients.
14    MR. MIRZAIE: And, yes, I think
15 confidentiality, I think we should be fine as far
16 as the protective order is concerned. You know,
17 we're under protective order here, and we can
18 designate, if Mr. Haslam wants to, the transcript
19 under outside attorneys' eyes only.
20    Privilege has not been waived. So unless
21 Mr. Haslam has some different information, I don't
22 think privilege has been waived.
23 Q  Let me ask you this: Do I understand
24 from what you have testified that you do not
25 recall having any direct conversations with

**Page 15**

1  Mr. Ambrose?
2  A  Correct.
3  Q  And I'll just elaborate that. Do you
4  recall ever having any written communications with
5  Mr. Ambrose?
6  A  I do not recall.
7  Q  And could we just scroll down to the
8  signature on this page. I want to make sure I've
9  asked you that.
10    Is that your signature on the bottom of
11 the first page?
12 A  Yes.
13    MR. HASLAM: Can we have Tab 3 uploaded.
14    (Brooks Deposition Exhibit 3 marked for
15 identification and is attached to the transcript.)
16    MR. HASLAM: And could you give control
17 to the witness.
18    A/V TECHNICIAN: He should have control.
19 Q  First question is, can you tell me what
20 that document is?
21 A  It's labeled an assignment document, with
22 conveyance from Vivato Networks, LLC. If you'll
23 scroll down. I don't see who it's assigned to.
24 Oh, Vivato Networks Holdings, LLC. Thank you.
25 Q  You've testified earlier that you did do

**Page 16**

1  patent prosecution work for Vivato Networks, LLC,
2  and this is a -- something recorded with the
3  patent office.
4     Do you recall at some point doing work
5  for Vivato Networks Holdings, LLC?
6  A  I do not recall.
7  Q  And by that do you mean that you have no
8  recollection one way or the other, or are you
9  saying that you don't believe you ever did patent
10 prosecution services for Vivato Networks Holdings?
11 A  I have no recollection.
12 Q  Okay. Without regard at this point in
13 time for the particular, what those particular
14 application numbers that are listed there -- could
15 you scroll down -- under Property Numbers, can you
16 tell me those are patent application numbers?
17 A  Those look to be in the form of patent
18 application serial numbers.
19 Q  And at this point in time, as of the date
20 of this document, were you working on multiple
21 patents or patent applications in December 2007?
22 A  Yes. And by "patent applications,"
23 prosecution only, I believe.
24 Q  And by that do you mean that you were not
25 filing new applications?

45

1  VIDEO SPECIALIST: We're back on the
2  record, the time is 12:17.
3  BY MR. HASLAM:
4    Q  I want to ask you one further question.
5  After you withdrew as counsel for Mr. Haycox and
6  his companies, did an Adrian Zajac, Z-A-J-A-C,
7  ever contact you to discuss your withdrawal or the
8  reason for your withdrawal?
9    A  I don't recognize that name. I do not
10 recall.
11   Q  And we can go back and look at them, but
12 I'll ask this without them. In your request to
13 withdraw as counsel, one of the things you are
14 required to provide by the patent office is a
15 reason for your withdrawal. Correct?
16   A  I'm not certain if that's the current
17 form or was that the form then.
18   Q  Okay. The reason for withdrawal was the
19 fact that you had unpaid bills that had been
20 unpaid for approximately a year. Correct?
21   A  More than a year, correct.
22     MR. HASLAM: Okay. I have no further
23 questions. Thank you very much for your time. I
24 guess other counsel has the opportunity to ask
25 questions, if they wish.

46

1     MR. MIRZAIE: Yeah. Thank you,
2  Mr. Brooks, for your time today. I just have
3  maybe 15 minutes of questions to ask, if that's
4  okay.
5     THE WITNESS: Yes.
6     EXAMINATION BY COUNSEL FOR PLAINTIFF
7  BY MR. MIRZAIE:
8    Q  Let's see here. So I believe you
9  testified earlier today that some of the
10 applications that you were shown -- strike that.
11     You were shown a few applications today
12 during the first part of your testimony.
13     Do you recall that?
14   A  I was shown, it looked to be faxed forms,
15 correspondence with the patent office, and we
16 looked at a summary sheet of invoicing. And
17 connected with that were patent numbers. But we
18 didn't look at -- I think there was one amendment
19 response cover sheet that was put up, correct.
20   Q  Thanks. And the applications identified
21 on the documents that you were shown today, I
22 believe you testified that you weren't aware that
23 any of those went abandoned after you withdrew.
24 Correct?
25   A  I do not recall.

47

1    Q  And to be clear, you do not recall that
2  any of those ever went abandoned. Correct? My
3  question wasn't whether you recalled the -- the
4  questions earlier this morning. My question is,
5  you don't recall any of those applications going
6  abandoned. Correct?
7    A  Correct.
8    Q  And you weren't involved in any revival
9  of those applications from any abandonment.
10 Correct?
11   A  Not that I recall.
12   Q  And you were shown I believe it was Tab
13 45, an invoice of sorts that I believe showed some
14 of the moneys that you were paid and -- and owed.
15     Do you recall that?
16   A  I believe we started the day looking at
17 an invoicing summary sheet. And at the very
18 bottom of the summary sheet there appeared to be
19 the reflection of the amount charged versus the
20 amount paid, and the difference outstanding.
21   Q  And were you ever owed money from any
22 other clients other than the Vivato-related
23 clients we've identified this morning?
24     MR. CONNEELY: Objection. Vague.
25   A  I don't think I can speak to the business

48

1  practices of other clients and their payments.
2    Q  Your -- you withdrew from representing
3  Vivato or Vivato-related entities per some of the
4  exhibits that we reviewed this morning. Correct?
5    A  Correct.
6    Q  Was that your one and only withdrawal
7  from representation over the course of your
8  lengthy career?
9    A  I imagine there were other withdrawals
10 over the course of my career.
11   Q  And some of those other withdrawals were
12 as a result of nonpayment of attorney fees. Fair?
13   A  I suspect so.
14   Q  Do you have any idea of about how many
15 withdrawals you've had over your career?
16   A  No.
17   Q  Some of the correspondence that you
18 reviewed today did indicate that the patent owner
19 at the time had hired another attorney, by the
20 name of Ambrose.
21     Do you recall that?
22   A  I do not recall what other counsel worked
23 for Gary Haycox. I recall by voice taking
24 instruction from Gary Haycox to list
25 correspondence contacts.

RESTRICTED - ATTORNEYS' EYES ONLY

XR-EDTX1-00052136

49

1  Q    And you were never instructed to -- to
2  abandon any application.  Fair?
3  A    I do not recall an instruction to abandon
4  an application.
5  Q    And the invoices that we looked at this
6  morning, that does not suggest any intent on your
7  part to deceive the PTO.  Fair?
8     MR. CONNEELY:  Object to the form.  It's
9  argumentative.  And we didn't look at any invoices
10 this morning.
11 Q    I'll ask a different question.  You were
12 shown, I counted about a dozen documents this
13 morning.  Fair?
14 A    Yes, it appears that we looked at about a
15 dozen documents.
16 Q    Did any of those documents indicate any
17 intent to deceive the patent office from you?
18    MR. CONNEELY:  Same objection.
19 Argumentative and foundation.
20 Q    But you can answer yes or no to the
21 extent you have an opinion on that matter or you
22 have an answer.
23 A    The documents we looked at were form
24 documents from the patent office.  Why would they
25 reflect an intent to deceive?

50

1  Q    I don't think they would, but I'm
2  asking -- I'm just asking you if you think that
3  they would.
4  A    I do not.
5     MR. CONNEELY:  Same objections.
6  Q    And the payment document at Tab 45 also
7  does not reflect any intent to deceive.  Correct?
8     MR. CONNEELY:  Object to the extent it
9  calls for a legal conclusion and lack of
10 foundation.
11 Q    You can answer subject to that objection,
12 sir.
13 A    Would you please repeat the question?
14 Q    Yes.  The bills document that we reviewed
15 which counsel called Tab 45, do you recall that
16 document?
17 A    Yes.
18 Q    That, also, does not reflect or suggest
19 any intent to deceive the PTO.  Fair?
20    MR. CONNEELY:  Same objections.
21 A    It does not appear to be.
22 Q    Outside of that document I think the
23 majority, if not all of the other documents you
24 were shown today, were part of the file histories
25 of various patent applications.  Fair?

51

1  A    I apologize.  If you -- if you said
2  excepting the summary sheet, yes, they -- they
3  presumably would be part of the file histories.
4  Q    And those are all matters of public
5  record or to which the public has access to.
6  Fair?
7  A    They should.
8  Q    And by the way, when did counsel for
9  Aruba first reach out to you either by e-mail or
10 by serving a subpoena on you this year?
11 A    I believe I was first contacted end of
12 May.
13 Q    Do you know the exact date?
14 A    I do not.
15 Q    Could it have been early June, or was it
16 end of May for sure?
17 A    It could have been.  I don't recall.
18 Q    But it wasn't before around the end of
19 May.  Fair?
20 A    For volume issues, would you please say
21 the front end of that again?
22 Q    Yeah.  But it was not before along the
23 end of May.  Correct?
24 A    Correct, it was not before along the end
25 of May.

52

1  Q    And did you have any phone calls with
2  counsel for Aruba between that point in time and
3  today?
4  A    Yes.
5  Q    About how many?
6  A    One.
7  Q    And how long was that call?
8  A    Five, ten minutes.
9  Q    And what did you guys discuss, if you
10 recall?
11 A    Counsel -- and I apologize, I do not have
12 counsel's first -- or last name, Anupam, and Kee
13 Young on the call today were present and asked if
14 I had done work for Vivato.  We shared that we
15 had, and we had withdrawn, and did not have
16 anything further to share.
17 Q    And the fact that you had done work for
18 Vivato, that was part of the public file history.
19 Fair?
20 A    Correct.
21 Q    And the fact that you had withdrawn, that
22 was also part of the public file history.  Fair?
23 A    Those sheets we looked at, correct,
24 request for withdrawal.
25 Q    And was that phone conversation the first

RESTRICTED - ATTORNEYS' EYES ONLY

XR-EDTX1-00052137

### Page 53

1 time that they reached out to you in end of May,
2 early June?
3     MR. CONNEELY:  Counsel, I'm not sure
4 we've established when the phone call happened.
5   Q   That's what I'm trying to inartfully
6 perhaps establish is, did that phone call take
7 place at the end of May or early June?
8   A   Yes.
9   Q   Was that the first time that someone on
10 behalf of Aruba or HP reached out to you?
11   A   I believe so.
12   Q   And have you exchanged e-mails with
13 counsel for Aruba or HP?
14   A   Yes.
15   Q   About how many?
16   A   One or two.
17   Q   And what were the -- what was the
18 substance of those e-mails, if you recall?
19   A   I believe I first received an e-mail from
20 Anupam asking if he could speak with me.  I
21 responded in one e-mail to say that I would make
22 time, and it resulted in the phone call.  And then
23 after other business interruptions, he reached out
24 again requesting and I responded that we would not
25 be able to participate with his request.

### Page 54

1   Q   Thank you.
2     MR. MIRZAIE:  And, Counsel, we'd request
3 production of those e-mails.
4     And with that, I don't believe I have any
5 other questions.  Thank you for your time this
6 morning.
7     MR. CONNEELY:  Can I just ask a
8 clarification.  Which counsel were you looking at
9 when you said you requested copies of those
10 e-mails?
11     MR. MIRZAIE:  I'm sorry.  Just -- not
12 you, but counsel for defendants in this case,
13 Aruba HP.
14     MR. CONNEELY:  Thank you.
15     THE WITNESS:  Thank you.
16   EXAMINATION BY COUNSEL FOR DEFENDANT ARUBA
17   NETWORKS, LLC
18 BY MR. HASLAM:
19   Q   I just have one or two questions.
20 When -- when you decided to withdraw as counsel in
21 representing Mr. Haycox and his companies before
22 the patent office, did you advise him of that
23 fact?
24     MR. CONNEELY:  Could you ask that
25 question again?

### Page 55

1     MR. HASLAM:  Yeah.
2   Q   Before you filed the request to withdraw
3 with the patent office in connection with the
4 applications you were working on for Mr. Haycox
5 and his companies, did you inform Mr. Haycox that
6 you were going to withdraw?
7   A   I do not recall, but I believe our
8 practice would have been to advise the client that
9 we would withdraw.
10   Q   Was it your practice to suggest that they
11 get replacement counsel or not?
12   A   Yes.
13     MR. HASLAM:  That's all I have.  Thank
14 you very much for your time.
15     THE WITNESS:  Thank you.
16     MR. MIRZAIE:  Thanks, everybody.
17     THE WITNESS:  Have a great day.
18     MR. HASLAM:  You, too.  Appreciate your
19 time.
20     VIDEO SPECIALIST:  Thank you.  That
21 concludes today's proceedings.  Off the record at
22 12:31.  Thank you, Counsel.
23     (Off the record at 12:31 p.m. EDT.)
24
25

### Page 56

1     ACKNOWLEDGMENT OF DEPONENT
2     I, EDWARD JOSEPH BROOKS, III, ESQUIRE, do
3 hereby acknowledge that I have read and examined
4 the foregoing testimony, and the same is a true,
5 correct and complete transcription of the
6 testimony given by me, and any corrections appear
7 on the attached Errata sheet signed by me.
8
9 _____   _____
10   (DATE)                   (SIGNATURE)

57
1  CERTIFICATE OF SHORTHAND REPORTER - NOTARY PUBLIC
2   I, Debra A. Whitehead, the officer before whom the
3  foregoing proceedings were taken, do hereby certify
4  that the foregoing transcript is a true and correct
5  record of the proceedings; that said proceedings
6  were taken by me stenographically and thereafter
7  reduced to typewriting under my supervision; that
8  reading and signing was not requested; and that I am
9  neither counsel for, related to, nor employed by any
10 of the parties to this case and have no interest,
11 financial or otherwise, in its outcome.
12  IN WITNESS WHEREOF, I have hereunto set my hand and
13 affixed my notarial seal this 18th day of July,
14 2022.
15
16 My commission expires:
17 April 30, 2023
18
19 -----------------------------
20 E-NOTARY PUBLIC IN AND FOR THE
21 STATE OF MARYLAND
22
23
24
25

RESTRICTED - ATTORNEYS' EYES ONLY

XR-EDTX1-00052139