# Exhibit 30

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

CASE NO. 8:17-CV-00596-DOC (LEAD)

_____

XR COMMUNICATIONS, LLC, d/b/a VIVATO TECHNOLOGIES,

    Plaintiff,

vs.

D-LINK SYSTEMS, INC., et al.,

    Defendants.

_____


VIDEO DEPOSITION OF

NICHOLAS GODICI

Conducted Remotely

Friday, August 26, 2022

10:02 PT

_____

Reported by:  Elisabeth A. Lorenz:  RMR, CRR

Job No. SY005599


TransPerfect Legal Solutions
212-400-8845 - Depo@TransPerfect.com

**RESTRICTED - ATTORNEYS' EYES ONLY**

XR-EDTX1-00054314

Page 162

1  fact after reviewing the -- the facts in this case.
2  Q      Thank you.
3         Going back to the heading of Subsection E,
4  do you believe that the determination of whether the
5  abandonment of the applications was intentional and
6  the revival is improper is a legal conclusion?
7              MR. MARANDOLA:  Objection, compound.
8              THE WITNESS:  Could you tell me what --
9  which heading you're referring to?
10 BY MR. WANG:
11 Q      Subsection E, it refers to if it determines
12 that the abandonment of the '329, '860, and '342
13 applications was intentional, the revival was
14 improper?
15 A      And the question is again?  I'm sorry.
16 Q      My question is, do you believe that
17 determination of whether the applications were
18 intentionally abandoned or that a revival was
19 improper is a legal conclusion?
20             MR. MARANDOLA:  Objection to the form.
21             THE WITNESS:  Well, as I state in this
22 paragraph, it's my understanding that the trier of
23 fact will make that determination.  The trier of
24 fact knows the law.  I don't -- I'm not attempting
25 to instruct the -- the court on the law.  The court

TransPerfect Legal Solutions
212-400-8845 - Depo@TransPerfect.com

**RESTRICTED - ATTORNEYS' EYES ONLY**

XR-EDTX1-00054475

Page 163

1   knows the law.
2           My job here is to explain what happened
3   during the prosecution, what happened during the
4   abandonment and then subsequent revivals, and what
5   the Patent Office requires in terms of the -- of
6   the -- of their rules and -- and what the Patent
7   Office considers to be intentional and
8   unintentional.  And then -- in that background, I
9   understand that the court will make the final
10  determination of whether or not the revivals were
11  proper or improper.
12  BY MR. WANG:
13  Q       Can you read the remainder of paragraph 284
14  to yourself?
15  A       Okay.
16  Q       And in the second-to-last sentence, you say
17  that:  If it is determined that Schwelder and/or
18  Burke failed to make the required inquiry and the
19  statement to the PTO that the delay was
20  unintentional is false, such would be a violation of
21  the duty of candor, and the revival of the
22  applications would have been improper.
23          Do you see that?
24  A       Yes.
25  Q       You don't offer any opinion that the revival

**RESTRICTED - ATTORNEYS' EYES ONLY**

XR-EDTX1-00054476

Page 164

1  petitions made by Mr. Schwedler and Mr. Burke
2  contain statements that were knowingly false, do
3  you?
4  A       Well, we don't have a statement from
5  Schwelder or Burke that says, Hey, I knew -- I knew
6  that was intentional, but I told the Patent Office
7  it was unintentional.  We don't have that statement
8  from either Schwelder or Burke.
9         But what we do have -- that's why we have
10 the duty of candor, the duty of disclosure, and the
11 duty of reasonable inquiry.
12        In other words, they are obligated to go
13 find out what the facts are.  And if they don't find
14 out the real facts, then they're -- they can't make
15 that statement to the Patent Office that the entire
16 delay was unintentional.  They're -- in other words,
17 they're making a -- a positive statement to a
18 government agency that, based on their
19 investigation, the abandonment was unintentional.
20        And if, in fact, the facts show that --
21 otherwise and that the statement is false, that's
22 improper.  And if the Patent Office knew that it was
23 improper, the Patent Office would have never revived
24 those patent applications.
25 Q       Do you recall in Mr. Schwedler and

**RESTRICTED - ATTORNEYS' EYES ONLY**

XR-EDTX1-00054477

Page 165

1  Mr. Burkes' depositions that they maintained their
2  belief that the abandonments were unintentional?
3  A      They may have -- they may have stated that,
4  you know, in -- in some kind of a redirect of
5  questioning by their own attorney.
6         But -- I'm looking at -- I'm looking at what
7  the evidence shows, okay?  And -- and my point being
8  this:  The evidence shows that -- that Brooks was
9  not being paid and that -- and that they suddenly
10 decided not to pay him, for some reason.  And Brooks
11 withdrew, and the applications went abandoned.
12        And then when -- a year later, when they
13 were petitioned to revive, there's no indication
14 that -- that investigation occurred correctly into
15 the facts and circumstances.  And it will be up to
16 the court to -- to go through the testimony and
17 possibly hear more testimony.
18        But if, in fact, the investigation wasn't
19 done properly and the facts weren't uncovered, then
20 it would have been an improper statement to the
21 Patent Office and an improper revival.
22 Q      I understand that, Mr. Godici.
23        In paragraph 284 you refer to:  Such would
24 be a violation of the duty of candor.  And you also
25 say there, "failed to make the required inquiries,"

RESTRICTED - ATTORNEYS' EYES ONLY

XR-EDTX1-00054478

1   so I understand that.
2           But my question is -- I want to confirm, you
3   don't assert or offer an opinion that Mr. Schwedler
4   or Mr. Burke made knowingly false statements to the
5   PTO in the revival petitions, correct?
6           MR. MARANDOLA:  Objection.  Asked and
7   answered.
8           THE WITNESS:  Well, again, we don't
9   have testimony that they -- that they had some
10  knowledge or document that said it was intentional,
11  and then decided to tell the Patent Office that it
12  was unintentional.
13          But what we have is the PTO requirement
14  that they do an investigation, and to do an
15  investigation into the facts and circumstances of
16  why the patent applications went abandoned.
17          So they -- you know, they -- without
18  that investigation, they can't make that
19  conclusionary statement to the Patent Office that
20  the entire delay was unintentional without digging
21  into the reasons why and investigating the reasons
22  why.  That's -- that's what the Patent Office
23  requires.  That's what I'm trying to convey here for
24  the court.
25

**RESTRICTED - ATTORNEYS' EYES ONLY**

XR-EDTX1-00054479

Page 167

```
 1   BY MR. WANG:
 2   Q      Generally, Mr. Godici, a finding of
 3   inequitable -- inequitable conduct is made against
 4   patent prosecutors, correct?
 5   A      Well, anybody with the duty of candor and
 6   duty of disclosure, it's possible they may violate
 7   that duty of candor and duty of disclosure.
 8   Q      Just generally speaking, how would an
 9   applicant violate that duty of candor or disclosure,
10   compared to the prosecuting attorney, for example?
11   A      Well, I mean, there are situations where
12   I -- I mean, do you want me to go into
13   hypotheticals?
14          But it's possible that a patent applicant
15   may know a prior art or may have sold the invention
16   more than one year prior to the application date, or
17   some other fact that would render the patent
18   invalid, and that would be -- that would be required
19   to be conveyed to the Patent Office.  And that's one
20   way that a patent applicant, particularly an
21   inventor or a corporate person, you know, could
22   violate the duty of candor.
23   Q      But other than, perhaps, power of attorneys,
24   the -- the applicant does not submit papers in a
25   prosecution, correct?
```

**RESTRICTED - ATTORNEYS' EYES ONLY**

XR-EDTX1-00054480

Page 187

1          CERTIFICATE OF SHORTHAND REPORTER
2
3              I, ELISABETH A. LORENZ, Registered
4    Merit Reporter and Certified Realtime Reporter, the
5    officer before whom the foregoing deposition was
6    taken, do hereby certify that the foregoing
7    transcript is a true and correct record of the
8    testimony given; that said testimony was taken by me
9    stenographically and thereafter reduced to
10   typewriting under my direction; that reading and
11   signing was not requested; and that I am neither
12   counsel for, related to, nor employed by any of the
13   parties to this case and have no interest, financial
14   or otherwise, in its outcome.
15              IN WITNESS WHEREOF, I have hereunto set
16   my hand this 1st day of September, 2022.
17
18
19         _____
20         ELISABETH A. LORENZ
21         NCRA Registered Merit Reporter
22         NCRA Certified Realtime Reporter
23
24
25

TransPerfect Legal Solutions
212-400-8845 - Depo@TransPerfect.com

RESTRICTED - ATTORNEYS' EYES ONLY

XR-EDTX1-00054500