# EXHIBIT A



# Transcript of Christopher Ambrose

**Date:** July 7, 2022
**Case:** XR Communications, LLC -v- D-Link Systems, Inc., et al.

Planet Depos
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
www.planetdepos.com

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

RESTRICTED - ATTORNEYS' EYES ONLY

## 1

```
 1        IN THE UNITED STATES DISTRICT COURT
 2        FOR THE CENTRAL DISTRICT OF CALIFORNIA
 3              LOS ANGELES DIVISION
 4   -------------------------------X
 5   XR COMMUNICATIONS LLC d/b/a     :
 6   VIVATO TECHNOLOGIES,            :
 7              Plaintiffs,          :
 8        v.                :Civil Action No:
 9                          :8:17-CV-00596
10   D-LINK SYSTEMS, INC.,           :
11              Defendants.          :
12   -------------------------------X
13        DEPOSITION OF CHRISTOPHER AMBROSE
14       APPEARING REMOTELY FROM BEND, OREGON
15             THURSDAY, JULY 7, 2022
16                  12:00 P.M.
17
18
19
20
21
22
23   Job No.: 455085
24   Pages 1 - 84
25   Reported by: Adrienne Mignano, RPR
```

## 2

```
 1        Deposition of CHRISTOPHER AMBROSE, held via
 2   Zoom videoconferencing, pursuant to Notice, before
 3   Adrienne M. Mignano, a Notary Public and Registered
 4   Professional Reporter in and for the State of New
 5   York.
```

## 3

```
 1             A P P E A R A N C E S
 2
 3
 4   ON BEHALF OF PLAINTIFFS:
 5        PHILIP X. WANG, ESQUIRE
 6        RUSS AUGUST & KABAT
 7        12424 Wilshire Boulevard
 8        12th Floor
 9        Los Angeles, California 90025
10        310.826.7474
11
12
13   ON BEHALF OF DEFENDANT - ARUBA NETWORKS:
14        ROBERT T. HASLAM, ESQUIRE
15        KEE YOUNG LEE, ESQUIRE
16        COVINGTON & BURLING LLP
17        3000 El Camino Real
18        5 Palo Alto Square - 10th Floor
19        Palo Alto, California 94306
20        650.632.4700
```

## 4

```
 1
 2        A P P E A R A N C E S (Continued)
 3
 4   ON BEHALF OF DEFENDANT - NETGEAR & FALCON
 5        ALEXANDRA LANE, ESQUIRE
 6        DUANE MORRIS LLP
 7        1540 Broadway
 8        New York, New York 10036
 9        212.471.4772
10
11   ALSO PRESENT:
12        Drew Halton - Videographer
13        Malcolm Cooke - Remote Technician
```

RESTRICTED - ATTORNEYS' EYES ONLY

XR-EDTX1-00052029  
XR-EDTX1-00052028

---

Page 5

```
              C O N T E N T S

EXAMINATION OF CHRISTOPHER AMBROSE        PAGE
     BY MR. HASLAM                          7
     BY MR. WANG                           62
     BY MR. HASLAM                         77


              E X H I B I T S
         (Attached to the transcript)
AMBROSE DEPOSITION EXHIBITS               PAGE
Exhibit 1   Document Bates stamped         22
            XR-ARUBA0007354-355
Exhibit 2   License Agreement              25
Exhibit 3   Decision on a Petition to      37
            Withdraw
Exhibit 4   Request to Withdraw            38
Exhibit 5   Patent Office Communication,   39
            Dated December 11, 2008
Exhibit 6   Second Amended Complaint       54
Exhibit 7   Answer in the Foreclosure      55
            Proceedings
```

---

Page 6

1  REMOTE TECH: Thank you to everyone
2  for attending this proceeding remotely, which we
3  anticipate will run smoothly. Please remember
4  to speak slowly and do your best not to talk
5  over one another.
6       Please be aware we are recording this
7  proceeding for backup purposes. Any
8  off-the-record discussions should be had away
9  from the computer. Please remember to mute your
10 mic for those conversations.
11      Please have your video enabled to
12 help the reporter identify who is speaking. If
13 you are unable to connect with video and are
14 connecting via phone, please identify yourself
15 each time before speaking.
16      I apologize in advance for any
17 technical-related interruptions. Thank you.
18      THE VIDEOGRAPHER: Here begins Disk
19 Number 1 in the video deposition of Christopher
20 Ambrose in the matter of XR Communications, LLC
21 d/b/a Vivato Technologies versus D-Link Systems,
22 Inc., in the U.S. District Court, Central
23 District of California, Civil Action Number:
24 8:17-CV-00596-DOC.
25      Today's date is July 7, 2022. Time

---

Page 7

1  on the video monitor is 12:01 p.m. Eastern. The
2  videographer is Drew Halton for Planet Depos.
3  All participants are attending remotely.
4       Would counsel please voice-identify
5  themselves and state whom they represent.
6       MR. HASLAM: Bob Haslam from
7  Covington & Burling representing Aruba Networks.
8  With me is my colleague, Kee Young Lee.
9       MR. WANG: Philip Wang from the law
10 firm of Russ August & Kabat, representing and on
11 behalf of the Plaintiff XR Communications, LLC
12 d/b/a Vivato Technologies.
13      MS. LANE: Alexandra Lane from Duane
14 Morris on behalf of Netgear and Falcon.
15      THE VIDEOGRAPHER: The court reporter
16 is Adrienne Mignano representing Planet Depos.
17      Would the reporter please swear in
18 the witness.
19 Whereupon,
20      CHRISTOPHER AMBROSE,
21 being first duly sworn or affirmed to testify to
22 the truth, the whole truth, and nothing but the
23 truth, was examined and testified as follows:
24   EXAMINATION BY COUNSEL FOR THE DEFENDANT -
25               ARUBA NETWORKS

---

Page 8

1  BY MR. HASLAM:
2    Q   Mr. Ambrose, are you currently
3  employed?
4    A   I am.
5    Q   What is your job?
6    A   I am an attorney, a partner with
7  Ambrose Law Group, LLC.
8    Q   And you are taking time from work
9  today to attend this deposition?
10   A   Correct.
11   Q   And do I -- am I correct that as a
12 lawyer that you would typically bill for your
13 time spent on various legal matters?
14   A   Correct.
15   Q   And you are taking time away from
16 those legal matters that you might otherwise be
17 attending in order to attend this deposition; is
18 that correct?
19   A   Yes.
20   Q   And you have been subpoenaed to
21 appear at this deposition?
22   A   Yes.
23   Q   What is your normal hourly rate?
24   A   425 an hour.
25   Q   And has Aruba Networks agreed to pay

29
1 Vivato Networks, LLC?
2     MR. WANG: Objection. Privilege.
3   A  Can -- I'm sorry, can you repeat the
4 question?
5   Q  Yeah. I was asking whether you
6 were -- whether the funding that Aequitas was
7 providing was going to Catcher Holdings because
8 Vivato Networks, LLC had been merged into it, or
9 whether the fund's funding was technically still
10 funded through Vivato Networks, LLC?
11     MR. WANG: Objection. Form. Calls
12 for speculation and privilege.
13   A  I don't specifically recall the
14 timing and whether it went through Vivato
15 Networks, Inc. or LLC prior to the merger. My
16 general recollection is that it went -- it
17 ultimately ended up with Catcher Holdings. It
18 certainly did not end up with -- to the best of
19 my knowledge, with Vivato Networks Holdings.
20   Q  And, likewise, do you know whether or
21 not, after the merger, that the funding was
22 funneled to Vivato Networks, LLC, or had that
23 company been merged into Catcher Holdings and no
24 longer had separate corporate existence, if you
25 know?

30
1     MR. WANG: Same objections.
2   A  After the merger, it no longer had a
3 separate corporate existence.
4   Q  Okay.
5     MR. HASLAM: Can we pull up Brooks
6 Exhibit 7. And, if you could, give control of
7 this to the witness.
8   Q  Can you scroll through this.
9     (Witness reviewing document.)
10  A  Okay.
11  Q  This is a document filed with the
12 United States Patent and Trademark Office by
13 Mr. Brooks requesting to withdraw as counsel for
14 Vivato, Inc. Do you recall receiving a copy of
15 this at any time in 2008?
16  A  I don't.
17  Q  Can we just scroll down in this a
18 little bit to the second page.
19     You'll notice on the page we're now
20 looking at, which is -- stop right there -- the
21 second page of Brooks Exhibit 7. Mr. Brooks
22 indicates on this form you, at your law firm in
23 Bend, Oregon, as the person to contact in the
24 future.
25     At some point in time, did you -- you

31
1 became aware that Mr. Brooks had withdrawn from
2 prosecuting patent applications on behalf of
3 Catcher Holdings or Vivato Networks Holdings,
4 LLC; is that correct?
5   A  Yes, at some point in time. It
6 appears to be at about this time Mr. Brooks was
7 going to withdraw and communications were to be
8 sent to me.
9   Q  And had you discussed that with
10 Mr. Brooks prior to the time he filed what we're
11 looking at, Brooks Exhibit 7, identifying you as
12 the person for future -- to correspond with in
13 the future?
14  A  I don't recall how it was
15 communicated whether it was e-mail or a phone
16 call or through Mr. Haycox or how exactly it
17 came about, but I certainly understood that
18 Mr. Brooks was going to be withdrawing and
19 communications were to be sent to me. I can't
20 also recall specifically whether it was for all
21 the patents or just some of the patents or the
22 patent applications or what exactly.
23  Q  And we will -- I will show you a
24 document later, a little later in this
25 deposition, that indicates that the Patent

32
1 Office telephoned you, I believe, in September
2 of 2008, and I just want you to be aware of that
3 in answering this next question.
4     Do you believe -- did you know that
5 Mr. Brooks was withdrawing, at least as shown in
6 Exhibit 7, from this particular patent
7 application around the time of April 2008, when
8 this document is signed, as opposed to becoming
9 aware of it later in September when the Patent
10 Office called you?
11     MR. WANG: Objection. Form.
12  A  I would have been aware that it was
13 happening at or about the time that he was
14 taking that action. I guess for purposes of
15 clarification, I'm just -- I can't say
16 specifically if it was April of 2008, but I knew
17 that he was withdrawing and that I was going to
18 be having communications sent to me. Exactly
19 when it happened, I don't know. I'm assuming it
20 was April of 2008. It -- so it was not a
21 surprise.
22  Q  Okay. And you say it wasn't a
23 surprise. Why was that?
24  A  I knew at some point in time that
25 Mr. Brooks was not going to -- my apologies.

RESTRICTED - ATTORNEYS' EYES ONLY

XR-EDTX1-00052036
XR-EDTX1-00052028

33

 1  Again, I just want to make sure I'm not getting
 2  into attorney-client privileges. I was aware at
 3  some point in time that Mr. Brooks was going to
 4  step aside and that they needed somebody to have
 5  communications sent to, and I agreed to be that
 6  person.
 7      Q   Did Mr. Haycox ask you to be that
 8  person?
 9          MR. WANG: Objection. Privilege.
10      A   I don't recall if it was Mr. Haycox
11  or Mr. Brooks or -- I'm sure it would have been
12  one or the other.
13      Q   Did you become aware of the reason
14  Mr. Brooks was going to withdraw from
15  prosecuting patents for Catcher Holdings or
16  Vivato Networks Holdings?
17          MR. WANG: Objection. Privilege.
18      A   I don't recall the reason.
19      Q   Did you become aware that he withdrew
20  because he was not getting his bills paid
21  timely --
22          MR. WANG: Objection.
23      Q   -- or at all.
24          MR. WANG: Objection. Privilege.
25  Foundation. Speculation.

34

 1      A   I don't.
 2      Q   Were you responsible in any way for
 3  paying Mr. Brooks for his services?
 4      A   No.
 5      Q   You didn't cut checks, you didn't
 6  review bills or have anything to do with the
 7  process of receiving the bills or paying the
 8  bills?
 9      A   No.
10      Q   And at some point in time, you did
11  not become aware that the reason Mr. Brooks
12  withdrew had to do with his concerns about
13  billing?
14          MR. WANG: Objection. Privilege.
15  Speculation.
16      A   I don't recall that specifically. I
17  just can't really recall the reason why he was
18  withdrawing. Yeah, I'm sorry, I just can't
19  recall at this time.
20      Q   Okay. But, in any event, you were
21  not responsible for -- in any way in the process
22  of getting Mr. Brooks paid for the work he was
23  doing?
24      A   I had no recollection at all and
25  would not have entered into any kind of an

35

 1  obligation to provide payment to Mr. Brooks. I
 2  never, nor did my firm, ever retain Mr. Brooks,
 3  to the best of my knowledge, never sent a
 4  payment to Mr. Brooks if there was any payment
 5  to Mr. Brooks by my firm. Well, I guess I would
 6  have to see it. I have no recollection of that
 7  at all.
 8      Q   Well, I'm not aware of it either, so
 9  I am not going to show you anything.
10      A   No. I -- neither I nor Ambrose Law
11  Group had any obligations or took on any
12  obligations to deal with Mr. Brooks' payments.
13      Q   Okay. And it's correct that you
14  didn't undertake any obligations to supervise or
15  work with Mr. Brooks on his activities on behalf
16  of Vivato Networks Holdings or Catcher Holdings,
17  correct?
18      A   Never.
19      Q   And I think you said at some point
20  when you were aware Mr. Brooks was withdrawing
21  that you would need some -- you would need
22  somebody to carry on, correct?
23      A   My recollection is that -- and I
24  believe I used the word "placeholder" earlier,
25  that I knew Mr. Brooks was withdrawing or wanted

36

 1  to withdraw for whatever reason and that because
 2  he was withdrawing somebody needed to receive
 3  the communications. I am not a patent attorney
 4  and -- but did agree that I would be, again, a
 5  placeholder to receive communications while they
 6  essentially worked on finding replacement patent
 7  counsel.
 8      Q   Did you do anything to find
 9  replacement patent counsel?
10      A   I did not.
11      Q   Was it your understanding that if
12  replacement patent counsel was to be obtained,
13  it would be handled by either Vivato Networks
14  Holdings, LLC or Catcher Holdings?
15      A   Correct.
16          MR. WANG: Objection. Privilege.
17      Q   And as far as you understood, that
18  would be the responsibility of Mr. Haycox or
19  someone that he delegated that responsibility
20  to?
21      A   Correct.
22          MR. HASLAM: Can we have Tab 47, and
23  can you give -- we'll mark this as the next
24  exhibit in order. I think that's Exhibit 3.
25

RESTRICTED - ATTORNEYS' EYES ONLY

XR-EDTX1-00052037
XR-EDTX1-00052028

---

**Page 45**

1 were these -- I shouldn't say "these." The only
2 Notice of Abandonment that I had received was
3 the one that I had referenced from him, but I
4 just can't recall the specifics of how it ended
5 other than with the possibility of, perhaps, him
6 taking over the prosecution.
7      MR. HASLAM: We can take that exhibit
8 down.
9   Q   In connection with getting notice
10 that Mr. Brooks was withdrawing from prosecuting
11 patents on behalf of Vivato Networks Holdings or
12 Catcher Holdings, did you ever have, in 2008,
13 any communications about that subject with
14 anyone from an Aequitas entity?
15   A   I don't recall any specific
16 discussions with any -- anyone from Aequitas in
17 preparation of the documents pertaining to the
18 loan. I do recall that some of the applications
19 were pending, some of the applications were
20 abandoned. It's possible the topic came up, but
21 I don't recall any specific discussions about
22 that.
23   Q   You said relating to the documents
24 relating to the loan. What loan are you
25 referring to?

**Page 46**

1   A   The Aequitas loan in December of
2 2007, the $1 million loan.
3   Q   And was -- that was the loan to
4 Catcher Holdings?
5   A   I thought it was to Vivato -- well,
6 yes, because they merged, so I guess to Catcher
7 Holdings or Vivato Networks, Inc. Again, I'm a
8 little bit blurry on exactly the time -- the
9 timing of that, but that is the --
10   Q   Okay.
11   A   -- the only -- there was only one
12 Aequitas loan that I'm aware of.
13   Q   Okay. And did -- with respect to
14 that loan, did Aequitas maintain, as far as you
15 knew, any control over disbursements that were
16 made out of the loan funds?
17      MR. WANG: Objection. Speculation.
18   A   I don't recall having any involvement
19 at all with respect to the disbursement of the
20 funds, so I'm not sure how they were disbursed,
21 when they were disbursed, and to whom they were
22 disbursed.
23      MR. HASLAM: Okay. We've been going
24 a little bit over an hour. Why don't we take a
25 brief break, ten minutes. Is that okay with

**Page 47**

1 you, Mr. Ambrose?
2      THE WITNESS: Certainly. Thank you.
3      MR. HASLAM: Okay. Off the record.
4      THE VIDEOGRAPHER: Off record, 1:17.
5      (A recess was taken.)
6      THE VIDEOGRAPHER: On record, 1:26.
7      MR. HASLAM: Before we go on --
8      MR. WANG: Mr. Haslam -- oh, sorry.
9 I apologize to interrupt. I want to note a few
10 things for the record. So, one, Plaintiff XR,
11 we reiterate our request for communications
12 between Mr. Ambrose and Aruba or the Covington
13 firm. I think that's been discussed in e-mails.
14      Also, Mr. Ambrose testified that he
15 is being compensated, so, obviously,
16 communications related to that, including any
17 agreements, we ask that those be produced
18 immediately.
19      And then, we would also note that
20 we've objected on the record regarding
21 privileged information, and so we'll maintain
22 that objection, and we'll reserve our rights to
23 that on the record. Now, waiving our objection,
24 we reserve all rights.
25      MR. HASLAM: This is not the time to

**Page 48**

1 take time -- Ms. Ambrose's time of responding to
2 all of that. A meet-and-confer has taken place.
3 We have your requests, we've got your
4 objections, so let's move on.
5   Q   Mr. Ambrose, you did mention that you
6 had received a letter from Mr. Brooks in early
7 November 2008?
8   A   Correct.
9   Q   Could I ask you to send me a copy of
10 that, and I will make sure that it gets
11 circulated to all counsel in this case?
12   A   Certainly. Do you want me to do that
13 now, or --
14   Q   No, you can -- is it just the letter
15 that says -- actually, if you have the letter,
16 can you just read it?
17   A   Certainly. It is a letter dated
18 November 6, 2008 to Vivato Networks Holdings,
19 LLC in care of me at my Bend office re: Notice
20 of Abandonment for Application Serial Number
21 10/700342.
22      "Dear Mr. Ambrose, we have mistakenly
23 received a Notice of Abandonment for the
24 above-referenced file. As you are aware, we no
25 longer represent Vivato Networks Holdings, LLC

RESTRICTED - ATTORNEYS' EYES ONLY

XR-EDTX1-00052040
XR-EDTX1-00052028

```
                                              49
 1  in this matter.  As a courtesy, attached is a
 2  copy of our granted petition to withdraw from
 3  representation in this matter in addition to the
 4  Notice of Abandonment.  Brooks, Cameron and
 5  Huebsch" -- I apologize -- "PLLC appreciates all
 6  of our work together.  We wish you continued
 7  success in your business endeavors."  Sent from
 8  Edward J. Brooks, managing partner at the firm.
 9  Enclosures:  Cc: via e-mail Gary Haycox and
10  Chris Ambrose.
11          And then attached to that is the
12  Notice of Abandonment for Application -- the
13  same application number, 10/700342, along with
14  the interview summary, which may or may not be
15  the same one you referenced earlier, and the
16  Decision on Petition to Withdraw from Record
17  regarding that same application number.
18      Q   Thank you.
19          Have you ever been contacted by an
20  attorney by the name of Carl Schwedler?
21      A   Does not ring a bell.
22      Q   He was on attorney at Bullivant,
23  B-U-L-L-I-V-A-N-T, Houser, Bailey, P.C., a
24  California law firm.
25      A   I'm familiar with the firm, but I
```

```
                                              50
 1  don't recall having any communications with that
 2  attorney.
 3      Q   Do you recall having any
 4  communications with a Daniel P. Burke, who is a
 5  lawyer in Oyster Bay, New York.  It is a lawyer
 6  for XR communications.
 7      A   No.
 8      Q   Have you had any after -- let me put
 9  a time frame on this.  After Mr. Brooks withdrew
10  from prosecuting patents in 2008, did you
11  ever -- did you ever hear from Mr. Schwedler?
12      A   I don't have any recollection of that
13  at all.
14      Q   Likewise, did he -- did you have any
15  communication with Mr. Burke?
16      A   I don't have any recollection of that
17  at all.
18      Q   Did you have, in that time frame, any
19  time after the abandonment by Mr. Brooks of the
20  patent applications, any communications from
21  anyone from Aequitas concerning the abandoned
22  applications?
23          MR. WANG:  Objection.  Form.
24  Compound and speculation.  Mischaracterizes.
25          MR. HASLAM:  Mischaracterizes what?
```

```
                                              51
 1          MR. WANG:  There was, in the
 2  question, abandonment by an attorney.
 3          MR. HASLAM:  Okay.
 4  BY MR. HASLAM:
 5      Q   If you would like me to rephrase the
 6  question, Mr. Ambrose, I'm happy to.  Otherwise,
 7  if you have an answer, I would take it.
 8      A   Can you read back the question,
 9  please?
10      Q   Yeah, I'll state it again.
11          After the -- Mr. Brooks abandoned --
12  filed the Notice to Withdraw as Patent Counsel,
13  did you ever receive a call from anyone at
14  Aequitas asking you any questions about
15  Mr. Brooks' withdrawal or any abandoned
16  applications that resulted from Mr. Brooks'
17  withdrawal as prosecution counsel for Vivato
18  Networks Holdings or Vivato Catcher -- Catcher
19  Holdings?
20      A   Not that I recall, no.
21      Q   After Mr. Brooks withdrew prosecuting
22  patent applications on behalf of Vivato Networks
23  Holdings or Catcher Holdings and the patents
24  that he was working on went abandoned, did you
25  have any communications from anyone at
```

```
                                              52
 1  XR Communications asking you about the
 2  circumstances surrounding the abandonment of the
 3  patent applications or the withdrawal of
 4  Mr. Brooks?
 5      A   No.
 6      Q   And that would include any
 7  conversations from an Adrian Straplevi, any
 8  conversations with him?
 9      A   I don't recognize that name, so --
10      Q   Likewise, any -- sorry.  I didn't
11  mean to cut you off.
12      A   So no.
13      Q   Any conversations on the same topics
14  with a Mr. Ty Hansen?
15      A   I don't recall that name, so no.
16      Q   Any such conversations with Ron
17  Chaffee.
18      A   No.
19      Q   Any conversations with an Adrian
20  Zajac?
21      A   No.
22      Q   Is it correct, then, that after
23  Mr. Brooks withdrew in 2008 from prosecuting
24  patents on behalf of Vivato Networks Holdings or
25  Catcher Holdings and after those patent
```

RESTRICTED - ATTORNEYS' EYES ONLY

XR-EDTX1-00052041
XR-EDTX1-00052028