# EXHIBIT D



**Planet Depos**
We Make It Happen

# Transcript of Edward Joseph Brooks, III, Esquire

**Date:** July 6, 2022
**Case:** XR Communications, LLC -v- D-Link Systems, Inc., et al.

Planet Depos
**Phone:** 888.433.3767
**Email:** transcripts@planetdepos.com
www.planetdepos.com

WORLDWIDE COURT REPORTING & LITIGATION TECHNOLOGY

RESTRICTED - ATTORNEYS' EYES ONLY

XR-EDTX1-00052124
XR-EDTX1-00052124

## Page 1

```
               UNITED STATES DISTRICT COURT
               CENTRAL DISTRICT OF CALIFORNIA
- - - - - - - - - - - - - - - x
XR COMMUNICATIONS, LLC,        :
d/b/a VIVATO TECHNOLOGIES,     :
          Plaintiff,    :    Case No.
    v.                  : 8:17-CV-00596-DOC-JDE
D-LINK SYSTEMS, INC., et al.,  :
          Defendants.   :
- - - - - - - - - - - - - - - X

          Videotaped Deposition of
      EDWARD JOSEPH BROOKS, III, ESQUIRE
             Conducted Virtually
            Wednesday, July 6, 2022
                11:08 a.m. EDT




Job No.: 455083
Pages 1 - 57
Reported by:  Debra A. Whitehead
```

## Page 2

Videotaped Deposition of EDWARD JOSEPH BROOKS, III, ESQUIRE, conducted virtually.

Pursuant to notice, before Debra Ann Whitehead, E-Notary Public in and for the State of Maryland.

## Page 3

APPEARANCES

ON BEHALF OF PLAINTIFF:
  REZA MIRZAIE, ESQUIRE
  RUSS AUGUST & KABAT
  12424 Wilshire Boulevard
  12th Floor
  Los Angeles, California 90025
  (310) 826-7474

ON BEHALF OF DEFENDANT ARUBA NETWORKS, LLC:
  ROBERT T. HASLAM, ESQUIRE
  COVINGTON & BURLING LLP
  3000 El Camino Real
  5 Palo Alto Square
  10th Floor
  Palo Alto, California 94306-2112
  (650) 632-4700
       - and -
  KEE YOUNG LEE, ESQUIRE
  COVINGTON & BURLING LLP
  One CityCenter
  850 10th Street, NW
  Washington, DC 20001-4956
  (202) 662-6291

## Page 4

APPEARANCES   CONTINUED

ON BEHALF OF DEFENDANTS BELKIN INTERNATIONAL, INC., and NETGEAR, INC.:
  SAJID SALEEM, ESQUIRE
  DUANE MORRIS LLP
  1075 Peachtree Street NE
  Suite 1700
  Atlanta, Georgia 30309-3929
  (404) 253-6900

ON BEHALF OF THE WITNESS:
  KEVIN D. CONNEELY, ESQUIRE
  STINSON LLP
  50 South Street
  Suite 2600
  Minneapolis, Minnesota 55402
  (612) 335-1829

ALSO PRESENT:
  MALCOLM COOKE, A/V Technician
  JOEL CORIAT, Video Specialist

RESTRICTED - ATTORNEYS' EYES ONLY

XR-EDTX1-00052125  
XR-EDTX1-00052124

```
                    5
            C O N T E N T S
EXAMINATION OF EDWARD JOSEPH BROOKS, III, ESQ.   PAGE
  By Mr. Haslam                                    8
  By Mr. Mirzaie                                  46
  By Mr. Haslam                                   54


              E X H I B I T S
           (Attached to the Transcript)
BROOKS DEPOSITION EXHIBIT                        PAGE
  Exhibit 1   First Amendment to Asset            10
              Purchase Agreement,
              Bates XR-00007768 - 00007807
  Exhibit 2   Patent Conveyance from Wayout       12
              Wireless, LLC, to Vivato Networks,
              LLC, Bates XR-00007808 - 00007811
  Exhibit 3   Patent Assignment,                  15
              Bates XR-00007829 - 00007833
  Exhibit 4   10/16/06 Letter from Mr. Brooks     17
              to Commissioner for Patents,
              Bates ARUBA_0032504 - 0032506
  Exhibit 5   Tabs3 Client Ledger Report,         19
              Brooks, Cameron & Huebsch, PLLC,
              From 1/1/06 Through 12/31/08


                    6
         E X H I B I T S   C O N T I N U E D
BROOKS DEPOSITION EXHIBIT                        PAGE
  Exhibit 6   2/14/08 Amendment and Response,     27
              Bates ARUBA_0032636 - 0032660
  Exhibit 7   4/25/08 Request for Withdrawal as   28
              Attorney or Agent and Change of
              Correspondence Address, Bates
              ARUBA_0032681 - 0032682
  Exhibit 8   Notice Regarding Change of Power    31
              of Attorney, Bates
              ARUBA_0032683 - 0032687
  Exhibit 9   4/25/08 Request for Withdrawal as   38
              Attorney or Agent and Change of
              Correspondence Address, Bates
              ARUBA_0034862 - 0034863
  Exhibit 10  Notice Regarding Change of Power    39
              of Attorney, Bates
              ARUBA_0034864 - 0034866
  Exhibit 11  10/31/08 Office Communication,      40
              Bates ARUBA_0034875 - 0034877
  Exhibit 12  4/30/08 Request for Withdrawal as   42
              Attorney or Agent and Change of
              Correspondence Address, Bates
              ARUBA_0033263 - 0033264
```

```
                    7
            P R O C E E D I N G S
       VIDEO SPECIALIST:  Good morning.
       Here begins Media Number 1 in the video
recorded deposition of Edward Brooks in the matter
of XR Communications, LLC, versus D-Link Systems,
Inc., et al.  This is Case Number
8:17-CV-00596-AG, filed in the U.S. District Court
for the Central District of California, Los
Angeles Division.
       Today's date is July 6, 2022.  The time
on the video monitor is now 11:08 a.m. eastern
time.  The videographer today is Joel Coriat, on
behalf of Planet Depos.  This deposition will be
taken via videoconference.
       Would counsel please identify yourself,
for the record.
       MR. HASLAM:  My name is Bob Haslam.  I'm
with Covington & Burling, and I represent Aruba
Networks.  And with me is Kee Young Lee.
       MR. MIRZAIE:  I am Reza Mirzaie from
Russ, August & Kabat, representing Plaintiff XR,
or also known as Vivato.
       MR. SALEEM:  Sajid Saleem from Duane
Morris, representing Defendants Belkin and
NetGear.

                    8
       VIDEO SPECIALIST:  All right.  The court
reporter today is Debbie Whitehead, on behalf of
Planet Depos.  She will now swear in the deponent.
       EDWARD JOSEPH BROOKS, III, ESQUIRE,
 having been duly sworn, testified as follows:
       VIDEO SPECIALIST:  Thank you.
       You may proceed, Counsel.
  EXAMINATION BY COUNSEL FOR DEFENDANT
  ARUBA NETWORKS, LLC
BY MR. HASLAM:
  Q   Mr. Brooks, I understand you're a lawyer.
      Are you still practicing today?
  A   Yes.
  Q   Can you, for the record, now that you're
under oath, can you state your name and where you
reside?
  A   Edward Joseph Brooks, III, resident in
Minneapolis, Minnesota.
  Q   And among the areas of your practice, do
you practice patent law?
  A   Yes.
  Q   Are you registered to practice before the
Patent and Trademark Office?
  A   Yes.
  Q   How long have you been so registered?
```

RESTRICTED - ATTORNEYS' EYES ONLY

XR-EDTX1-00052126
XR-EDTX1-00052124

**Page 25**

1  Q   If we scroll up to this document
2  slightly. The last entry, for example, on the Due
3  Diligence entry, 760.0277631, has a date of
4  12/22/2008.
5      As of the end of 2008, for all of the
6  matters that you had worked on for Vivato, were
7  you still owed money?
8  A   Yes.
9  Q   During -- strike that.
10     During the time that you were working for
11 Vivato entities, and in particular working with
12 Mr. Haycox, were you paid regularly?
13 A   No.
14 Q   If you recall, approximately when during
15 your working relationship with Mr. Haycox were
16 you -- did you begin not to be paid regularly on
17 the invoices that you submitted for payment?
18 A   I believe a year into working with
19 Mr. Haycox.
20 Q   Would that be somewhere around the last
21 quarter, approximately, of 2007?
22 A   I believe so.
23 Q   And was -- was payment a topic that you
24 discussed with Mr. Haycox when the bills were not
25 being paid timely?

**Page 26**

1      MR. CONNEELY: You can answer that yes or
2  no.
3  A   Yes.
4  Q   Did you request payment?
5  A   Yes.
6  Q   Were those requests honored in the sense
7  that Mr. Haycox brought current amounts that he
8  owed in the last quarter of 2007?
9  A   I do not recall. You're asking about the
10 last quarter of 2007; I do not recall.
11 Q   If I asked you the same question for the
12 last quarter of 2007 into the beginning, the first
13 three months of 2008, were you -- were the -- were
14 your accounts with Mr. Haycox and his companies
15 ever brought current?
16 A   No.
17 Q   Did you ask that they be brought current?
18 A   Yes.
19 Q   Were you told that they would be brought
20 current?
21 A   Yes.
22 Q   And I take it that while -- despite being
23 told they would be brought current, they were
24 never brought current?
25 A   Correct.

**Page 27**

1      MR. HASLAM: Can I have marked as the
2  next exhibit Tab 9.
3      (Brooks Deposition Exhibit 6 marked for
4  identification and is attached to the transcript.)
5      MR. HASLAM: I believe that's on the
6  screen. I would like to mark that as Exhibit 6.
7  And can you give control to the witness.
8      A/V TECHNICIAN: Yes. He should have
9  control.
10 Q   Can you take whatever time you need to
11 review this document, and can you tell me what it
12 is.
13 A   This appears to be an amendment and
14 response filed with the U.S. patent office to an
15 office action dated December 21st, 2007.
16 Q   And if we go back to the top of this
17 document. I'm sorry, and we can scroll down just
18 a little bit.
19     Again, we see on the right-hand side,
20 just under the sentence that says, You should
21 receive 25 pages, including cover sheet, your
22 docket number again.
23     Is that correct?
24 A   Yes.
25 Q   And this -- can you just scroll down.

**Page 28**

1      And is that your signature?
2  A   Yes.
3  Q   And this was filed in February of 2008.
4      If you recall, do you recall at this time
5  whether your accounts had been brought current
6  with Mr. Haycox's companies?
7  A   The accounts were never brought current.
8      MR. HASLAM: Can we pull up Tab 10. And
9  can we mark this as Exhibit 7. And can you give
10 control to the witness.
11     (Brooks Deposition Exhibit 7 marked for
12 identification and is attached to the transcript.)
13 Q   And I'll ask you if you can tell me what
14 this is?
15 A   It's listed as a withdrawal as attorney
16 and change of correspondence.
17 Q   And did you by this filing seek to
18 withdraw from representing Mr. Haycox's companies
19 in front of the Patent and Trademark Office?
20 A   Yes.
21 Q   If you recall, was there a pending office
22 action in connection with this particular filing?
23 A   I do not recall.
24 Q   ==Why did you seek to withdraw as counsel==
25 ==for Mr. Haycox's companies when you filed this==

RESTRICTED - ATTORNEYS' EYES ONLY

XR-EDTX1-00052131
XR-EDTX1-00052124

**Page 29**

1  request to withdraw?
2  A  **We withdrew for nonpayment of services.**
3  Q  And if you recall, approximately how long
4  had Mr. Haycox and his companies been delinquent
5  in bringing your accounts with Mr. Haycox's
6  companies current?
7  A  **More than a year.**
8  Q  Before filing Exhibit 7, did you notify
9  any -- notify Mr. Haycox?
10  A  I do not recall.
11  Q  If you have such a practice, would your
12  practice have been to inform the client that you
13  were going to withdraw from representing them at
14  the Patent and Trademark Office?
15  A  Yes.
16  Q  And would your practice have been to, if
17  they wanted to continue the prosecution, to retain
18  other counsel to continue with those efforts?
19  A  Yes.
20  Q  Do you recall what Mr. Haycox's response
21  was when you informed him that you were going to
22  file a request to withdraw from representing his
23  companies before the Patent and Trademark Office?
24      MR. CONNEELY:  That calls for a yes-or-no
25  answer, Mr. Brooks.

**Page 30**

1  A  No.
2  Q  If you'll scroll down on this document,
3  Exhibit 7, I believe there is a place where you
4  indicate who could be notified.  And I want to
5  stop there.
6      You -- you notify -- or you indicated
7  that the person who could be notified in
8  connection with this was Christopher Ambrosa --
9  and I'm not sure if that's a misspelling --
10  Ambrose, of Ambrose Law Group.
11      Do you recall why you listed that person
12  as the person to whom future correspondence should
13  be directed?
14  A  **I imagine that I was directed to do so by
15  Gary Haycox.**
16  Q  From the time you began working with
17  Mr. Haycox up until the time you filed Exhibit 7,
18  had you had any face-to-face or telephone or
19  e-mail or any other kind of communications with
20  Mr. Ambrose?
21  A  **That's several different questions.  I
22  can answer them separately.**
23  Q  Let me break them up.
24  A  I do --
25  Q  Had you met Mr. Ambrose personally, in

**Page 31**

1  person?
2  A  No.
3  Q  Have you ever talked to him on the
4  telephone?
5  A  I do not recall.
6  Q  Had you ever e-mailed him?
7  A  I do not recall.
8  Q  Did you ever send him a letter?
9  A  I do not recall.
10  Q  Had you ever received a letter or an
11  e-mail or a text from Mr. Ambrose?
12  A  I do not recall.
13  Q  If I use "communication" in the broadest
14  sense, talking, texting, e-mailing, meeting, do
15  you recall ever communicating with Mr. Ambrose?
16  A  I do not recall.
17      MR. HASLAM:  Can we pull up Tab 11.  Can
18  we mark this as Exhibit 8.  And can we give the
19  witness control of this document.
20      (Brooks Deposition Exhibit 8 marked for
21  identification and is attached to the transcript.)
22  Q  While we're on that first page there,
23  Brooks, Cameron & Huebsch, PLLC, was that the firm
24  you were practicing with at the time this document
25  was received?

**Page 32**

1  A  Yes.
2  Q  This document indicates that your
3  withdrawal as attorney had been accepted, and was
4  mailed on June 9, 2008.
5      Do you recall receiving this?
6  A  **I do not recall receiving it.  This
7  document speaks for itself.  It's dated June 9 of
8  2008, but I don't recall work done in 2008.**
9  Q  Okay.  But do you recall that at some
10  point in time your request for withdraw was
11  granted?
12      MR. CONNEELY:  Can you say that again,
13  Counsel?  You kind of broke up.
14  Q  Do you recall that at some point in time
15  after you had filed Exhibit 7, the request to
16  withdraw, that the patent office granted your
17  request to withdraw as counsel?
18  A  Yes.
19  Q  After you -- sorry.  Is somebody saying
20  something?  No.
21      After your request to withdraw was
22  granted, did you have any further communications
23  with Mr. Haycox concerning your patent prosecution
24  activities on behalf of his companies?
25  A  I do not recall.

RESTRICTED - ATTORNEYS' EYES ONLY

XR-EDTX1-00052132
XR-EDTX1-00052124

```
                                          33
 1    Q   After your request to withdraw was
 2  granted, do you recall having any communications
 3  with Mr. Ambrose?
 4    A   I do not recall.
 5    Q   After your request to withdraw was
 6  granted, did you have any communications with
 7  anyone from Equitas Capital Management?
 8    A   I don't recognize that name. I don't --
 9  I don't recall.
10    Q   Did you have any communications after you
11  withdrew with anyone from Equitas Equipment
12  Finance?
13    A   I don't recognize that name, no.
14    Q   After you withdrew as counsel for
15  Mr. Haycox's company in connection with patent
16  prosecution, did you have any communications with
17  a Mr. Carl Schwedler, S-C-H-W-E-D-L-E-R?
18    A   I don't recall.
19    Q   If it would help potentially jog your
20  memory, Mr. Schwedler was a patent attorney with
21  Bullivant Houser Bailey, PC.
22        With that piece of additional
23  information, do you recall ever having had any
24  communications with a Mr. Carl Schwedler after you
25  withdrew?
```

```
                                          34
 1    A   I do not recall.
 2    Q   After you withdrew -- after your
 3  withdrawal was granted, did you have any
 4  communications with a Daniel P. Burke, B-U-R-K-E?
 5    A   I do not recall any conversations or
 6  communications with that name.
 7    Q   And just to the extent it might help,
 8  Mr. Burke was a patent attorney based in Oyster
 9  Bay, New York. With that additional information,
10  do you recall ever having any communications with
11  Mr. Burke?
12    A   No.
13    Q   Do you ever recall having had any
14  communications after you withdrew as counsel for
15  Mr. Haycox's company with anyone who indicated
16  that they were affiliated with or worked for XR
17  Communications?
18    A   I do not recall.
19    Q   Do you ever recall, after you withdrew as
20  counsel for Mr. Haycox's company in connection
21  with the patent prosecution, having any
22  communications with a Mr. Adrian Chraplyvy?
23    A   I could not hear that question.
24    Q   After you -- after you withdrew as
25  counsel for Mr. Haycox's companies, do you recall
```

```
                                          35
 1  having any communications with a Mr. Adrian
 2  Chraplyvy?
 3    A   No.
 4    Q   After you withdrew as counsel for
 5  Mr. Haycox's company in connection with patent
 6  prosecution, did you have any communications with
 7  a Mr. Kai, K-A-I, Hansen?
 8    A   I do not recall. I don't recognize that
 9  name.
10    Q   After you withdrew as counsel for patent
11  prosecution matters for Mr. Haycox's company, did
12  you have any communications with Mr. Chaffee, a
13  Ron Chaffee?
14    A   I don't recognize that name either.
15    Q   And finally, after you withdrew as
16  counsel for Mr. Haycox's companies with respect to
17  patent prosecution, did you have any
18  communications with Mr. Tom Sidley?
19    A   I don't recognize that name either.
20    Q   At some point after you withdrew as
21  counsel for Mr. Haycox's company in connection
22  with patent prosecution matters, did you become
23  aware that any of the applications that you had
24  been working on had gone abandoned?
25    A   I do not recall.
```

```
                                          36
 1    Q   Do you recall after you withdrew as
 2  counsel ever being contacted by anyone asking you
 3  what, if anything, you knew about -- about why
 4  patent applications on which you had been
 5  prosecuting prior to your withdrawal had gone
 6  abandoned?
 7    A   I'm sorry. Ask the question again,
 8  please?
 9    Q   Okay. I want to focus on the time after
10  you had withdrawn as counsel. And I'm asking if
11  anybody ever contacted you after that point and
12  asked you why any patent applications that you may
13  have worked on relating to Mr. Haycox's companies
14  had gone abandoned.
15    A   I do not recall anyone contacting me to
16  ask me that question.
17    Q   If you had been asked that question,
18  would your answer have been that you withdrew
19  because you had not been paid?
20        MR. CONNEELY: Object to the form. Lack
21  of foundation. Counsel, you said that question.
22  That wasn't the same question.
23        MR. HASLAM: Well, I -- I asked a
24  different question. I'm asking a different
25  question.
```

RESTRICTED - ATTORNEYS' EYES ONLY

XR-EDTX1-00052133
XR-EDTX1-00052124

**37**

1  Q   If after you withdrew someone contacted
2  you and asked you why did you withdraw from
3  prosecuting patent applications for Mr. Haycox's
4  companies, would you have told them it was because
5  you were not being paid?
6  A   I don't believe so.  I would have said
7  it's not any of their business, that would be
8  between the previous client and counsel as to why
9  we withdrew.  I just think it would have been
10 evident we withdrew.
11 Q   And just to confirm, then, nobody asked
12 you that question that I just asked you after you
13 withdrew as counsel for Mr. Haycox's companies.
14     Correct?
15 A   I do not recall.
16 Q   And again, when you say that, you don't
17 recall one way or the other, or are you saying you
18 don't recall having had such a question posed to
19 you?
20 A   I do not recall such a question posed to
21 me.
22 Q   Now, we saw in your billing records and
23 in the filings that -- some of the documents that
24 we've seen, that you were working for Vivato --
25 you were billing Vivato Networks, LLC.

**38**

1      At any time do you recall working on
2  behalf of a company called Vivato Networks
3  Holdings, Inc.?
4  A   I do not recall.
5  Q   To the best of your recollection, the
6  work that you were doing was for Mr. Haycox and
7  for a Vivato entity that he controlled?
8  A   Yes.
9      MR. HASLAM:  Could we have Tab 14 brought
10 up.  And can we give the witness control.  And
11 we'll mark this as Exhibit 9.
12     (Brooks Deposition Exhibit 9 marked for
13 identification and is attached to the transcript.)
14 Q   Again, while we're on the first page
15 there -- if you could scroll up just -- I'm sorry,
16 I apologize.  Could you just go up briefly.
17 Again, that -- that docket number that we see here
18 is a docket number that would relate to your
19 billing system?
20 A   Yes.
21 Q   And this is for an application Serial
22 Number 10/700,342?
23 A   That appears to be correct.
24 Q   And if you want to scroll through this,
25 is this a request to withdraw as counsel in

**39**

1  connection with this particular file?
2  A   Yes.
3  Q   And I have the document, but do you -- do
4  you recall that this request was likewise granted
5  by the patent office?
6  A   I do not recall.
7  Q   Okay.
8  A   I believe at some point all withdrawal
9  requests would have been granted.
10 Q   Okay.  And again, the page you're on now
11 in Exhibit 9 indicates that the firm, the person
12 to direct future correspondence to, was
13 Christopher Ambrose at Ambrose Law Group.
14     Again, that is a name you would have been
15 given by Mr. Haycox?
16 A   I believe so.
17     MR. HASLAM:  Can we have Tab 15.  And can
18 we mark that as Exhibit 10, and give the witness
19 control.
20     (Brooks Deposition Exhibit 10 marked for
21 identification and is attached to the transcript.)
22 Q   Is Exhibit 10 a correspondence from the
23 patent office granting your request to withdraw as
24 attorney or agent of record?
25 A   It appears to be so.

**40**

1      MR. HASLAM:  Can we have Tab 16.  And can
2  we mark this as Exhibit 11.
3      (Brooks Deposition Exhibit 11 marked for
4  identification and is attached to the transcript.)
5  Q   This appears to be a communication from
6  the patent office to your firm that was mailed
7  in -- or is dated October 31st, 2008.
8      Do you recall this document?
9  A   I do not.
10 Q   This purports to indicate that this is an
11 interview summary with yourself, Edward J. Brooks,
12 III.  Correct?  That's your name?
13 A   That is my name.
14 Q   And Christopher R. Ambrose.  And it
15 indicates that it was a telephonic interview.  Can
16 you scroll down to the examiner's notes about what
17 he recalls having been talked about.  And I'll
18 read it into the record.
19     The Examiner says, the summary of the
20 substance of the interview is, quote, On 9/26/08,
21 I telephoned Christopher R. Ambrose.  Mr.
22 Christopher R. Ambrose said he rehired Mr. Edward
23 J. Brook to work on the application.  On 9/30/08,
24 I telephoned Mr. Edward J. Brook.  Mr. Edward J.
25 Brook said he has not received message from

RESTRICTED - ATTORNEYS' EYES ONLY

XR-EDTX1-00052134
XR-EDTX1-00052124