# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| XR COMMUNICATIONS, LLC, dba VIVATO TECHNOLOGIES,<br><br>Plaintiff,<br><br>v.<br><br>AT&T SERVICES INC.; AT&T MOBILITY LLC; and AT&T CORP.,<br><br>Defendants. | Case No. 2:23-cv-00202-JRG-RSP<br>**(Lead Case)**<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANTS/INTERVENORS' SUR-REPLY IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF NO INEQUITABLE CONDUCT**

## **TABLE OF CONTENTS**

**Page**

I. ABANDONMENT OF THE '329 APPLICATION WAS THE RESULT OF A DELIBERATE COURSE OF CONDUCT BY CATCHER AND AEQUITAS.................1

II. SCHWEDLER FALSELY REPRESENTED THAT THE DELAY WAS UNINTENTIONAL, AND INTENDED TO DECEIVE THE PATENT OFFICE.............3

III. BURKE FALSELY REPRESENTED THAT THE DELAY WAS UNINTENTIONAL, AND INTENDED TO DECEIVE THE PATENT OFFICE.............5

# TABLE OF AUTHORITIES

**Cases**

*3D Medical Imaging Systems, LLC v. Visage Imaging, Inc.*,
   228 F.Supp.3d 1331 (2017) ................................................................................................5

*Freshub, Inc. v. Amazon.com, Inc.*, 93 F.4th 1244 (Fed. Cir. 2024)............................................3, 5

*In re Application of Cheol Kim*, 2009 WL 1212054 (Comm'r Pat. Apr. 1, 2009) .........................3

*Lumenyte Int'l Corp. v. Cable Lite Corp.*, 92 F.3d 1206 (Fed. Cir. 1996) ................................. 1-3

*Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011) ..............................2

**Non-Periodical Publications**

MPEP .............................................................................................................................................2

## TABLE OF EXHIBITS

| Exhibit Number | Description |
| --- | --- |
| A | Excerpts from the deposition transcript of Christopher Ambrose, taken July 7, 2022 |
| B | Letter from PTO to counsel regarding a decision on the Request to Withdraw as attorney or agent of record re: Application No. 10/700,329, XR-EDTX1-00052099 – 00052100 |
| C | October 31, 2008 Interview summary from the PTO regarding Application No. 10/700,342, XR-EDTX1-00052256 - 00052258 |
| D | Excerpts from the deposition transcript of Edward Brooks, taken July 6, 2022 |
| E | Excerpts from the deposition transcript of Gary Haycox, taken July 7, 2022 |
| F | Excerpts from the deposition transcript of Carl Schwedler, taken July 8, 2022 |
| G | Power of Attorney regarding Application No. 11/420,880, XR-EDTX1-00052725 – 52727 |
| H | Excerpts from the deposition transcript of Daniel Burke, taken July 26, 2022 |
| I | December 22, 2009 letter from PTO to counsel granting the petition regarding abandonment and accepting Petitioner's restriction requirement as being delayed, XR-EDTX-00090558 - 00090559 |
| J | Excerpts from the deposition transcript of Thomas Sidley, taken March 10, 2023 |

Defendants'/Intervenor's opposition brief showed in detail why genuine disputes of fact require denial of summary judgment on their inequitable conduct defense, and as such they do not repeat those arguments here. Rather, this sur-reply responds narrowly to arguments made for the first time in Plaintiff's reply brief. ECF No. 202.

## I.  ABANDONMENT OF THE '329 APPLICATION WAS THE RESULT OF A DELIBERATE COURSE OF CONDUCT BY CATCHER AND AEQUITAS

Plaintiff's position boils down to this: abandonment of the '329 Application cannot have been intentional because Defendants/Intervenor cannot point to any "express instruction by either prosecutor to Haycox or Sidley that 'the application would go abandoned.'" ECF No. 202, at 3. But that position is factually wrong. Edward Brooks, who prosecuted the '329 Application, provided just such an "express instruction" to Gary Haycox in his April 28, 2008 letter. ECF No. 172-35. That letter informed Haycox (and Vivato's corporate counsel Christopher Ambrose) that he was withdrawing from representing Vivato before the U.S. Patent Office, that the '329 Application was facing a final rejection, and that unless a response was filed it "will become Abandoned." ECF No. 172-35, at 4. Thus, there is no dispute that Haycox *did* receive the "express instruction" that Plaintiff claims distinguishes this case from *Lumenyte Int'l Corp. v. Cable Lite Corp.*, 92 F.3d 1206 (Fed. Cir. 1996).

As Haycox testified, after learning that Brooks was not being paid and would withdraw, he "went back to Aequitas and told them the importance of keeping this patent portfolio." ECF No. 182-5, Haycox Dep., at 57:6-58:18. That was in line with Haycox's repeated notifications to Aequitas to that effect. *Id.* at 43:4-45:7, 51:2-4, 68:14-70:22. Plaintiff argues that it is "unclear whether Sidley/Aequitas's 'intent' is even relevant" because Vivato Networks Holdings was the assignee at the time of abandonment and Catcher held an exclusive license. ECF No. 202, at 3. But Plaintiff does not dispute that ***Aequitas***, with Sidley as the primary actor on this issue, had the right

under the Security Agreement between it and Vivato to "take any action that Lender deems appropriate, including but not limited to . . . paying all costs for insuring, maintaining and preserving the Collateral," including the '329 Application. ECF No. 172-3, at 8. Nor does Plaintiff dispute that Aequitas had the right to foreclose on the '329 Application for non-payment, and that it eventually did so. The only plausible reason that Aequitas failed to do so is also the single most reasonable inference from the documentary record: Aequitas was looking to avoid throwing good money after bad (the bad being the unpaid loan to Catcher) unless and until it could find a buyer for the patent portfolio. That is a classic "deliberate course of conduct" that resulted in exactly what Brooks told the company would happen: abandonment of the '329 Application. And as the MPEP explains, Aequitas's desire to "defer patent fees and prosecution expenses" until it could determine whether the application could be sold is not a basis for claiming the abandonment was unintentional.[1] *See Lumenyte*, 92 F.3d at *2-3 (desire "not to spend any additional money prosecuting" the application until a competitor introduced a competing product supported finding of intentional abandonment"). That is intentional abandonment as a matter of law, but at the very least creates a genuine issue of material fact as to whether the '329 Application was abandoned intentionally.[2]

---

[1] It is worth considering the practical implications of Plaintiff's position. In its view, a patent applicant can file an application, let that application lay idle and go abandoned, and then months or years later—once someone has offered to pay money for the application—file a petition to revive it so it can be sold. In Plaintiff's view, unless this course of conduct was accompanied by an "express instruction" to abandon the application, it could never be considered a "deliberate course of conduct." That comports with neither the law nor common sense.

[2] It goes without saying that, contrary to Defendant's rhetoric, an inference about whether Aequitas and Catcher acted deliberately that is strongly and exclusively the one supported by the documentary record is sufficient to meet Defendants'/Intervenor's burden, and is not "speculation." *See Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011) ("[A] district court may infer intent from indirect and circumstantial evidence."); *see also*

Plaintiff's attempt to distinguish *In re Application of Cheol Kim*, 2009 WL 1212054 (Comm'r Pat. Apr. 1, 2009) is equally unpersuasive. Plaintiff points out that the applicant there admitted that he "could not find any way to pay the money" to prosecute the application, and thus failed to respond to an office action, which the PTO deemed a deliberate abandonment. *Id.* at *1. But that is no different from the situation here, where Plaintiff appears to rely on Catcher's financial inability to pay Brooks or to hire another attorney (as the exclusive licensee and the one with the authority to prosecute the patents) as supporting its position that abandonment was unintentional. But *In re Cheol Kim* supports the **opposite** proposition. Plaintiff's reply brief is remarkable for failing to offer **any** reason for why the '329 Application was abandoned other than the obvious one that Catcher could not, and Aequitas did not want to, spend the money to fund prosecution unless it could find a buyer for the portfolio. As the Federal Circuit noted in *Freshub, Inc. v. Amazon.com, Inc.*, 93 F.4th 1244 (Fed. Cir. 2024), on which Plaintiff relies, the "absence of such an account" can "lead a factfinder to find false, or even knowingly false, the assertion that the abandonment was unintentional." *Id.* at 1253. That requires denial of summary judgment here.[3]

## II. SCHWEDLER FALSELY REPRESENTED THAT THE DELAY WAS UNINTENTIONAL, AND INTENDED TO DECEIVE THE PATENT OFFICE

Schwedler was hired by Aequitas to prosecute the Vivato portfolio, and Schwedler filed the first two petitions to revive the '329 Application. As Defendants/Intervenor explained in their

---

*Lumenyte*, 92 F.3d at *2 (court inferred from documentary record that abandonment was intentional notwithstanding witness testimony that "abandonment was inadvertent").

[3] Plaintiff once again reiterates its belief that *Freshub* supports granting summary judgment. But as the cited passage above shows, *Freshub* was not a summary judgment case, and the Federal Circuit was applying the deferential standard of review reserved for appeals from a bench trial. *See Freshub*, 93 F.4th at 1252 ("When reviewing an inequitable-conduct ruling, we 'review the underlying factual determinations of materiality and intent for clear error, and we review the ultimate decision as to inequitable conduct for an abuse of discretion.'").

opposition brief, Schwedler's review of the file history would have revealed precisely the sort of deliberate that *In re Cheol Kim* held foreclosed revival of the '329 Application. *See* ECF No. 172-11 ("have been unable to reach a mutually agreeable understanding of payment of services with attorneys of record"). Schwedler could not have truthfully represented that the entire delay in failing to respond to the Final Office Action that was then-pending was unintentional. Indeed, it is undisputed that Schwedler did review certain documents confirming intentionality; he was the one who recorded the Commercial Security Agreement giving Aequitas the right to protect the collateral with the PTO. *See* ECF No. 172-3, at 2 (signed by Carl J. Schwedler).

Plaintiff faults Defendants/Intervenor for not citing any testimony from Sidley (of Aequitas) bearing on the abandonment, but fails to mention that Sidley could not—or would not—remember anything about the revival applications, including whether or not he spoke to anyone about the abandonment of the '329 Application, including Mr. Schwedler. Exh. J,[4] Sidley Depo. 92:22-93:9. Sidley similarly remembered nothing about the petitions to revive, stating he had "no recollection of [the] transaction." *Id.* at 105:5-18. Sidley's testimony was therefore at best totally unhelpful, and at worst transparently untruthful.[5]

Of course, if it were in fact true that Schwedler did no investigation at all and avoided learning the circumstances of the abandonment, that would not suffice, since a prosecutor cannot truthfully represent that he is making a representation based on his reasonable inquiry without

---

[4] Defendants/Intervenor continue the exhibit lettering from the Opposition, ECF No. 182, which included exhibits A through I.

[5] Some of Sidley's denials of memory were truly unbelievable except as a purposeful strategy, such as his claim that, despite working at Aequitas for almost 15 years, he "d[id]n't remember any of it." Exh. J, Sidley Dep., at 107:8-14, 132:20-21). Sidley used the verbatim (and awkward) phrasing that he had "no recollection of this transaction" an astounding 27 times during his deposition.

actually having inquired. Plaintiff's only serious rebuttal to the on-point *3D Medical* decision is that it was "wrongly decided" in that it effectively lowers the bar for inequitable conduct to a negligence standard. ECF No. 202, at 8. But it does not. Negligence and intent are references to mental states, and as Defendants/Intervenor pointed out in their opposition, a material misrepresentation—that the prosecutor performed a reasonable inquiry when he knows he did not—is a separate requirement from ***intent to deceive.*** Strongly supporting Schwedler's intent to deceive is the fact that the Patent Office explicitly informed him that it was relying on his representation and that, to the extent he lacked first-hand knowledge of the abandonment (which he did), he had a duty to perform a reasonable inquiry. ECF No. 182, at 20. As *3D Medical* court, these communications "should have given him pause."[6] *3D Medical*, 228 F. Supp. 3d at 1339.

### III. BURKE FALSELY REPRESENTED THAT THE DELAY WAS UNINTENTIONAL, AND INTENDED TO DECEIVE THE PATENT OFFICE

Plaintiff's reply does not separately address Burke's intent. Most tellingly, Plaintiff does not respond at all to the clear and convincing evidence that Burke performed ***no*** investigation of his own, and instead chose to copy Schwedler's work—down to the typos in Schwedler's office action response. ECF No. 182, at 23 & n.6. Burke had no excuse for that failure, given that he represented Plaintiff both before the Patent Office and in acquiring the '329 Application. That evidence is strong support for Burke's intent to deceive.

---

[6] Again, *Freshub* is not to the contrary. There, the Federal Circuit—while recognizing that a factfinder could come out the other way—relied on the fact that nothing in the record required the conclusion that the "relevant Ikan decisionmaker" received the communications relating to the abandonment of the applications, as would be required to make the abandonment a deliberate course of conduct. *Freshub*, 93 F4th at 1253-54. But here, it is undisputed that the "relevant . . . decisionmaker" received and understood the communications about the implications of the failure to respond to the pending Final Office Action for the '329 Application. Haycox and Ambrose both received Brooks' April 2008 letter, and Haycox communicated the need to keep the portfolio alive to Aequitas. Schwedler could not have done an investigation without uncovering those facts. *See also* ECF No. 182, at 14-16 (Schwedler's lack of investigation).

Dated: July 2, 2025

Respectfully submitted,

*/s/ Matthew S. Yungwirth*
Melissa R. Smith (TBN 24001351)
**GILLAM & SMITH, LLP**
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450

Deron R. Dacus (TBN 00790553)
ddacus@dacusfirm.com
**THE DACUS FIRM, P.C.**
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
Telephone: 903.705.1117

Matthew S. Yungwirth
msyungwirth@duanemorris.com
Alice E. Snedeker
aesnedeker@duanemorris.com
John R. Gibson
jrgibson@duanemorris.com
**DUANE MORRIS LLP**
1075 Peachtree Street NE, Suite 1700
Atlanta, Georgia 30309
Telephone: 404.253.6900

Tyler Marandola
tmarandola@duanemorris.com
**DUANE MORRIS LLP**
30 S. 17th Street
Philadelphia, PA 19103
Telephone: (215) 979-1000

Kevin P. Anderson
kpanderson@duanemorris.com
Elissa Sanford
esanford@duanemorris.com
**DUANE MORRIS LLP**
901 New York Avenue NW, Suite 700 East
Washington, D.C. 20001-4795
Telephone: (202) 776-5231

*Counsel for Defendants / Intervenors*

6

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that counsel of record who are deemed to have consented to electronic services are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on July 2, 2025.

                                                */s/ Matthew S. Yungwirth*
                                                Matthew S. Yungwirth