# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| XR COMMUNICATIONS, LLC, dba VIVATO TECHNOLOGIES, *Plaintiff,* v. AT&T SERVICES INC.; AT&T MOBILITY LLC; and AT&T CORP., *Defendants,* NOKIA OF AMERICA CORPORATION and ERICSSON INC., *Intervenors,* | Case No. 2:23-cv-00202-JRG-RSP (Lead Case) **JURY TRIAL DEMANDED** |
| XR COMMUNICATIONS, LLC, dba VIVATO TECHNOLOGIES, *Plaintiff,* VERIZON COMMUNICATIONS, INC., CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, *Defendants,* NOKIA OF AMERICA CORPORATION and ERICSSON INC., *Intervenors,* | Case No. 2:23-cv-00203-JRG-RSP (Member Case) |

| | |
|---|---|
| XR COMMUNICATIONS, LLC, dba VIVATO TECHNOLOGIES,<br>        *Plaintiff,*<br><br>    v.<br><br>T-MOBILE USA, INC.,<br><br>        *Defendants,*<br><br>NOKIA OF AMERICA CORPORATION and ERICSSON INC.,<br>        *Intervenors,* | Case No. 2:23-cv-00204-JRG-RSP<br>(Member Case) |

**PLAINTIFF XR COMMUNICATION, LLC'S SURREPLY TO DEFENDANTS' MOTION TO STRIKE CERTAIN OPINIONS OF MR. STEPHEN DELL**

# **TABLE OF CONTENTS**

I. THIS COURT HAS RECENTLY REJECTED ESSENTIALLY THE SAME CHALLENGE TO ESSENTIALLY THE SAME MODEL THAT DEPENDS ON DR. BAZELON'S COST SAVINGS ANALYSIS ................................................................. 1

II. DEFENDANTS CONTINUE TO IGNORE DR. BAZELON'S OPINIONS, WHICH WERE MR. DELL'S BASIS FOR COST SAVINGS ...................................................... 2

III. MR. DELL'S APPORTIONMENT OF AVOIDED UPFRONT CAPITAL COSTS BASED ON A 10-YEAR INVESTMENT CYCLE EXCLUDES POST-EXPIRATION DAMAGES ....................................................................................................................... 4

IV. MR. DELL'S COST SAVINGS SPLIT IS BASED ON THE FACTS OF THE CASE ....... 5

## **TABLE OF AUTHORITES**

**Cases**

*Headwater Research LLC, v. Verizon Communications Inc., et al*,
 Case No. 2:23-cv-00352-JRG-RSP (June 23, 2025) ................................................................ 1

*Prism Techs v. Sprint Spectrum L.P.*,
 849 F.3d 1360 (Fed. Cir. 2017) ............................................................................................ 4, 5

Defendants, who are constantly adding capacity to their cellular networks, continue to fail to argue or make any showing that it would not have been feasible for them to add capacity in place of infringing the patents-in-suit. Instead, Defendants maintain, primarily citing to selected snippets of Mr. Dell's reports and his deposition, that an essential element of Vivato's damages model is that Defendants would actually obtain precise parcels of spectrum, and only spectrum, on the date of first infringement. Defendants' concocted requirement of a feasible "spectrum-only" NIA has no basis. Defendants do not dispute that Mr. Dell's cost savings figures come from Dr. Bazelon. Defendants have filed a separate Motion to Strike Dr. Bazelon's opinions on cost savings and all they allege is some mis-match with Mr. Dell's description. Dr. Bazelon's entire report sets forth that spectrum purchases are optional and that he values capacity, generally. Mr. Dell's report acknowledges this. Ex A at ¶ 380, 381 (Dr. Bazelon's figures are "nominal capital expenditures" and "cost…required to build an operation comparable to current use"). Defendants have failed to point to any basis to exclude Mr. Dell's methodology of relying on Dr. Bazelon's cost savings figures, which value <u>capacity savings</u> based on spectrum transactions.

## I. THIS COURT HAS RECENTLY REJECTED ESSENTIALLY THE SAME CHALLENGE TO ESSENTIALLY THE SAME MODEL THAT DEPENDS ON DR. BAZELON'S COST SAVINGS ANALYSIS

After Plaintiff's Opposition, this Court has rejected a challenge to essentially the same damages methodology. *Headwater Research LLC, v. Verizon Communications Inc., et al*, Case No. 2:23-cv-00352-JRG-RSP (June 23, 2025) ("*Headwater* Order," Ex. G). In *Headwater*, Dr. Bazelon calculated cost savings metrics based on avoided capacity investments. Dr. Bazelon, similar to here, valued avoided capacity costs by studying spectrum transactions, which approximate the cost of capacity to the carriers. *Id*. at 3-7. In *Headwater* Verizon made an argument similar to what it makes here:

1

> "Defendant argue[s] that '[the damages expert] also does not demonstrate that Verizon forewent buying additional spectrum that it would otherwise have purchased absent use of the asserted patents…"
> *Id*. at 5.

The Court rejected this challenge, holding that, to the extent Defendants asserted there was an NIA to consider, it was the <u>defendant's</u> burden to identify it. *Id*. Also, it was appropriate for the damages expert to rely on other experts to the extent NIAs were relevant to the cost savings model. *Id.* at 6 ("To the extent [the expert] does not perform an independent analysis of the NIAs, this is not required. Experts are permitted to rely on the opinions of others where necessary.") The Court recognized and approved, just as Mr. Dell does here, that the damages expert relied on Dr. Bazelon and the technical expert to evaluate NIAs in the cost savings model. *Id*. at 4-7.

## II.  DEFENDANTS CONTINUE TO IGNORE DR. BAZELON'S OPINIONS, WHICH WERE MR. DELL'S BASIS FOR COST SAVINGS

Mr. Dell relies on Dr. Bazelon and his capacity savings valuations. Defendants tellingly mis-quote Vivato's Opposition when it parses part of a sentence and then finish it with something that Vivato did not say. Dkt. 205 at 1 ("XR concedes …"). Vivato's entire sentence and paragraph describe that Dr. Bazelon, and by extension, Mr. Dell, do not require or opine that Defendants must, or even can, overcome the lost efficiency through "purchase or lease [of] spectrum ***alone*** in the <u>precise locations</u>, <u>time periods</u> and <u>bands</u> needed to overcome capacity loss caused by not infringing." Dkt. 185 at 3. They continue to ignore that Dr. Bazelon's actual methodology.

Defendants respond that Mr. Dell's and Dr. Bazelon's actual methodology is only "according to XR's attorneys." But Vivato's Opposition cites numerous paragraphs of Dr. Bazelon's and Mr. Dell's opinions (really Dr. Bazelon's entire report) outlining that the model is based on avoided <u>capacity costs</u> as measured by spectrum transactions. Dkt. 185 at 2-4, 8-9, citing, *inter alia*, Ex. B (Bazelon Rpt.) at ¶¶ 10-12, 38-40, 43-49, 68-69, 71-96, 98-105; Appendix A (Dkt.

2

189, Ex. A at 56-60), various deposition quotes; Ex. A (Mr. Dell's Report) at ¶¶ 380, 381, 424. Mr. Dell's report confirms Dr. Bazelon's value represent nominal costs relating to "the entire investment cycle of a network site" and "hypothetical present value, or cost, of [Defendants'] network that would be required to build an operation comparable to current use." Ex. A at ¶¶ 380, 381. Dr. Bazelon had to correct Defendants' attorney in deposition about this fact, but that still did not dissuade Defendants from filing this (baseless) motion. Dkt. 185 at 4, citing Ex. C at 35:23-36:1 ("Q. You have only valued spectrum. Correct? A. No, I valued the capacity cost…I'm clear in my report..."). Mr. Dell's model simply is not based on Defendants actually purchasing spectrum.

Defendants' Reply re-asserts a few selected deposition and report quotes to argue Mr. Dell acknowledged that the cost savings are "related to avoided spectral purchases." Dkt. 205 at 1. But Dr. Bazelon is clear that the cost savings do "relate" to spectral purchases, because that is how they are valued, and spectral purchases are one of the ways of adding lost capacity. But it is not the *only* way, and the *necessary* way.

Defendants quote Mr. Dell's Rebuttal Report, which in pertinent part, is based on Dr. Bazelon's rebuttal opinion that short term, locale-specific spectrum transactions are not feasible. Dkt. 205 at 2. As Defendants concede in the quote, Mr. Dell specified spectrum "***during the relevant times* and *in the relevant areas***" would not be feasible, and again, Mr. Dell deferred to Dr. Bazelon's opinion that this referred to targeted short term leasing. Dkt. 185 at 4-7 ("short term leasing is not a viable alternative to avoid the approximately 10-year term investments"). This supports Mr. Dell's 10-year investment cycle and does not undercut the cost savings model.

To the extent Defendants' selected quotes of Mr. Dell are arguably inconsistent with Dr. Bazelon's cost savings analysis (and, especially in full context, they are not), they are merely

3

fodder for cross, and do not change that Mr. Dell relied on Dr. Bazelon for cost savings, and did not create his own "spectrum purchases only" model. Defendants continue to fail to address Dr. Bazelon's opinions in their briefing. Defendants' motion against Dr. Bazelon on this point alleges only some mis-match in model description between Mr. Dell and Dr. Bazelon in some parts of Mr. Dell's report or deposition. This is no basis for exclusion.

Defendants also fail to distinguish *Prism Techs*. Defendants only re-assert that Vivato's damages model and Mr. Dell's opinion require actual spectrum purchases and only spectrum purchases in precise amounts and locales. Even taking this inaccuracy at face value, as explained in Vivato's Opposition, the *Prism Techs* experts did opine that the cost savings metric at issue was not feasible and, in practice, many times too low. Dkt. 185 at 10, citing *Prism Techs v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1377 (Fed. Cir. 2017). Mr. Dell similarly describes that obtaining exactly the right spectrum would be much more expensive than Dr. Bazelon's metrics. Dkt. 185 at 10, citing Ex. E at ¶ 36. The Federal Circuit found this <u>supports</u> the model. If Defendants needed to expend additional funds to obtain spectrum (if they chose that route) that supports the model and renders it conservative. *Prism Techs* is on all fours.

### III. MR. DELL'S APPORTIONMENT OF AVOIDED UPFRONT CAPITAL COSTS BASED ON A 10-YEAR INVESTMENT CYCLE EXCLUDES POST-EXPIRATION DAMAGES

Mr. Dell does not include "post-expiration damages." He does not include sales or other measures incurred after the expiration of the patents-in-suit. Dkt. 185 at 11-13. Most of total cost savings would be avoided ***at the time of first infringement***. *Id.*, citing Ex. A at ¶¶ 380 to 382, Ex. B at ¶¶ 46, 105. Defendants have not moved to exclude or even address this opinion. Mr. Dell's 10-year period is based on useful lives of the capital investments and he apportions and reduces the nominal cost savings <u>that would have been avoided during the infringement period</u>. Regarding

4

the "house" analogy, as this Court recognized in the *Headwater* Order, "the claimed benefit of the accused instrumentalities is network capacity *savings*, … the accused benefit of the asserted claims is not that this *adds more spectrum* to what Verizon already has" Ex. G at 7 (Court's emphasis). Measuring value of added spectrum is not the model, it is the avoided cost **savings**, which happen during the infringement period. Similarly, while *Prism Techs* may not have specifically dealt with a 10-year useful life horizon, it did explicitly allow "initial capital costs" to be the measure of damages. *See Prism Techs.*, 849 F.3d at 1378. Mr. Dell's further <u>limiting</u> of the "initial capital costs" during the patent term based on useful lives is not a reach for post-expiration damages.

Mr. Dell's reduction of damages for the shorter-term patents based on *Georgia Pacific* Factor 7 (patent term) to the lower part of his bargaining range further accounts for patent term. Defendants did not challenge this in their Motion, only their Reply. Defendants' factual issue about the original technical source of Mr. Dell's range ignores that Mr. Dell applies the adjustment to the already-established bargaining range during the negotiation as an application of *Georgia Pacific* Factor 7 to the hypothetical negotiation. Ex. A at ¶ 424. It is not a technical analysis, and is another way Mr. Dell accounted for patent term.

### IV. MR. DELL'S COST SAVINGS SPLIT IS BASED ON THE FACTS OF THE CASE

Defendants circularly assert that Mr. Dell's cost savings splitting step is not "optional" because Mr. Dell chose to take that additional step. Defendants' citation to *Riles v. Shell Exploration and Production Co.* actually confirms the savings split it is an optional step. 298 F.3d 1302, 1313 (Fed. Cir. 2002) (infringer arguing that reasonable royalty "may not **exceed** the cost savings") (emphasis added). In any event, Defendants fail to address the caselaw and arguments showing that Mr. Dell's cost-savings split, optional or not, is grounded in Defendants' financial metrics associated with capacity investments, *i.e.*, the facts of the case. Dkt. 185 at 13-15.

5

Dated: July 2, 2025

Respectfully submitted,

*/s/ Reza Mirzaie*
Marc Fenster
CA State Bar No. 181067
Reza Mirzaie
CA State Bar No. 246953
Adam Hoffman
CA State Bar No. 218740
Neil A. Rubin
CA State Bar No. 250761
James Pickens
CA State Bar No. 307474
Christian W. Conkle
CA State Bar No. 306374
Philip Wang
CA State Bar No. 262239
Minna Jay
CA State Bar No. 305941
Paul Kroeger
CA State Bar No. 229074
**RUSS AUGUST & KABAT**
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Telephone: 310-826-7474
rak_vivato@raklaw.com

Andrea L. Fair
TX State Bar No. 24078488
MILLER FAIR HENRY PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Telephone: 903-757-6400
andrea@millerfairhenry.com

*Attorneys for Plaintiff,*
*XR Communications, LLC,*
*dba Vivato Technologies*

6

## CERTIFICATE OF SERVICE

I hereby certify that on July 2, 2025, I electronically filed the foregoing document with the Clerk of the Court for the Eastern District of Texas using the ECF System, and served defendants with a copy via electronic mail.

/s/ *Reza Mirzaie*
Reza Mirzaie
