# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| XR COMMUNICATIONS, LLC, dba VIVATO TECHNOLOGIES, <br><br> *Plaintiff,* <br><br> v. <br><br> AT&T SERVICES INC.; AT&T MOBILITY LLC; and AT&T CORP., <br><br> *Defendants,* <br> NOKIA OF AMERICA CORPORATION and ERICSSON INC., <br> *Intervenors,* | Case No. 2:23-cv-00202-JRG-RSP <br> (Lead Case) <br><br> **JURY TRIAL DEMANDED** |
| XR COMMUNICATIONS, LLC, dba VIVATO TECHNOLOGIES, <br><br> *Plaintiff,* <br><br> VERIZON COMMUNICATIONS, INC., CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, <br><br> *Defendants,* <br> NOKIA OF AMERICA CORPORATION and ERICSSON INC., <br> *Intervenors,* | Case No. 2:23-cv-00203-JRG-RSP <br> (Member Case) |

i

| | |
|---|---|
| XR COMMUNICATIONS, LLC, dba VIVATO TECHNOLOGIES,<br>   *Plaintiff,*<br><br> v.<br><br>T-MOBILE USA, INC.,<br><br>   *Defendants,*<br><br>NOKIA OF AMERICA CORPORATION and ERICSSON INC.,<br>   *Intervenors,* | Case No. 2:23-cv-00204-JRG-RSP<br>(Member Case) |

**PLAINTIFF XR COMMUNICATION, LLC'S SURREPLY IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE CERTAIN OPINIONS OF DR. COLEMAN BAZELON**

**TABLE OF CONTENTS**

I. ARGUMENT .......... 1

A. Defendants Mischaracterize Dr. Bazelon's Model. .......... 1

B. Bazelon's Spectrum-Based Avoided Cost Valuation Is a Basis of, and Consistent With, Vivato's Overall Damages Case. .......... 2

C. *Prism Techs* and *Headwater* are Inapposite. .......... 3

D. Dr. Bazelon Accounts for Undeployed Spectrum. .......... 4

E. Dr. Bazelon Properly Used His Economic and Industry Expertise to Select an Appropriate Discount Rate. .......... 5

II. CONCLUSION .......... 5

# TABLE OF AUTHORITES

**Cases**

*i4i Ltd. P'ship v. Microsoft Corp.*,
   598 F.3d 831(Fed. Cir. 2010) ............................................................................................... 3

*Lucent Technologies, Inc. v. Gateway, Inc.*,
   580 F.3d 1310 (Fed. Cir. 2009) ............................................................................................. 5

*Prism Techs. LLC v. Sprint Spectrum L.P.*,
   849 F.3d 1360 (Fed. Cir. 2017) ............................................................................................. 3

*Sinclair Ref. Co. v. Jenkins Petroleum Co.*,
   289 U.S. 689 53 S. Ct. 736, 739 (1933) ................................................................................ 5

*Swierczynski v. Arnold Foods Co.*,
   265 F. Supp. 2d 802 (E.D. Mich. 2003) ................................................................................ 5

I.  ARGUMENT

    **A. Defendants Mischaracterize Dr. Bazelon's Model.**

Defendants' reply abandons the arguments made in the Motion and asserts instead that Dr. Bazelon assumes Defendants must actually purchase spectrum at the time of first infringement at the value he ascribes. But that theory is built on a fiction of Defendants' making. Instead, Dr. Bazelon values the economic benefit of increased capacity using spectrum auction data as a proxy for cost, consistent with real-world wireless network economics. Dkt. 189 Ex. A-C, (Bazelon Reports) at ¶ 10 ("[S]pectrum market values are a sound proxy for the value of any avoided *capacity costs*."); Dkt 189 Ex A, B at ¶ 68, Ex. C at ¶ 69 ("My report values this capacity enabled by the Asserted Patents and the associated Infringing Feature by proxying the value of network capacity with a spectrum value equivalent."); Section VII ("Economic Framework for Using Spectrum Value as a Proxy for the Value of Network Capacity").

Dr. Bazelon already corrected Defendants' attorney in deposition about the fact that, consistent with his entire report, his model does not only value spectrum. *See* Dkt. 185 at 4, citing Ex. C at 35:23-36:1 ("Q. You have only valued spectrum. Correct? A. No, I valued the capacity cost . . . I'm clear in my report . . . ."). And just as Dr. Bazelon's reliance on the findings of a technical expert provides no basis for disqualification, Mr. Dell's reliance on Bazelon provides no basis to exclude *either* Dr. Bazelon or Mr. Dell. *See, e.g.*, Resp. Ex. O, *Bazelon Headwater* Order at 3 (denying motion to strike on the basis of reliance on another expert).

This Court recently rejected the carrier's challenge to this same framework for estimating network capacity investment cost savings. *See* Response, Dkt. 189 at 2, 4, 7, 9 (citing *Bazelon Headwater Order* ("The Court is satisfied that the use of spectrum auction prices as a proxy for the value of Defendants' spectrum holdings is sufficiently reliable so as to not merit exclusion….

1

Dr. Bazelon has presented evidence sufficient to demonstrate that conserved network capacity is suitable as a metric for damages in his avoided-costs based model…"). Here, as in *Headwater*, Bazelon values avoided costs from infringement, not on a specific transaction that did or did not happen. Instead, he uses publicly available spectrum auction pricing data to model the Defendants' network capacity production function under standard economic principles of cost minimization. *See* Dkt. 189 Ex. A, B at at ¶ 72-73 (Dkt 189 Ex. C at ¶ 73-74), Appx A ¶¶ 3, 4 (Discussing economic underpinnings of model). The model does not assume a "spectrum-only" solution.

### B. Bazelon's Spectrum-Based Avoided Cost Valuation Is a Basis of, and Consistent With, Vivato's Overall Damages Case.

Defendants' argument that Dr. Bazelon's model should be excluded because it allegedly does not "fit" Mr. Dell's theory of damages fails both because it reverses the standard for exclusion and it is substantively wrong. Dr. Bazelon's methodology is independently sound, uses real-world market proxies, and squarely addresses the economic value of the capacity gains attributable to the patented features. Defendants' argument that, because their characterization of Dr. Bazelon's analysis allegedly does not match their characterization of Mr. Dell's description of the same, Dr. Bazelon's foundational opinions should be struck, reverses the chain of reliance. Mr. Dell relies on Dr. Bazelon's valuation, not the other way around.

In any event, Dr. Bazelon's analysis does not diverge from Mr. Dell's cost-savings approach. Mr. Dell expressly relies on Dr. Bazelon's opinions and framework and accurately describes it in his report. *See* Dell Report at ¶¶ 380-81 ("Dr. Bazelon's value represent[s] nominal costs relating to 'the entire investment cycle of a network site' and 'hypothetical present value, or cost, of [Defendants'] network that would be required to build an operation comparable to current use.'"). And Dr. Bazelon directly describes his analysis as an avoided costs approach. *See, e.g.*,

Dkt. 189 Ex. A-C at ¶ 12c. ("I then combine estimates from (a) and (b) to calculate the spectrum value equivalent of the avoided capacity costs generated by the Asserted Patents.").

Regardless, Defendants' claim that Bazelon's model doesn't "fit" Dell's theory is a distraction from the actual legal standard. Bazelon's model fits the case facts: it quantifies the economic value of the capacity benefit conferred by the accused features using a disclosed and objective valuation approach. That is a proper subject of expert economic testimony under *Daubert*. If Defendants believe that Dell has mischaracterized Bazelon's role or inputs, that is a matter for cross-examination rather than a basis to exclude Bazelon's opinions. See *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 856 (Fed. Cir. 2010) (such disputes go to the testimony's weight, not its admissibility).

### C. *Prism Techs* and *Headwater* are Inapposite.

Defendants attempt, but fail to distinguish the *Prism Techs* case. In *Prism Techs*, just like here, the avoided costs related to build-out of a cellular network. *Prism Techs. LLC v. Sprint Spectrum L.P.*, 849 F.3d 1360, 1376 (Fed. Cir. 2017) Just like here, in *Prism Techs*, the expert used a proxy to value the build out. 849 F.3d at 1375-1378 (noting that actual build out costs would be multiple times larger than the proxy measure, and this supports damages). Defendants, again, confuse the proxy used to value capacity (here, spectrum) with the fact that Defendants would need to build out their networks, generally. Defendants, who are constantly adding capacity to their networks, have not, and cannot argue that they would not do so. Ex. A, Bazelon Dep. at 66:20-67:10; *see also* Dkt. 189 Ex N. (Bazelon Dep.) at 50-51 ("[T]he issue of the timing of deployment of spectrum is one where they plan their network over time. It's always growing. They're always adding capacity to it."), 60-61 ("I think you're misunderstanding what planning for the network means. They plan with a buffer, for sure . . . ."). The workaround is similarly "uncontroverted."

Regarding *Headwater*, Defendants miss that, similar to here, Dr. Bazelon's opinions were an "input" passed onto a damages expert. Bazelon *Headwater* Order at 3, 9; *see also* Dkt. 217 Ex. G ("Bergman *Headwater* Order") (similarly allowing subsequent damages expert to rely on Dr. Bazelon's reliable opinions). Defendants' attempt to distinguish *Headwater* also fails.

### D.  Dr. Bazelon Accounts for Undeployed Spectrum.

Defendants' arguments that Dr. Bazelon ignores how much spectrum is deployed versus simply held awaiting deployment fail. First, this argument is nonsensical in that in order for Defendants to keep spectrum, the FCC requires that it be eventually used.[1] Second, more directly, Dr. Bazelon explicitly and repeatedly takes into account that Defendants build in a buffer to their network planning, which assumes some amount of undeployed spectrum at all times. *See* Ex. A 66:20-67:10 ("All networks are always -- as outlined in my report, the demand for mobile wireless services is growing significantly over time. So all of these networks are constantly adding additional capacity. Right? They are growing all the time."); *see also, e.g.*, Ex. A at 103:16-21; Dkt. 189 Ex. N (Bazelon Dep.) at 60:10-61:12, 62:10-64:3. Defendants' argument that Dr. Bazelon does not distinguish between spectrum being deployed to increase capacity and spectrum currently held by Defendants (again) completely ignores the distinction between spectrum as an input to capacity and deployed capacity itself. This Court in the *Headwater* case rejected a similar argument. Bazelon *Headwater* Order at 7-9 (finding Dr. Bazelon presented sufficient evidence to overcome Defendants' arguments that they held substantial excess capacity such that the accused

---

[1] The FCC enforces "buildout" requirements in connection with its auctions of spectrum licenses "which specify that an entity granted a license must begin using the assigned spectrum within a specified amount of time or face penalties, such as loss of the license." *See, e.g.*," Spectrum Management: FCC's Use and Enforcement of Buildout Requirements," GAO available https://www.gao.gov/products/gao-14-236#:~:text=FCC%20takes%20a%20number%20of,as%20loss%20of%20the%20license, last accessed July 2, 2025; *see also* "Construction Requirements by Service," FCC Wireless Licensing Help Center , available https://www.fcc.gov/wireless/support/universal-licensing-system-uls-resources/construction-requirements-service#:~:text=First%20buildout%20deadline%20is%206,each%20of%20its%20licensed%20areas, last accessed July 2, 2025 (listing buildout percentages and deadlines for various auction licenses).

features had no effect); Bergman *Headwater* Order at 7 ("[T]he claimed benefit of the accused instrumentalities is network capacity *savings* . . . the accused benefit of the asserted claims is not that this *adds more spectrum* to what Verizon already has

### E.  Dr. Bazelon Properly Used His Economic and Industry Expertise to Select an Appropriate Discount Rate.

Defendants fail to address the economic rationale provided for Dr. Bazelon's choice of discount rate for his long term present value modeling. Bazelon explained that the 2022 rate was distorted by COVID, while the 2025 rate reflects normalized long-run conditions and comes from an objective independent source together with Dr. Bazelon's economic expertise. *See* Opposition, Dkt. 189 at 11-12 (citing *Swierczynski v. Arnold Foods Co.*, 265 F. Supp. 2d 802, 809-10 (E.D. Mich. 2003)). The fact that this is a hypothetical negotiation at a given time does not change the economic analysis of selecting a long term discount rate not distorted by the COVID pandemic. It is well established that damages analyses can look to later developments, particularly to avoid inaccurate or unfair results from strict adherence to circumstances on the hypothetical negotiation date. *Lucent Technologies, Inc. v. Gateway, Inc*., 580 F.3d 1310, 1333-34 (applying the book of wisdom under *Georgia-Pacific* Factor 11, "The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use"); *Sinclair Ref. Co. v. Jenkins Petroleum Co.*, 289 U.S. 689, 698-99, 53 S. Ct. 736, 739 (1933).

## II.     CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion in its entirety.

Dated: July 3, 2025                                                                                  Respectfully submitted,

/s/ *Reza Mirzaie*
Marc Fenster
CA State Bar No. 181067
Reza Mirzaie
CA State Bar No. 246953
Adam Hoffman
CA State Bar No. 218740
Neil A. Rubin
CA State Bar No. 250761
James Pickens
CA State Bar No. 307474
Christian W. Conkle
CA State Bar No. 306374
Philip Wang
CA State Bar No. 262239
Minna Jay
CA State Bar No. 305941
Paul Kroeger
CA State Bar No. 229074
**RUSS AUGUST & KABAT**
12424 Wilshire Blvd. 12th Floor
Los Angeles, CA 90025
Telephone: 310-826-7474
rak_vivato@raklaw.com

Andrea L. Fair
TX State Bar No. 24078488
MILLER FAIR HENRY PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Telephone: 903-757-6400
andrea@millerfairhenry.com

*Attorneys for Plaintiff,*
*XR Communications, LLC,*
*dba Vivato Technologies*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 3, 2025, I electronically filed the foregoing document with the Clerk of the Court for the Eastern District of Texas using the ECF System.

<div style="text-align:right">

/s/ *Reza Mirzaie*
Reza Mirzaie

</div>