# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| XR COMMUNICATIONS LLC D/B/A VIVATO TECHNOLOGIES, | § § § | |
| *Plaintiff*, | § § | CASE NO. 2:23-CV-00202-JRG-RSP |
| v. | § | (LEAD CASE) |
| AT&T INC., ET AL,, | § § | |
| *Defendants*. | § § | |

## MEMORANDUM ORDER

Before the Court is Defendants' and Intervenors'[1] Motion for Leave to Serve Supplemental Reports Based on Joint Stipulation of Dismissal as to Nokia Products. **Dkt. No. 212**.

### I. BACKGROUND

On May 8, 2023, Plaintiff brought suit against Defendants, alleging they infringe a number of Plaintiff's patents with respect to Defendants' use of certain products that they purchase from Nokia and Ericsson. On June 18, 2025, the Parties stipulated to a dismissal with prejudice of the allegations involving the Nokia products. Dkt. No. 180 (the "Stipulation").

On July 1, 2025, Defendants filed the instant Motion, seeking to supplement their expert's reports with opinions that the dropped Nokia products are now non-infringing alternatives ("NIAs"). Dkt. No. 212.

### II. ANALYSIS

In assessing whether to permit a supplementation of an expert report, courts in this district consider the timeliness of a motion seeking leave to do so. *See Biscotti Inc. v. Microsoft Corp.*, No. 2:13-CV-01015-JRG-RSP, 2017 WL 2607882, at *1 (E.D. Tex. May 25, 2017). In cases where

---

[1] For the sake of brevity, the Court will simply refer to the moving parties as "Defendants."

such a motion for leave is untimely, the courts have broad discretion in allowing or denying the supplementation.

Here, both the Stipulation and the instant Motion were filed after the close of discovery. *See* Dkt. No. 154. Considering the procedural posture of the case as a whole, the Court finds that the Stipulation and Motion for Leave come too late and, therefore, the Court denies leave on this basis. The Court further finds that the Motion would be futile, as discussed below.

As a preliminary matter, the Court, having reviewed the proposed supplements, finds that they are all entirely directed to NIA opinions. *See generally* Dkt. Nos. 212-1, 212-2, 212-3, 212-4.

Turning to the propriety of Defendants' requested use of the Nokia products as NIAs, it is well established that an instrumentality accused of infringement cannot be used as a non-infringing alternative. *See, e.g.*, *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1340 (Fed. Cir. 2015); *see also Datascope Corp. v. SMEC, Inc.*, 879 F.2d 820, 824–25 (Fed. Cir. 1989). More importantly, "[t]he voluntary settlement of litigation does not retrospectively transform an accused infringing product into a noninfringing substitute." *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1222-23 (Fed. Cir. 1995).

In other words, even though the Parties here stipulated to a dismissal of the Nokia products, those products do not retroactively become NIAs, nor can they except under very specific conditions not present here.[2]

"The critical time period for determining availability of an alternative is the period of infringement for which the patent owner claims damages, *i.e.,* the 'accounting period.'" *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1353 (Fed. Cir. 1999). Thus, once a

---

[2] One such situation would be a stipulation of dismissal in view of a discovered license covering the accused products, with the license antedating the suit. Defendants have not presented any evidence of this being the case here.

2

product is, for example, licensed, it may be "available" and relevant for damages calculations. *See Pall Corp.*, 782 F.3d at 1223 ("[F]or [Defendant's] sales *after* [Plaintiff] settled with [a third-party supplier who had an alternative product], we affirm the damages award based on recovery of [Plaintiff's] lost profits for 25% of [Defendant's] infringing sales, and a royalty of 8% for the remaining 75% of [Defendant's] infringing sales. For the period *before* the grant of immunity to [the third-party supplier], [Plaintiff] shall recover damages measured as its lost profits for all of [Defendant's] infringing sales" because the third party's product was not available during this period. (emphasis added)).

This does not, however, change the outcome in the present situation. As was made clear in the Stipulation dropping the Nokia products, "[this] stipulation is made for the purposes of simplifying issues in this litigation. *It should not be taken as a position by [Plaintiff] that Nokia products do not infringe the Asserted and Dropped Patents*." Dkt. No. 180 at 1-2 (emphasis added). Consequently, Plaintiff here could still sue Nokia directly, and so, the Nokia products remain unavailable as an NIA.

Defendants attempt to argue against this by citing to the *Kessler* doctrine, which holds that, upon adjudication of non-liability for infringement, a manufacturer receives a limited trade right to continue making, using and selling the previously accused instrumentalities, and that a plaintiff may not further harass the manufacturer either directly or through suits against the manufacturer's customers for using the instrumentalities. *See generally Kessler v. Eldred*, 206 U.S. 285 (1907); *see also In re PersonalWeb Techs. LLC*, 961 F.3d 1365, 1378-79 (Fed. Cir. 2020). The reason underlying this ruling was that "even if a manufacturer of goods were to prevail in a patent infringement suit, the manufacturer could be deprived of the benefits of its victory if the patentee were free to sue the manufacturer's customers." *In re PersonalWeb Techs.*, 961 F.3d at 1378.

Here, Defendants argue that, because the Parties have stipulated to a dismissal with prejudice of the Nokia products, this "confers upon Nokia a limited trade right to continue producing, using, and selling the accused Nokia products without further harassment from XR, either directly or through suits against Nokia's customers [namely, the instant Defendants] for using that product." Dkt. No. 212 at 2 (cleaned up) (citing *In re PersonalWeb Techs.*, 961 F.3d at 1379). Thus, in view of this estoppel, the Nokia products are available as an NIA. *See id.*

The Court finds Defendants' argument unpersuasive. As a preliminary matter, this is not a situation in which Plaintiff has sued the manufacturer and then later attempted to sue the manufacturer's customers; if anything, it is the opposite. XR has sued the customers (the instant AT&T, T-Mobile, and Verizon Defendants[3]) of a manufacturer's (Nokia's) products, and done so before ever suing said manufacturer.[4] Further, and more importantly, the Federal Circuit has said that *Kessler* doctrine kicks in when a plaintiff "abandon[s] its claims[5] against [a defendant] *without reservation*, explicit or implicit." *Id.* at 1378 (emphasis added).

Here, by contrast and as discussed above, the Stipulation included the explicit reservation that it is "made for the purposes of simplifying issues in this litigation" and that "*[i]t should not be taken as a position by [Plaintiff] that Nokia products do not infringe the Asserted and Dropped Patents*." Dkt. No. 180 at 1-2 (emphasis added). Further, Plaintiff has underscored that "Defendants did not turn on the relevant features during the damages period in the Nokia base stations that exist in their networks." Thus, it is reasonable for Plaintiff to drop its claims against the carriers given the difficulties of explaining to a jury why the simple presence of these features,

---

[3] The Court will occasionally refer to these as the "carriers."
[4] Nokia's intervention does not change this. It is not a named defendant, and Plaintiff seeks no judgment against it.
[5] The Court does not see a meaningful distinction between a stipulation of dismissal as to certain products and a dismissal of the whole lawsuit, especially since stipulations are effective upon filing.

despite not being enabled, may still infringe[6]. *See Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197 (Fed. Cir. 2010) (explaining that an instrumentality that is "reasonably capable" of satisfying claim limitations may still infringe even if code is not currently implemented). Consequently, to disallow Plaintiff from suing Nokia directly under *Kessler* doctrine causes a fairness issue, particularly in view of the fact that Nokia presumably makes and uses the accused code themselves (for example, during testing)[7] and, therefore, Plaintiff may have an easier time arguing its case to a jury under such circumstances.[8] And the Federal Circuit has previously found that the *Kessler* doctrine does not apply when certain fairness issues are present. *In re PersonalWeb Techs.*, 961 F.3d at 1377–78 ("In [a previous] case, [the plaintiff] sued [the defendant] for patent infringement. The parties subsequently settled the case, with [the defendant] taking a license to the patents. Following the licensing agreement and settlement, the trial court dismissed [the plaintiff's] claims with prejudice. Later, however, the licensing agreement was terminated. When [the plaintiff] sought to bring a second infringement action, [the defendant] argued that the *Kessler* doctrine barred the lawsuit. We disagreed and held that the *Kessler* doctrine did not bar the second lawsuit against [the defendant] over actions that took place after the termination of the license. Although the first suit was dismissed with prejudice, we noted that [the defendant] was a willing licensee, not an adjudicated non-infringer. Under those circumstances, we held that *Kessler* did not permit [the defendant] to infringe the patents with impunity after the license was no longer in effect." (internal citations omitted)).

---

[6] This is especially so since this Court, like most District Courts, imposes limits on how much time each party has to present its case-in-chief.
[7] To be abundantly clear, the Court is *not* saying that this is necessarily the case and there is no finding of fact to this effect.
[8] Further, with respect to footnote 6, this would be less time-consuming, and so, Plaintiff would be able to better focus its arguments.

Accordingly, the Nokia products are not available as NIAs and, therefore, the supplemental reports present impermissible opinions.

### III.   CONCLUSION

For the reasons discussed above, the Motion is hereby **DENIED**.

**SIGNED this 22nd day of September, 2025.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE