IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| XR COMMUNICATIONS LLC D/B/A VIVATO TECHNOLOGIES,<br>*Plaintiff*,<br>v.<br>AT&T INC., ET AL,,<br>*Defendants*. | CASE NO. 2:23-CV-00202-JRG-RSP<br>(LEAD CASE) |

## **REPORT AND RECOMMENDATION**

Before the Court is Defendants' and Intervenor Ericsson's[1] Motion for Partial Summary Judgment Regarding Certain Damages-Related Issues. **Dkt. No. 165**. In the Motion, Defendants seek summary judgment on two issues: that Plaintiff has not come forward with sufficient evidence to show, at minimum, a genuine dispute of material fact that (1) the two accused Ericsson features do not result in a 4-5% gain in spectral efficiency; and (2) that Defendants would not have been able to purchase more spectrum as part of Plaintiff's proposed next-best non-infringing alternative. For the reasons discussed below, the Motion should be **DENIED**.

### I.  APPLICABLE LAW

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Any evidence must be viewed in the light most favorable to the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when there is no genuine dispute of material fact. *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). "By its very terms, this standard provides that the

---

[1] For the sake of brevity, the Court will simply refer to the moving parties as "Defendants."

mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine [dispute] of material fact." *Anderson*, 477 U.S. at 247–48. The substantive law identifies the material facts, and disputes over facts that are irrelevant or unnecessary will not defeat a motion for summary judgment. *Id.* at 248. A dispute about a material fact is "genuine" when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party must identify the basis for granting summary judgment and evidence demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323.

"If the moving party does not have the ultimate burden of persuasion at trial, the party 'must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.'" *Intellectual Ventures I LLC v. T Mobile USA, Inc.*, No. 2:17-CV-00577-JRG, 2018 WL 5809267, at *1 (E.D. Tex. Nov. 6, 2018) (quoting *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000)).

## II.     ANALYSIS

### A.  4-5% Gain in Spectral Efficiency

In the Motion, Defendants argue that "the evidence that Dr. Williams[2] relied upon to support his assertion that that the accused Ericsson features provide a 4-5% spectral efficiency gain over the next-best alternative (codebook beamforming) shows the opposite." Dkt. No. 165 at 1. In support of this, Defendants asserts that "Dr. Williams does not provide any opinions or analysis related to spectral efficiency gains derived from [the accused MU-MIMO[3] Feature]." *Id.* at 3 (citing Dkt. No. 165-12 at ¶¶ 52-64).

---

[2] One of Plaintiff's technical experts.
[3] "Multi-user, multiple input multiple output."

Further, "[f]or the SU-MIMO[4] Feature, Dr. Williams' opinions are based upon the concrete factual premise that Ericsson's live network on/off testing demonstrates that the SU-MIMO Feature provides a 4-5% spectral efficiency gain over the next-best alternative, which he asserts to be a system with only codebook beamforming ('SRS Off')" (*Id.* at 4, citing Dkt. No. 165-12 at ¶ 52), but "Dr. Williams conceded at his deposition . . . that the evidence that he relied upon to form this opinion shows the opposite," *id.,* citing Dkt. No. 165-13 at 89; Dkt. No. 165-15 at 157:14-158:12, 159:1-6). Defendants contend that "[t]he 4% spectral efficiency gain" actually comes from "something else entirely, *i.e.*, the spectral efficiency gains provided by non-accused, non-deployed prototype software (SRS Final Prototype Config')" and not "the accused functionality ('SU-MIMO Feature')." *Id.* (citing Dkt. No. 165-15 at 159:7-160-13, 164:14-23, 167:1-5, 172:19-173:24,176:3-177:3).

"In sum," conclude Defendants, "all of the evidence of record shows that Dr. Williams does not have a factual basis for his opinions regarding an alleged 4-5% spectral efficiency gain from using the accused products with either the SU-MIMO Feature or MU-MIMO Feature." *Id.*

In response, Plaintiff argues that the evidence that Defendants are pointing to is in relation to the network as a whole, but that Plaintiff's actual position is that the 4-5% increase in spectral efficiency gains only applies in certain parts of the network under certain conditions (for example, with "Ericsson base stations deployed in urban or dense urban areas with urban-level population or household density . . . that turn on the infringing feature, and [that] for these base stations, the improvement applies in a small geographic region surrounding the base station, an area of a circle of ~334-667 meters surrounding the tower, i.e., where there is a high density of smartphones in range of good SRS coverage." Dkt. No. 187 at 2-3 (citing Dkt. No. 165-12 at ¶¶ 56-58; Dkt. No.

---

[4] "Single-user, multiple input multiple output."

3

187-9).

In reply, Defendants argue that Dr. Williams's opinions regarding the 4-5% increase in spectral efficiency only go towards the accused SU-MIMO feature and that he never opines that the accused MU-MIMO feature results in such gains. Dkt. No. 210 at 1 (citing Dkt. No. 165-12 at ¶ 52). As to SU-MIMO, Defendants largely repeat the arguments advanced in their original Motion, asserting that Dr. Williams cannot point to any evidence that shows a 4-5% increase when the accused features are turned on during a live test (and that the tests actually show that spectral efficiency decreased with the features turned on). *Id.* at 1-3.

In sur-reply, and with respect to Defendants' first argument, Plaintiff points to the report of Defendants' non-infringement expert, Dr. Negus, who states that: "I note that Mr. Lindqvist testified regarding these 'FAJ 121 5262 and FAJ 121 5398 [MU-MIMO] features' that 'There are mixed results from this feature, I will say . . . . In a *few scenarios we have seen gains*, but they are maybe single-digit, like *4, 5 percent spectral efficiency gain*, in the *best-case scenarios*,'" and that, "I learned from Mr. Lindqvist that while Ericsson has seen these ~4% spectral efficiency gains occasionally from the FAJ 121 5262 and/or FAJ 121 5398 [MU-MIMO] features on Ericsson Massive MIMO TDD mid-band products, such minor improvements have largely been observed on networks outside of the USA . . . ." Dkt. No. 220 at 2-3 (citing Dkt. No. 187-8 at ¶¶ 273-274 (emphasis in original)). With respect to Defendants' second argument, Plaintiff points to various sources of information that Dr. Williams relied upon throughout his report. *See id.* at 1-3.

The Court finds that Defendants have failed to show that summary judgment is appropriate here. As a general matter, having reviewed Dr. Williams report, the Court is satisfied that a reasonable jury could find that he is attributing the 4-5% spectral efficiency gains to only certain situations, such as the one offered as an example by Plaintiff (e.g.: in urban areas within ~334-667

4

meters of the tower where there is good SRS coverage). While Dr. Williams's report also appears to contend that the 4-5% efficiency gains apply to the entire network—"An incremental improvement in network capacity of 4-5% has been shown in Ericsson's live network on/off testing Ericsson's Advanced DL SU MIMO reciprocity beamforming versus the next-best alternative (a system with only codebook beamforming)" (Dkt. No. 165-12 at ¶ 52); and, "Ericsson's on/off live network testing shows that Ericsson's Advanced DL SU MIMO use of reciprocity frequency selective beamforming increases capacity and spectral efficiency versus codebook beamforming by approximately 4-5% *over the entire mid-band TDD cell* for all users in the cell" (*Id.* at ¶ 56 (emphasis added))—the other sections of his report allow for the inference that he was actually referring to the aforementioned narrower urban environment situation. Defendants' concerns may be properly addressed on cross examination.

With respect to the MU-MIMO feature specifically, Plaintiff has adduced enough evidence to create a genuine dispute of material fact. For example, the testimony of Dr. Negus at paragraphs 273 and 274 of his report (Dkt. No. 187-8), stating that efficiency gains of around 4% to 5% were occasionally seen with the MU-MIMO feature turned on, is sufficient to preclude summary judgment.

With respect to the SU-MIMO feature specifically, the record at this juncture shows that Dr. Williams offers sufficient opinions to create a genuine dispute of material fact. The Court further notes that an expert's opinions are in and of themselves evidence. Thus, to the extent that Defendants claim that they are unsupported, this is not a basis for summary judgment unless and until there is an exclusion under *Daubert*.[5]

Accordingly, the Motion on this basis should be **DENIED**.

---

[5] Evidently recognizing this, Defendants have filed just such a Motion. Dkt. No. 166.

5

### B. Availability to Purchase More Spectrum

In the Motion, Defendants argue that "XR's damages model is based on the theory that utilizing codebook beamforming and purchasing additional spectrum to account for the alleged degraded spectral efficiency of that technology is the next best alternative to taking a license to the Asserted Patents" (Dkt. No. 165 at 5 (citing Dkt. No. 165-1 at ¶ 446; Dkt. No. 165-3 at ¶ 392; Dkt. No. 165-5 at ¶ 413)) but that Plaintiff's experts have "expressly opined that 'Defendant could not have obtained comparable spectrum in the but-for world as an alternative to taking a license'" (*Id.* at 7 (citing e.g. Dkt. Nos. 165-1, 165-2, 165-3, 165-4, 165-5, 165-6, 165-7, 165-8, 165-9, 165-10, 165-11). Because of this, Defendants asserts that "there is no genuine issue of material fact as to the non-availability of spectrum to be purchased" in the but-for world as an alternative to taking a license, and that they are, therefore, "entitled to summary judgment on this limited issue of fact." *Id.*

In response, Plaintiff argues that "Defendants' 'limited issue of fact' is based on a fundamentally incorrect premise that Mr. Dell's damages model requires, as a factual matter on the date of first infringement, that 'spectrum would need to be purchased' by Defendants. This is wrong, and contrary to the express opinions of [Plaintiff's] experts. The model approximates the cost savings to each Defendant from infringing, relying on the avoided *capacity* cost figure, which uses spectrum transactions as a valuation tool. Defendants' motion should be denied as pertaining to an irrelevant factual issue." Dkt. No. 187 at 3-4 (emphasis in original). In support of this, Plaintiff points to numerous sections of the reports of its damages expert, Mr. Dell, and spectrum expert, Dr. Bazelon. *See generally id.* at 4-6.

The Court finds that summary judgment is unavailable here. At minimum, Plaintiff has adduced sufficient evidence demonstrating a genuine dispute of material fact over whether XR's

6

experts actually opined that 'Defendant could not have obtained comparable spectrum in the but-for world as an alternative to taking a license.' There is enough evidence in the record to show that their models are that of avoided capacity costs.

Accordingly, the Motion on this basis should be **DENIED**.

### III.     CONCLUSION

For the reasons discussed above, the Court recommends that the Motion be **DENIED**.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this report within 14 days bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. FED. R. CIV. P. 72(b)(2); *see also Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (*en banc*). Any objection to this Report and Recommendation must be filed in ECF under the event "Objection to Report and Recommendation [cv, respoth]" or it may not be considered by the District Judge.

**SIGNED this 22nd day of September, 2025.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE