IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| XR COMMUNICATIONS LLC D/B/A VIVATO TECHNOLOGIES, *Plaintiff*, v. AT&T INC., ET AL,, *Defendants*. | CASE NO. 2:23-CV-00202-JRG-RSP (LEAD CASE) |

## REPORT AND RECOMMENDATION

Before the Court is Defendants' and Intervenor's[1] Motion for Partial Summary Judgment of No Infringement Under Doctrine of Equivalents. **Dkt. No. 164**. In the Motion, Defendants seek to preclude Doctrine of Equivalents arguments advanced by two of Plaintiff's experts: Dr. Cooklev (for the '511 Patent and '235 Patent) and Dr. Williams (for the '369 Patent). For the reasons discussed below, the Court recommends that the Motion be **GRANTED IN PART** to the extent that Plaintiff is precluded from arguing (1) DoE for the first and third elements of claim 20 of the '511 Patent, (2) that "n" is equal to 1 for claim 20 of the '511 Patent, and (3) arguing DoE for element 1[c] of the '369 Patent. The Motion should otherwise be **DENIED**.

### I.   APPLICABLE LAW

#### A. Summary Judgment Generally

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Any evidence must be viewed in the light most favorable to the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144,

---

[1] For the sake of brevity, the Court will simply refer to the moving parties as "Defendants."

158–59 (1970)). Summary judgment is proper when there is no genuine dispute of material fact. *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine [dispute] of material fact." *Anderson*, 477 U.S. at 247–48. The substantive law identifies the material facts, and disputes over facts that are irrelevant or unnecessary will not defeat a motion for summary judgment. *Id.* at 248. A dispute about a material fact is "genuine" when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party must identify the basis for granting summary judgment and evidence demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323.

"If the moving party does not have the ultimate burden of persuasion at trial, the party 'must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.'" *Intellectual Ventures I LLC v. T Mobile USA, Inc.*, No. 2:17-CV-00577-JRG, 2018 WL 5809267, at *1 (E.D. Tex. Nov. 6, 2018) (quoting *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000)).

### B. Doctrine of Equivalents and Prosecution History Estoppel

Prosecution History Estoppel ("PHE") is a qualification to, and limitation on, the Doctrine of Equivalents ("DoE"). DoE is a principle by which a patentee can assert infringement by an item that does not literally infringe. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733 (2002). For literal infringement to be made out, each element of the claim must be present in the allegedly infringing device. *See Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 607 (1950). For non-literal infringement to be made out, the limitations not literally

2

met in the accused device may be met by features with substantially the same *function*, achieving substantially the same *result*, in substantially the same *way* as is claimed. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997). This is referred to as the function-way-result test, with features that fulfill its criteria being referred to as equivalents.

Ordinarily, the Patentee is free to make use of DoE. If, however, modifications were made to the patentee's claims during prosecution, then prosecution history estoppel may prevent the patentee from invoking DoE, meaning the patentee is then limited to literal infringement. Specifically, if the patentee narrows the scope of the invention during prosecution for reasons of patentability, then he is estopped from applying DoE to meet any of the modified limitations. *Festo*, 535 U.S. at 736. Importantly, *any* claim amendments will trigger a presumption that all other equivalents were surrendered (*Warner-Jenkinson*, 520 U.S. at 40-41) and "[t]he patentee bears the burden of rebutting . . ." (*EMD Millipore Corp. v. AllPure Techs., Inc.*, 768 F.3d 1196, 1203 (Fed. Cir. 2014)). The patentee can, however, rebut this presumption by showing that a person of ordinary skill in the art "could not reasonably be expected to have described the [equivalent] in question." *Festo*, 535 U.S. at 741.

This can be accomplished in different ways. The first is to show that the equivalent was unforeseeable at the time of filing.[2] *Id.* at 740. An example of this would be a technology that did not come about until after the patentee had already filed. As the technology did not then exist and, therefore, could not be considered until after the fact, a patentee could not necessarily have predicted such an equivalent. The second method is to show that "the rationale underlying the amendment . . . bear[s] no more than a tangential relation to the equivalent in question".[3] *Id.* at 740-41. An example of this would be clarifying a translation, such as fixing an issue of when the

---

[2] This is often referred to as the Unforeseeability Doctrine. *Festo*, 535 U.S. at 740.
[3] The is often referred to as the Tangential Relationship Doctrine. *Id.* at 740-41.

translation of a patent originally filed in a foreign language resulted in difficult to understand claim language. The third is a catch-all: "some other reason." *Id.* Provided one of these can be shown for a given amended element, the patentee will no longer be estopped from asserting the DoE. *Id.* at 741.

"Whether a patentee is . . . estopped from asserting equivalents for an amended claim element is a question of law . . . ." *Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131, 1139 (Fed. Cir. 2004) (internal citations omitted).

### C. Ensnarement

"A doctrine of equivalents theory cannot be asserted if it will encompass or 'ensnare' the prior art." *G. David Jang, M.D. v. Bos. Sci. Corp.*, 872 F.3d 1275, 1285 (Fed. Cir. 2017) (citing *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1322 (Fed. Cir. 2009)). "This limitation is imposed even if a jury has found equivalence as to each claim element." *Depuy*, 567 F.3d at 1323 (citing *Wilson Sporting Goods Co. v. David Geoffrey & Assocs.*, 904 F.2d 677, 683, 687 (Fed. Cir. 1990), overruled in part on other grounds, *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 92 n.12, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993)).

To determine whether a doctrine of equivalents infringement theory impermissibly ensnares the prior art, the court may "directly compare the prior art with a single element … of the accused device in an attempt to determine the extent to which prior art limits the application of the doctrine of equivalents." *Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1576 (Fed. Cir. 1994); see also *G. David Jang*, 872 F.3d at 1285 & n 4 (citing *Conroy* with approval). Alternatively, the court may conduct a hypothetical claim analysis. *Id.* As the Federal Circuit has explained:

> Hypothetical claim analysis is a two-step process. The first step is "to construct a hypothetical claim that literally covers the accused device." Next, prior art introduced by the accused infringer is assessed to "determine whether the patentee has carried its burden of persuading the court that the hypothetical claim is

4

>patentable over the prior art." In short, [the court] ask[s] if a hypothetical claim can be crafted, which contains both the literal claim scope and the accused device, without ensnaring the prior art.

*Intendis GMBH v. Glenmark Pharms. Inc., USA*, 822 F.3d 1355, 1363 (Fed. Cir. 2016) (quoting *DePuy*, 567 F.3d at 1324, 1325); see also *Ultra–Tex Surfaces*, 204 F.3d at 1364–65 ("Under a hypothetical claim analysis, a patentee proposes a hypothetical claim that is sufficiently broad in scope to *literally* encompass the accused product or process. If that claim would have been allowed by the PTO over the prior art, then the prior art does not bar the application of the doctrine of equivalents.") (emphasis original) (citing *Wilson*, 904 F.2d at 684).

The patentee bears the burden of proving infringement, and that burden does not shift when the accused infringer invokes ensnarement to rebut infringement under the doctrine of equivalents. *Wilson,* 904 F.2d at 685; *G. David Jang*, 872 F.3d at 1285. Nonetheless, the accused infringer bears the initial burden of producing evidence of ensnared prior art to challenge a doctrine of equivalents infringement theory. *G. David Jang*, 872 F.3d at 1285 (citing *Interactive Pictures Corp. v. Infinite Pictures, Inc.*, 274 F.3d 1371, 1380 (Fed. Cir. 2001)). Once the accused infringer has met its burden of production, the burden is on the patentee to prove that its doctrine of equivalents infringement theory does not impermissibly ensnare the prior art. *Id.* As mentioned above, the patentee may satisfy this burden through either a direct comparison of the prior art to the allegedly equivalent element of the accused device, *Conroy*, 14 F.3d at 1576, or a hypothetical claim analysis, *e.g. G. David Jang*, 872 F.3d at 1285. In the context of a hypothetical claim analysis, the Federal Circuit has framed "the ensnarement inquiry as one of determining the *patentability* of the hypothetical claim, rather than validity … because '[t]he pertinent question' is 'whether [the] hypothetical claim could have been allowed by the PTO over the prior art' as the PTO has never actually issued it." *Id.* at n 5 (emphasis original) (citing *Wilson*, 904 F.2d at 684).

5

### D. Vitiation

Vitiation is a legal determination of non-infringement that no reasonable juror could find equivalence under either the insubstantial difference test or the function, way and result test. *Cadence Pharms. Inc. v. Exela PharmSci Inc.*, 780 F.3d 1364, 1371-72 (Fed. Cir. 2015) (compiling cases); see also *Brilliant Instruments, Inc. v. GuideTech, LLC*, 707 F.3d 1342, 1347 (Fed. Cir. 2013) ("[S]aying that a claim element would be vitiated is akin to saying that there is no equivalent to the claim element in the accused device based on the well-established 'function-way-result' or 'insubstantial differences' tests."). The vitiation concept has its clearest application "where the accused device contain[s] the antithesis of the claimed structure." *Planet Bingo, LLC v. GameTech Int'l, Inc.* 472 F.3d 1338, 1345 (Fed.Cir.2006). However, "[c]ourts should be cautious not to shortcut this inquiry by identifying a 'binary' choice in which an element is either present or 'not present.'" *Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1356 (Fed. Cir. 2012). "Characterizing an element of an accused product as the 'antithesis' of a claimed element is … a conclusion that should not be used to overlook the factual analysis required to establish whether the differences between a claimed limitation and an accused structure or step are substantial *vel non*." *Cadence*, 780 F.3d at 1372. "Rather, vitiation applies when one of skill in the art would understand that the literal and substitute limitations are not interchangeable, not insubstantially different, and when they do not perform substantially the same function in substantially the same way, to accomplish substantially the same result." *Brilliant Instruments*, 707 F.3d at 1347.

### II.   ANALYSIS

Defendants assert multiple bases for precluding Plaintiff from arguing infringement under DoE for each asserted Patent. *See generally* Dkt. No. 164. The Court will address the arguments on a patent-by-patent basis.

6

### A. The '511 Patent

With respect to the '511 Patent, Defendants argue that Plaintiff is precluded from asserting DoE because of (1) waiver; (2) failure to perform a cognizable and element-by-element DoE analysis; (3) PHE; and (4) vitiation and ensnarement. *Id.* at 2-7. The Court will take up each issue in turn.

#### 1. Waiver

Based on the record before us, the Court is unpersuaded by Defendants' argument that Plaintiff waived its ability to bring DoE arguments.

#### 2. Cognizable and Element-by-Element DoE Analysis

In the Motion, Defendants argue that Plaintiff's technical expert, "Dr. Cooklev[,] asserted DoE for claim 1 of the '511 patent, but did not assert DoE for any element of Claim 20, which is the only '511 claim remaining in the case." *Id.* at 2-3 (citing Dkt. No. 164-4 ("Cooklev Infringement Report") at ¶ 240). Defendants also assert that, even assuming arguendo that Dr. Cooklev's claim 1 DoE arguments can be applied to claim 20, he "appears to assert DoE for 'limitations 1[a], 1[b] or [1c]', but does not provide any analysis for limitations 1[a] or 1[c]" in violation of established precedent, which requires an element-by-element analysis. *Id.* at 4 (citing Cooklev Infringement Report at ¶ 240; *Howlink Glob. LLC v. AT&T, Inc.*, No. 2:22-CV-40-JRG-RSP, 2023 U.S. Dist. LEXIS 107884, at *21 (E.D. Tex. May 30, 2023)). In support of this, Defendants contend that "[e]lements 1[a], 1[b], 1[c] are not identified in Dr. Cooklev's report,:" and that "XR's infringement contentions identify [only] element 1[b] . . . ." *Id.* (citing Cooklev Infringement Report at ¶ 240; Dkt. No. 164-6 at 74).

Plaintiff disputes Defendants' first assertion, claiming that "Dr. Cooklev's assertion of DoE

7

in ¶ 240 presents a proper theory for claim 20. Although it has a typo (e.g., '1[b]' instead of '20[b]'), the context clarifies the theory is applicable to claim 20 at least because Dr. Cooklev correctly quoted the applicable limitation of Claim 20 ('MIMO transmitter'), rather than quoting from Claim 1." Dkt. No. 188 at 3. Plaintiff offers no responsive argument to Defendants' element-by-element position. *See id.* at 3-5.

Regarding the first argument, the Court is unpersuaded that Dr. Cooklev simply made a typographical error. A simple comparison of claim 1 with claim 20 reveals that both have the limitation of a "MIMO transmitter" in them. *See* '511 Patent at 10:38; *compare id.* at 12:31. Regardless, to the extent[4] that elements 1[a], 1[b], and 1[c] are the same as elements 20[a], 20[b], and 20[c], we are satisfied that Plaintiff has provided Defendants with adequate notice of its DoE theories.

The second argument is more troublesome, however. The Supreme Court requires that equivalents be analyzed element by element. *Warner-Jenkinson*, 520 U.S. at 29 ("[T]he doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole."). Upon review of paragraph 240 of Dr. Cooklev's report, we agree with Defendants that Dr. Cooklev does not adequately provide individual DoE arguments for elements 1[a] or 1[c].[5] As Defendants contend, he does not even identify elements 1[a] or 1[c] and his arguments, to the extent they are not directed towards element 1[b], are too broad and general to be considered arguments specific to a particular element. In essence, they concern claim 20 more so as a whole than any particular limitation.

Accordingly, the Motion on this basis should be **GRANTED** to the extent that Plaintiff is

---

[4] Because neither Party included Plaintiff's full infringement contentions for the '511 Patent as an exhibit (including the element-by-element claim charting for claim 1), the Court has no way of verifying that element 1[a] is actually the same as element 20[a], etc.
[5] *See supra* previous paragraph regarding the claim 1 versus claim 20 issue.

precluded from arguing DoE for the first and third elements of claim 20. Further, should element 1[b] differ from element 20[b], then Plaintiff is also precluded from arguing DoE for the second element of claim 20.

### 3. Prosecution History Estoppel

Defendants next argue that DoE is precluded under PHE because all claims of the '511 Patent were amended during prosecution to overcome prior art including U.S. 20090322608 A1 ("Adams"). Dkt. No. 164 at 4-6 (citing Dkt. No. 164-9). This includes "Dr. Cooklev's apparent DoE argument . . . that 'n' can be satisfied even if 'n' is 1—which is exactly what XR argued that the prior art Adams reference included. *Id.* at 6.

Original claim 24,[6] for example, of the '511 Patent was amended during prosecution as follows:

> An apparatus comprising:
> ~~a plurality of~~ m antenna arrays configured to ~~receive~~ transmit a propagating radio frequency signal, each of the antenna arrays comprising:
> a plurality of antenna elements; and
> a beamformer configured to produce n different ~~bi-directional~~ transmit beams using the plurality of antenna elements; and
> ~~a plurality of~~ n multiple-input multiple-output transmitters (MIMO), each MIMO transmitter configured to provide m transmit signals, wherein the v-th output signal from the z-th MIMO transmitter corresponding to the z-th beam of the v-th antenna array is selected for transmission,
> wherein m, n, v, and z are integer number values, and
> wherein j=1, …, n, and v=1, …m, and
> wherein n ≥ 2 and m ≥ 2.

Dkt. No. 164-9 at ECF page 16-17 (the underlined sections denote added language; the struck-through text denotes removed language).

It is clear that the added language seen above narrows the scope of the claim. Further, this was done in response to a rejection by the Examiner. *See id.* at ECF page 22-23. Specifically, the

---

[6] Defendants use original claim 24 as exemplary which Plaintiff does not dispute. *See* Dkt. No. 188 at 4-5.

patentee argued that:

> [E]ach of the "m antenna arrays" comprise a "beamformer configured to produce n different bi-directional beams" connected to "n multiple-input multiple-output transceivers (MIMO)" where each MIMO receiver is "configured to accept m received signals" and each MIMO transmitter "configured to provide m transmit signals," wherein m and n are integer number values greater than 2. Thus, there is the same number (m) of arrays as received/transmited signals per MIMO transceiver. There is also the same number (n which may be a different number than m) of bi-directional beams per antenna array as MIMO transceivers.
>
> FIG. 6 of Adams describes 3 arrays of antenna elements 7a, 7b, and 7c. Each array produces 1 beam. These arrays connect to beamformer 8 to produce 3 ports 11a, 11b, and each port corresponding to a beam produced by the arrays. Inverse beamformer 25a then reverses the effect of beamformer 8 and produces 2 ports 25a and 25b corresponding to antenna ports 9a and 9b, respectively. Ports 25a and 25b connect to 1 MIMO receiver 17. As detailed below, this configuration described by Adams does not disclose or suggest the pending claims.
>
> The configuration of Adams has 3 arrays, 1 beam per array, and 1 MIMO receiver. Comparing this to the instant claim 1, 3 arrays would correspond to m=3 and 1 beam per array would correspond to n=1. At the outset, claim 1 recites "wherein n > 2 and m2 2," meaning the system of claim | has 2 or more beams per array, and 2 or more MIMO transceivers in contradiction to the 1 beam per antenna array and 1 MIMO receiver of Adams. Moreover, claim 1 with m=3 would mean each MIMO receiver accepts 3 inputs and each MIMO transmitter produces 3 outputs, in contradiction to the 2 inputs to the receiver in FIG. 6 of Adams. In summary of another aspect of claim 1, "the i-th input signal to the j-th MIMO receiver corresponds to the j-th beam of the i-th antenna array... wherein i=1, ..., m, For example, if m=3 and n=6, the input to the 6th MIMO receiver corresponds to the 3rd beam of the 6th array. Similarly, the 2nd input to the MIMO receiver corresponds to the 2nd beam of the 3rd array, and so on. Nowhere does Adams disclose or suggest the interconnection of multiple antenna arrays with multiple beams to multiple MIMO transceivers each with multiple inputs and outputs, much less the interconnection of components as recited in claim 1.
>
> In view of the forgoing Adams fails to disclose or suggest the features of claim 1.

*Id.*

As discussed in SectionI.B above, *any* narrowing amendment made during prosecution triggers the presumption of PHE, which Plaintiff must now rebut.

Plaintiff does not dispute any of the above, but instead argues that Dr. Cooklev's equivalent

has, at best, only a tangential relationship to the reason for the amendment. Dkt. No. 188 at 4-5. Specifically, Plaintiff argues that his theory "does not assert equivalents as to the 'numerology' requiring the same *number* of MIMO transmitters as the number of beams per array. Indeed, here, there are the same number of polarizations for MIMO transmission (two overall) as beams per sub-array (two, one per polarization). Rather, his DoE theory is that each of the two polarizations in the digital baseband—each with its own separate radio chains to each sub-array—is equivalent to a 'MIMO transmitter.'" *Id.* (citing Cooklev Infringement Report at ¶ 240). In other words, "Dr. Cooklev asserts that n=2 MIMO transmitters (two digital beamforming polarizations, each with a digital radio chain and analog radio chain to each subarray, thus each comprising a MIMO transmitter) and n=2 beams per antenna array (two beams per sub-array). He does not argue any other numerology applies for DoE. His DoE theory has nothing to do with XR's amendment or with the 'numerology' of the '511 patent." *Id.*

The Court finds that PHE does not apply here because Plaintiff has successfully rebutted via the Tangential Relationship Doctrine. As Plaintiff argues, Dr. Cooklev's equivalent here is unrelated to the "numerology" requiring the same number of MIMO transmitters as beams per array, which underlies the patentee's reason for amending the claim as he did. However, the issue remains whether "n" can be satisfied even if "n" is equal to 1, which Plaintiff never specifically addresses.

Having reviewed the relevant portions of Dr. Cooklev's report, the Court finds that this is among the possible equivalents he proposes. This would be impermissible because the patentee specifically amended the claim as seen above such that n must be *at least* 2 as a means to overcome Adams. Dkt. No. 164-9 at ECF page 22-23.

Accordingly, the Motion on this basis is GRANTED insofar as Plaintiff may not argue that

n=1 is an equivalent.

### 4. Vitiation and Ensnarement

Defendants' last arguments related to the '511 Patent echo the previously made positions. *See supra,* Section II.A.3; *compare* Dkt. No. 164 at 6-7 ("As detailed above, Dr. Cooklev's assertion of DoE entirely vitiates the 'numerology' element regarding the specific relationship between the number of beams and the number of MIMO transceivers. Dr. Cooklev (apparently) asserts that the number of MIMO transceivers can be '1' (or any number) which plainly eliminates the 'n' aspect defining the number of MIMO transceivers. Moreover, Dr. Cooklev's analysis would ensnare the prior art under the ensnarement doctrine. The hypothetical claim would be a claim that eliminates the 'n' and 'm' aspects of the '511 Patent claims. Without these aspects in the hypothetical claim, the hypothetical claim would ensnare the prior art (Adams and other references) cited by the Examiner."). The Court has already addressed these issues.

### B. The '235 Patent

Defendants argue that "Dr. Cooklev has one sentence asserting DoE for two claim elements of the '235 Patent[:] . . . that 'all the accused instrumentalities, when deployed by a Defendant within the Defendant's 5G network, satisfy 1[g] [1[h]], either literally or pursuant to the doctrine of equivalents.'" Dkt. No. 164 at 7 (citing Cooklev Infringement Report at ¶¶ 206, 210). Defendants assert that "Dr. Cooklev does not provide any other analysis," and that therefore, "XR's failure to provide *any* analysis (either function/way/result, or insubstantial differences, or anything) is fatal to any assertion of DoE." *Id.* (emphasis in original) (citing *Network Commerce, Inc. v. Microsoft Corp.,* 422 F.3d 1353, 1363 (Fed. Cir. 2005)). Defendants also argue that "XR did not assert DoE for element 1[g] or 1[h] in its Infringement Contentions," and that it has, therefore, waived such arguments. *Id.* (citing Dkt. No. 164-7 at 183-293).

12

Because this issue only concerns the '235 Patent (*See generally id.*), and because Plaintiff has elected to not assert the '235 Patent at trial (Dkt. No. 258), this issue is moot.

### C. The '369 Patent

With respect to the '369 Patent, Defendants argue that Plaintiff's other technical expert, Dr. Williams, "presents two distinct sets of DoE theories: (1) a DoE theory that is specific to element 1[a][7]; and (2) a common set of DoE theories applicable to all three claim elements 1[a], 1[b], 1[c]" but that "[t]he Court should entirely reject all of Dr. Williams' various theories." Dkt. No. 164 at 7.

#### 1. Element 1[c]

Starting with element 1[c], Defendants argue that DoE is precluded under PHE because "said modifying includes selectively setting different transmission power levels for at least two Orthogonal Frequency Division Multiplexing (OFDM) tones in said forward path data signal" was added during prosecution to overcome the prior art of U.S. Patent No. 6,252,914 ("Yamamoto"). *Id.* at 8-10 (citing Dkt. No. 164-10).

In response, Plaintiff argues that Dr. Williams's DoE theories have, at best, only a tangential relationship to claim amendments made during prosecution. Dkt. No. 188 at 5. In support of this, Plaintiff argues that "the DoE theory [at issue] responds to non-infringement arguments raised by Defendants/Intervenor that are predicated on specific implementation details of the Ericsson accused products that have no nexus to the claim amendment or novel aspects of the '369 patent." *Id.* at 5-6, 7. Specifically, it is in response to "Ericsson's non-infringement argument disclosed on February 12, 2025 that setting different power levels for different 'blocks of OFDM tones' (so that each block of OFDM tones has a different power level) is not literally selectively setting different

---

[7] This appears to be a typographical error on Defendants' part (*See* Dkt. No. 164 at 8-11); they appear to have meant to refer to element 1[c].

13

transmission power levels for 'at least two OFDM tones.'" *Id.* at 7 (citing Dkt. No. 184-2 at ¶¶ 192, 199-200). Therefore, argues Plaintiff, "[t]his interpretation is consistent with the 'prosecution history.'" *Id.*

The Court finds that PHE applies here. Claim 1 of '369 Patent was amended during prosecution as follows:

> A method comprising:
> identifying at least one multipath transmission delay within a reverse path data signal received from a receiving device;
> determining at least one forward path pre-equalization parameter based on said at least one transmission delay; and
> modifying a forward path data signal that is to be transmitted to the receiving device based on said at least one forward path pre-equalization parameter, <u>where said modifying includes selectively setting different transmission power levels for at least two Orthogonal Frequency Division Multiplexing (OFDM) tones in said forward path data signal.</u>

Dkt. No. 164-10 at ECF page 88 (the underlined sections denote the added language).

It is clear that the added language seen above narrows the scope of the claim. Further, this was done in response to a rejection by the Examiner. More importantly, as discussed in Section I.B above, *any* narrowing amendment made during prosecution triggers the presumption of PHE, which Plaintiff must then rebut.

Turning to Plaintiff's arguments, the Court is unpersuaded. Plaintiff's argument—that Dr. Williams advances a DoE argument in response to Defendants' position that their accused instrumentality, as implemented, does not literally infringe, and that therefore the presumption of PHE is rebutted under the Tangential Relationship Doctrine—is inapposite. As an initial matter, it is obvious that this is the reason why a party would bring a DoE argument: to account for non-literal infringement. This does not, however, suffice as an explanation for why the rationale underlying the amendment bears no more than a tangential relation to the asserted equivalent as Plaintiff contends.

14

In the context of PHE, the Supreme Court has made clear that the Tangential Relationship Doctrine is a means by which one can "show that at the time of the amendment one skilled in the art could not reasonably be expected to have drafted a claim that would have literally encompassed the alleged equivalent. *Festo*, 535 U.S. at 741 (emphasis added). Further, the Federal Circuit has explained that "a patentee seeking to use the exception must base his arguments solely upon the public record of the patent's prosecution." *Eli Lilly & Co. v. Hospira, Inc.*, 933 F.3d 1320, 1331 (Fed. Cir. 2019).[8]

In short, Plaintiff's framing of the Tangential Relationship Doctrine is incorrect. It is not a question of what motivated a plaintiff to assert the equivalent in question during litigation; it is a question of whether "the narrowing amendment [is] directly relevant to the alleged equivalent." *Id.* And here, Plaintiff has done nothing to rebut this as is required.

Plaintiff's largely conclusory assertion that Dr. Williams's equivalent is "consistent with the prosecution history" is explained solely by reference to paragraph 200 of his report. This paragraph, in turn, merely says "Ericsson's contention that 'none of the Accused Instrumentalities from any vendor applies the channel matrix on a specific OFDM tone basis as required by the '369 claims' is not supported by the claims, the specification, the prosecution history, or the Court's claim constructions." Dkt. No. 184-2 at ¶ 200. Despite referencing the '369 Patent's prosecution history, Dr. Williams never actually explains *why* his equivalent is in accordance with it. *See id.* Because it is Plaintiff's burden to rebut, and because it does not establish that the Tangential Relationship Doctrine applies based "solely upon the public record of the patent's prosecution," Plaintiff is estopped from asserting DoE for element 1[c].[9]

---

[8] The Federal Circuit has also clarified that "[t]he tangential relation criterion for overcoming the *Festo* presumption is very narrow." *Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, 523 F.3d 1304, 1315 (Fed. Cir. 2008)
[9] The Court further notes that there does not appear to be any specifically articulated reason for why the patentee made the amendment to claim 1 found in the '369 Patent's file wrapper. *See generally* Dkt. No. 164-10. The Federal Circuit

15

### 2. Elements 1[a] and 1[b]

With respect to elements 1[a] and 1[b], Defendants argue that Dr. Williams advances two DoE arguments across elements 1[a], 1[b], and 1[c][10]: first, "Dr. Williams alleges that the 'the channel impulse response in the time domain is equivalent to the channel estimate in the DCT domain which is equivalent to the channel estimate in the frequency domain used in Ericsson's system.'" Dkt. No. 164 at 11 (citing Dkt. No. 164-5 at ¶¶ 120, 122, 152, 189). Second, Dr. Williams argues that performing channel estimation using a known training sequence (the "SRS" signal) is equivalent to the claimed "identify at least one multipath transmission delay." *Id.* (citing Dkt. No. 164-5 at ¶¶ 120, 152, 189).

Defendants claim these DoE arguments are impermissible for two reasons: (1) they read out the elements of "identify at least one multipath transmission delay" and determine a corrective "forward path pre-equalization parameter based on [that] delay" from the infringement read, which Defendants claim is vitiation; and (2) the arguments ensnare the prior art. *Id.* at 11-12.

#### a. Vitiation

As to vitiation, Defendants specifically argue that "Dr. Williams does not identify any specific identification of a multipath delay—because there is no such identification in the products. Because there is no 'multipath transmission delay' ever identified in the accused products, Dr. Williams cannot, and does not, cite to any 'forward path pre-equalization parameter based on' that delay." *Id.* at 12. Defendants also argue that "Dr. Williams' replacement of time-based calculations with frequency-based calculations also entirely eliminates the 'multipath transmission delay'

---

has made clear that "[i]f the prosecution history reveals no reason for the narrowing amendment, the presumption is not rebutted. Silence does not overcome the presumption." *Id.* at 1315–16.

[10] Because the Court has already determined that Plaintiff is precluded from arguing DoE for element 1[c] (*See supra* Section II.C.1), we do not address further arguments here directed to element 1[c] since they are now moot.

element, which is the basis for each claim element. It cannot be said to be an equivalent 'way' if the claim elements defining the specific calculations (using the multipath transmission delay) are entirely eliminated." *Id.*

Plaintiff responds, arguing that vitiation "doesn't apply to Dr. Williams's DoE theory" because, "[i]n fact, Dr. Williams's DoE theory relies on Dr. Göransson's testimony that 'multipath delay' in 'time domain' is *exactly* what Ericsson identifies." Dkt. No. 188 at 9 (emphasis in original) (citing Dkt. No. 184-2 at ¶ 120 ("According to Dr. Göransson, an Ericsson base station identifies at least one multipath transmission delay in the received SRS by detecting, in the time domain, the multipath delay between the first arriving signal and the last multipath component.")). Plaintiff responds to Defendants' time-based versus frequency-based calculations argument by pointing out that "Dr. Williams's DoE theory is not limited to 'frequency domain,'" and that it also "maps to the 'SRS receiver algorithm functionality' including the '*FFT*'[11] that 'is applied to the frequency domain channel estimate to *output a time domain representation of the channel estimate*.'" *Id.* at 9-10 (emphasis added by Plaintiff) (citing Dkt. No. 184-2 at ¶ 120 ("the output of applying the FFT to the frequency domain channel estimate is time domain channel estimate comprising multipath component and multipath delay. The system calculates channel length in the time domain. This process identifies and considers the multipath components and multipath delays including for example between the first arriving component and the last arriving component. The system then converts the channel estimates identifying multipath component and multipath delays in the time domain to the frequency domain version of the same multipath component and multipath delay information using IFFT to represent the same multipath delay information. This is substantially the same way of performing substantially the same function of identifying

---

[11] The Court notes for clarity that "FFT" stands for fast-Fourier transform.

multipath transmission delay."). According to Plaintiff, "This shows that Ericsson calculates the multipath delay *in the time domain* and then converts that same information back to frequency domain using IFFT to 'represent the same multipath delay information.'" *Id.* at 10.

Having reviewed the arguments and supporting documents, the Court is of the opinion that Plaintiff has put forward sufficient evidence from Dr. Williams's report to show that Plaintiff included the "multipath delay" element in its infringement read such that a reasonable jury could find equivalence.

Plaintiff then addresses Defendants' argument regarding the "forward path pre-equalization parameter" element by asserting that Dr. Williams's DoE theory goes towards "the distinct non-infringement question of whether beamforming downlink transmissions is pre-equalization that *modifies* a forward path data signal." *Id.* (emphasis in original). In support of this, the point to Dr. Williams's opinion that "frequency selective downlink beamforming precoding" is equivalent to 'forward path pre-equalization' that modifies a forward path data signal," and that Dr. Williams clarifies that his DoE theory maps "modifying a forward path data signal" to beamforming "downlink transmissions." *Id.* at 10-11 (citing Dkt. No. 184-2 at ¶¶ 152, 189-191).

The Court finds that, for similar reasons as with the "multipath delay" element, Defendants have not carried their burden here. Plaintiff has put forward sufficient evidence to show that a jury could reasonably find that a POSITA would understand there to be insubstantial differences between a "forward path pre-equalization parameter" and "frequency selective downlink beamforming precoding."

### b. Ensnarement

As to ensnarement, Defendants' argument consists of a single-sentence, conclusory assertion: "Dr. Williams' DoE analysis also ensnares the prior art, and XR does not present any

analysis to escape ensnarement." Dkt. No. 164 at 12 (citing Dkt. No. 164-12 at 23-25).

Defendants may not circumvent the page limits for summary judgment motions by pointing to their responses to Plaintiff's interrogatories for their ensnarement argument. Defendants must fully argue their position in the instant motion. Citation to other documents as support for arguments is permissible, but making all such arguments in another document is not.

"[T]he accused infringer bears the initial burden of producing evidence of ensnared prior art to challenge a doctrine of equivalents infringement theory." *G. David Jang*, 872 F.3d at 1285. Here, Defendants' single-sentence assertion does not meet its initial burden of production.

### III.   CONCLUSION

For the reasons discussed above, the Court recommends that the Motion be **GRANTED IN PART** to the extent that Plaintiff is precluded from arguing (1) DoE for the first and third elements of claim 20 of the '511 Patent, (2) that "n" is equal to 1 for claim 20 of the '511 Patent, and (3) arguing DoE for element 1[c] of the '369 Patent. The Motion should otherwise be **DENIED**.

A party's failure to file written objections to the findings, conclusions and recommendations contained in this report within 14 days bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. FED. R. CIV. P. 72(b)(2); *see also Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (*en banc*). Any objection to this Report and

Recommendation must be filed in ECF under the event "Objection to Report and Recommendation [cv, respoth]" or it may not be considered by the District Judge.

**SIGNED this 22nd day of September, 2025.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE